# IN THE  UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | * |
| **MICHAEL A. MCNEIL** | * |
| **7807 Quill Point Drive** | |
| **Bowie, MD 20720** | * |
| | |
| **Plaintiff** | *   Civil Action No:   8:11-cv-02495-DKC |
| | |
| **v.** | * |
| | |
| **STATE OF MARYLAND** | * |
| | |
| Served on: | * |
| Douglas F. Gansler | |
| Attorney General of Maryland | *    **AMENDED COMPLAINT** |
| Office of the Attorney General | |
| 200 St. Paul Place | *               **AND** |
| Baltimore, MD 21202 | |
| | *    **DEMAND FOR JURY TRIAL** |
| Nancy M. Kopp | |
| Maryland State Treasure | * |
| State of Maryland Treasurer's Office | |
| Goldstein Treasury Building | * |
| 80 Calvert Street | |
| Annapolis, Maryland 21401 | * |
| | |
| **and** | * |
| | |
| **HOWARD COUNTY MARYLAND** | * |
| **3430 Courthouse Drive** | |
| **Ellicott City, MD 21043** | * |
| | |
| Served on: | * |
| Ken Ulman | |
| Howard County Executive | * |
| 3430 Courthouse Drive | |
| Ellicott City, MD 21043 | * |
| | |
| **and** | * |

**HOWARD COUNTY CIRCUIT COURT**          *
**8360 Court Avenue**
**Ellicott City, Maryland 21043**          *

Served on:                                  *
Diane O. Leasure
Chief Administrative Judge                 *
Howard County Circuit Court
8360 Court Avenue                          *
Ellicott City, Maryland 21043
                                            *

**and**                                     *

**(In her Official and Individual Capacity)**   *
**DIANE O. LEASURE**
**Chief Administrative Judge**              *
**Howard County Circuit Court**
**8360 Court Avenue**                       *
**Ellicott City, Maryland 21043**
                                            *

**and**                                     *

**(In his Official Capacity)**              *
**LOUIS A BECKER III**
**Associate Judge**                         *
**Howard County Circuit Court**
**8360 Court Avenue**                       *
**Ellicott City, Maryland 21043**
                                            *

**and**                                     *

**(In her Official Capacity)**              *
**MARY M. KRAMER**
**Master in Chancery**                      *
**Howard County Circuit Court**
**8360 Court Avenue**                       *
**Ellicott City, Maryland 21043**
                                            *

**and**                                     *

**(In her Official and Individual Capacity)**   \*
**LISA S. MOHINK**
**Family Law Coordinator**   \*
**Howard County Circuit Court**
**8360 Court Avenue**   \*
**Ellicott City, Maryland 21043**
    \*

**and**   \*

**(In her Official and Individual Capacity)**   \*
**PATRICIA BRIGHT**
**Court Social Worker**   \*
**Howard County Circuit Court**
**8360 Court Avenue**   \*
**Ellicott City, Maryland 21043**
    \*

**and**   \*

**(In her Official and Individual Capacity)**   \*
**CHRISTINA J. BIEGANSKI**
**Supervised Visitation Center**   \*
**Manager**
**Howard County Circuit Court**   \*
**8360 Court Avenue**
**Ellicott City, Maryland 21043**   \*

**and**   \*

**(In her Official and Individual Capacity)**   \*
**SUSAN R. GNATT**
**Supervisory Court Reporter**   \*
**Howard County Circuit Court**
**8360 Court Avenue**   \*
**Ellicott City, Maryland 21043**
    \*

**and**   \*

**STEPHEN A. DRAZIN**   \*
**The Drazin Law Center, P.A.**
**10420 Little Patuxent Parkway**   \*
**Suite 100**
**Columbia, MD 21044**   \*

**and**                                                    \*

**V. PETER MARKUSKI, JR.**                                 \*
**Goozman, Bernstein & Markuski**
**9101 Cherry Lane**                                       \*
**Laurel, MD 20708-1147**
                                                          \*

**and**                                                    \*

**VINCENT LOVE**                                           \*
**MSA-The Adolescent Center**
**10015 Old Columbia Road**                                \*
**Suite L-260**
**Columbia, MD 21046**                                     \*

**and**                                                    \*

**SARAH P. MCNEIL**                                        \*
**4721 Middle Court**
**Ellicott City, MD 21043**                                \*

**and**                                                    \*

**M. SLUTSKY & ASSOCIATES, INC**                           \*
**6248 Audubon Drive**
**Columbia, MD 21044-3815**                                \*

Served on:                                                 \*
Martin Slutsky
Resident Agent of                                          \*
M. Slutsky & Associates, Inc
6248 Audubon Drive                                         \*
Columbia, MD  21044-3815
                                                          \*

     **Defendants**                                        \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## AMMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, Michael A. McNeil representing himself, and files this

Complaint against the following defendants: State of Maryland; Howard County Maryland; the

Honorable Diane O. Leasure, in her official and individual capacity; the Honorable Louis A.

Becker III, in his official capacity; Master Mary M. Kramer, in her official capacity; Lisa S.

Mohink in her official and individual capacity; Patricia Bright, in her official and individual

capacity; Christina J. Bieganski, in her official and individual capacity; Susan R. Gnatt, in her

official and individual capacity; Stephen A. Drazin; V. Peter Markuski; Vincent Love; Sarah P.

McNeil; M. Slutsky & Associates, Inc and asks this court to consider the following:

## JURISDICTION & VENUE

1. This complaint is brought before this court concerning three Maryland State Laws that
violate the United States Constitution which have and continue to inflict harm on the
Plaintiff and other men and non custodial parents to this day.

2. This complaint is also brought before this court pursuant to 42 U. S. C. Sections 1981,
1983, 1985,  and 1986 whereas the state government defendant employees actors under the
"color of law" sought to deprive and/or conspired to deprive with the other non government
defendants named in this complaint the Plaintiff's First Amendment Rights, Fifth
Amendment Rights, Fourteenth Amendment Rights, as well as the Plaintiff's Maryland
State Statutory Rights, and the Plaintiff's Maryland State Constitutional Rights.

2. All events relevant to the cause of actions in this complaint all occurred within the State
of Maryland.

3. All parties named in this complaint are residents or government entities in the State of
Maryland.

4. Plaintiff certifies that he has filed notice with the Howard County Executive in
accordance with the Annotated Code of Maryland, Courts and Judicial Procedures Article
5-304 via certified mail on August 6, 2011.

5. The State of Maryland has waved its sovereign immunity by the way of various statutes

that the Maryland State Legislature has passed and has been signed into law concerning the matter brought up in this complaint.

## BACKGROUND

6. On November 14, 2008, Defendant Sarah P. McNeil filed a complaint for a Limited Divorce.

7. Prior and after the Defendant Sarah P. McNeil filing for a Limited Divorce she embarked on a campaign throughout the community of making false allegations that the Plaintiff has committed child abuse by sexually molesting his daughter, that the Plaintiff committed child abuse by beating his son, and that the Plaintiff has forced unnatural sex upon her in order to obtain sympathy and support from the community at large.  Of which,  the aforementioned allegations the Defendant Sarah P. McNeil has never been able to prove and the Plaintiff has denied all such allegations.

8. Defendant Sarah P. McNeil first made these allegations to the Plaintiff's church community, then the community at  large, and then finally before Howard County Social Workers, Howard County District Court, and then Howard County Circuit Court.

9. Defendant Sarah P. McNeil accusations before the Plaintiff's church community was so viscous that she convinced the Plaintiff's elders to conspired against the Plaintiff so that they would hold an ecclesiastical trial contrary to their own corporate constitution which pronounce the Plaintiff guilty prior to him making any sort of a defense.

10. Afterwards the Defendant Sarah P. McNeil continuously brought the fruit of the ecclesiastical trial into civil court arena and presented the findings of the ecclesiastical court in order to gainer sympathy and support so that the county/state employees would assist her in obtaining a better outcome in a divorce proceedings and to prevent the Plaintiff from

eventually having any visitation with his children or such visitation where the state would

supervised the visitation as though the Plaintiff had been convicted of child abuse or such

other crime against his own children.  Which Defendant Sarah P. McNeil would ultimately

support her false allegation made to the Plaintiff's children that their father is some type of

criminal that can not be trusted with children.

11. Defendant Sarah P. McNeil has ever since been conspiring with all the defendants

named in this complaint directly or indirectly with one end goal in mind, which is to

ultimately divest the Plaintiff of all property, all future income, any meaningful access to

his children or all access to his children, and if possible the Plaintiff's very freedom.

12. In order to accomplish Defendant Sarah P. McNeil has worked with with her fellow

defendants/conspirators and has managed to have her fellow conspirators which happen to

be state/county employee's  to deprive the Plaintiff of his, First Amendment Rights, Fifth

Amendment Rights, Fourteenth Amendment Rights as well as the Plaintiff's Maryland State

Statutory Rights, and the Plaintiff's Maryland State Constitutional Rights and as well as the

Plaintiff's fundamental right to parent his children and be part of their lives.

13. The various accounts which follows represent an continuation of Defendant Sarah P.

McNeil conspiring with various state actors in order to accomplish hers and her fellow

conspirators shared goals.  Though one count taken by itself can not prove a conspiracy, but

all the account taken together demonstrate a never ending saga where the Defendants have

come to the meeting of the minds to accomplish there common goal to deprive the Plaintiff

of his parental and property rights and they care less that in the process they have to violate

the United States Constitution or any other state law to accomplish their common goal.

Additionally, many of the accounts taken by themselves demonstrates where a government

actor/defendant as violated the Plaintiff's Maryland State Statutory Rights, and the

Plaintiff's Maryland State Constitutional Rights, along with the Plaintiff's United States Constitutional Rights.

14. It should be noted that the the Howard County Circuit Court ruled on Defendant Sarah P. McNeil complaint on December 27, 2010, and subsequently an appeal has been noted by the Plaintiff and the Plaintiff's appellant's brief has been filed with the Maryland Court of Special Appeals and oral arguments are scheduled to occur sometime in November 2011.

15. Additionally, since the previously noted appeal, the Plaintiff has also filed several appeals concerning post judgment orders signed by Defendant Judge Becker which took away the Plaintiff's visitation rights to the a point that as of the filing of this complaint the Plaintiff has absolutely no visitation rights or access to his children for no good reason other that Defendant Sarah P. McNeil desires that her children's relationship with their father be completely severed, and that the Plaintiff be continued to pay her $4,051 per month in child support.

16.  The acts of all the Defendants were done with the willful intent to deny the Plaintiff his rights afforded to him by Maryland State Statutes, the Maryland State Constitution, and the United States Constitution.

17. All the Defendants actions are caused or motivated by the fact that he Plaintiff is a male and that they have a common belief that women should be preferred to be a custodial parent.

18. All the Defendants action are cause or motivated by the fact that the Plaintiff works 40 hours a week for a living and they believe that a parent that refuses to work is better situated to take care of children.

19. All the Defendant's action are caused or motivated by the fact that the Plaintiff is the non custodial parent and therefor the Plaintiff should live at a lessor standard that the

custodial parent and be denied any parental rights if the custodial parent choses to deny them.

20. The acts of all the defendants were done to cause the Plaintiff harm in some fashion whether it be to cause him financial harm or emotional/psychological harm.

21. The acts of some if not all the defendants was so that they would obtain some kind of financial benefit.

22. The acts of the all the named government employee defendants were done under the "color of law" and were done in violation of Maryland State Statutes, and/or the Maryland State Constitution, and/or the United States Constitution.

23. The acts of all the named government employee defendants named in their individual capacity can not invoke Maryland State's sovereign immunity since the State of Maryland did not and can not authorized the named government employees defendants to violate Maryland State Statutes or the Maryland State Constitution or the United States Constitution.

24. The non government employee defendants named in this complaint conspired with all the named government employee defendants so that the Plaintiff's Maryland State Statutory Rights, and the Plaintiff's Maryland State Constitutional Rights, along with the Plaintiff's United States Constitutional Rights would be violated.


## COUNT ONE

DEFENDANT JUDGE DIANE O. LEASURE  CONSPIRES WITH
HER FELLOW CONSPIRATORS TO COVER UP WRONG DOING

VIOLATION OF PLAINTIFF'S STATE STATUTORY RIGHTS
VIOLATION OF PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENTS RIGHTS

25.   The Plaintiff incorporates paragraphs 1 through 24 as if set forth herein.

26.  The Maryland Public Information Act gives Maryland citizens the right to obtain

copies of any records that Maryland State entities have concerning them personally with

no limitation except to law enforcement records.

27.  The State of Maryland has passed legislation waiving sovereign immunity

concerning legal fees and actual damages whereas a requester of this information is

denied access or copies of the records.

28.  The Maryland Court of Appeals has given specific instructions to courts concerning

the Maryland Public Information Act, when it gave instructions to all the courts in

Maryland as to the rights of litigants concerning audio recording, when it published the

following in the Maryland Rules for Courts:

**MD Rule 16-406. Access to electronic audio and audio-video recordings of proceedings in the circuit court.**

a. Control -In general.-Electronic audio and audio-video recordings made pursuant to Rules 16-404 and 16-405 are under the control of the court having custody of them. Access to and copying of those recordings are subject to the provisions of this Rule and Rule 16-405 d.

    Cross References.
      Code, State Government Article, § 10-615.

b. Access - In General.-No person other than a duly authorized court official or employee shall have direct access to or possession of an official audio or audio-video recording. Subject to Rule 16-405 d and unless otherwise ordered by the court, any person may view an official audio-video recording at the times and places determined by the court having custody of the recording. Copies of audio recordings and, where practicable, the audio portion of audio-video recordings, may be purchased as provided in this Rule.

c. Right to Obtain Copy of Audio Recording or Audio Portion of Audio-Video Recording.-Subject to Rule 16-405 d and unless otherwise ordered by the court, the authorized custodian of an official audio recording or the audio portion of an audio-video recording shall make a copy of the audio

recording or, if practicable, the audio portion of the audio-video recording, or any portion thereof, available to any person upon written request and the payment of reasonable costs, unless payment is waived by the court.

d. Right to copy of audio-video recording; restrictions.

1. Upon written request and the payment of reasonable costs, the authorized custodian of an official videotape recording shall make a copy of the recording, or any part requested, available to:
   (A) a party to the action or the party's attorney;

   (B) a stenographer, court reporter, or transcription service designated by the court for the purpose of preparing an official transcript from the recording; and

   (C) the Commission on Judicial Disabilities or its designee.

29.  Plaintiff has queried various Maryland district courts, and circuit courts and has found that almost all those courts have forms that can be filed to obtain the court audio recordings for a fee. Most of the courts even offer on-line web forms which could be submitted to the court.

30. On April 22, 2010, the Plaintiff made a request to the custodian of records by personally handing to Susan R. Gnatt, the Supervisory Court Reporter for Howard County Circuit Court a written request which detailed all the dates for specific audio recordings made for his divorce trial McNeil v. McNeil.

31.  When the Plaintiff gave to Ms. Gnatt the request, she informed him that he would not be able to get copies of the audio recordings and that he need not make the request since it will be denied anyways.

32. The Plaintiff informed her of the Maryland Public Information Act, which she then informed the Plaintiff that that law did not matter or apply to the Howard County Circuit Court.

33.  The Plaintiff, though being told that the Howard County Circuit Court will not obey a statute passed by the Maryland State legislature and signed into law asked Ms. Gnatt to take his request and that he expected a response from Howard County Circuit Court.

34.  After not receiving a response from Howard County Circuit Court, and believing the request would go completely unanswered do the the attitude that Ms. Gnatt displayed to him, the Plaintiff of May 5, 2010 filed a request for the audio recordings to be docketed into McNeil v. McNeil case that was before the Howard County Circuit Court so that he would have a file stamped that Howard County Circuit Court had received his request.

35. On May 12, 2010 the Defendant Judge Diane O. Leasure denied both requests which are now part of the McNeil v. McNeil court record.

36.  Defendant Judge Leasure did allow for the Plaintiff that he could order transcripts or listen to the audio recording in the presence of a court reporter, if the court reporter had time.

37. It would have cost the Howard County Circuit court approximately two dollars in material and perhaps one half man hours to make all the requested copies, which would have resulted in an actual cost of perhaps $30 at best to the Howard County Circuit Court.

38. Defendant Susan R. Gnatt had no problems making copies for the Howard County Circuit Court's transcription contractors of the audio recordings pursuant to MD Rule 16-406 (d) (B).

39. There was no reason given why Defendant Judge Leasure or Defendant Gnatt did not provide the Plaintiff copies of the audio recordings pursuant to MD Rule 16-406 (d) (A).

40. If the Plaintiff would have ordered transcripts, the cost of the transcripts would have been well over $10,000.

41. When the Plaintiff made his request for audio recordings, the recordings at that time

consisted of well over 50 hours of recordings

42. The Plaintiff is a full time salary employee that works in Northern Virginia who simply can not take off work to listen to audio recordings when Ms. Gnatt has times to allow him to listen to them.

43. Defendant Judge Leasure's allowance of allowing the Plaintiff to order transcripts at a cost of over $10,000 and/or listen tot he recordings at the Howard County Circuit court during the few hours that the Defendant Susan R. Gnatt had time is a denial.

44. The Maryland Public Information Act requires that the custodian of records to make the determination for access and or coping of records according to statutory law.

45. In Maryland, the custodian of records for a government entity is not normally a judge.

46. On May 12, 2010, Judge Diane O. Leasure was acting as the custodian of records when she denied the Plaintiff's request under the Maryland Public Information Act.

47.  Again, a custodian of records is not normally performed by a judicial officer, and therefore Judge Diane O. Leasure has no judicial immunity for monetary damages for her unlawful act of denying the Plaintiff access.

48. Judge Diane O. Leasure act of denying the Plaintiff copies of the audio recordings was part of the larger conspiracy to deny the Plaintiff his constitutional rights.

49.  Judge Diane O. Leasure act of denying the Plaintiff's request was to prevent the Plaintiff from having evidence of the unlawful acts that occur in the court rooms of Howard County Circuit Court.

50. Defendant Judge Leasure also, knew that in February 2010 that do to the malicious acts of Defendant Judge Becker, that the Plaintiff lost the ability to be able to afford representation before the Howard County Circuit Court.

51. Defendant Judge Leasure also knew that the Plaintiff needed the audio recordings in

13

order that he may be able to represent himself as a Pro Se litigants before the Howard County Circuit Court since the divorce trial for McNeil v. McNeil had already over a week's of trial and that several more days of trial were schedule to occur in June 2010.

52.  Defendant Judge Leasure has been the  Circuit Administrative Judge, 5th Judicial Circuit (Anne Arundel, Carroll & Howard counties), since January 4, 2002.

53. Defendant Judge Leasure has been the County Administrative Judge, Howard County Circuit Court, 5th Judicial Circuit, since January 4, 2002.

54. Defendant Judge Leasure has been an Associate Judge since November 13, 1995.

55. Defendant Judge Leasure was member of  Criminal Law and Procedure Committee between 1997 and 2000 and ten again between  2001 and 2009.

56. Defendant Judge Leasure was a member of Family and Domestic Relations Law Committee between 2000 and 2001.

57. Defendant Judge Leasure was member of the Judicial Council,  between 2000 and 2005 and then again between 2008 and 2010.

58.  Defendant Judge Leasure was member of Judicial Compensation Committee since 2002.

59. Defendant Judge Leasure was member of Judicial Cabinet between 2008 and 2010.

60. Defendant Judge Leasure knew that the Plaintiff has a due process right to obtain copies of the audio recordings.

61. Defendant Judge Leasure knew that the Plaintiff's defense before the Howard County Circuit Court would be harmed by her action.

62. Defendant Judge Leasure conspired with her fellow Defendant's to cause this harm and willfully violated the Plaintiff's rights so that Defendant Sarah P. McNeil would be able to prevail in the divorce case before the Howard County Circuit Court and any subsequent

appeal to other courts.

63. Ms. Gnatt also took part in the various aforementioned acts by conspiring with Defendant Judge Leasure in that she knew it was an unlawful act or she should have known it was an unlawful act.

64. However, with all the aforementioned stated facts, another motivation as to why Defendant Judge Leasure denied the Plaintiff access to the audio recordings in accordance with the Maryland Public Information Act was so that she could cover up the wrong doings that were taking place in the Howard County Circuit Court.

65. Defendants Judge Leasure and Susan Gnatt violated the MD Rules For Court.

66. Defendants Judge Leasure and Susan Gnatt violated the Maryland Public Information Act.

67. Defendants Judge Leasure and Susan Gnatt violated the Plaintiff's Fifth Amendment Do Process Rights by not giving him information that he needed to prepare for trial and to follow court order which according to Maryland Law that he had a right to have.

68. Defendants Judge Leasure and Susan Gnatt violated the Plaintiff's Fourteenth Amendment Rights by not providing equal protection under law for the Plaintiff.

69. Defendants Judge Leasure and Susan Gnatt unconstitutional act was part of the overall conspiracy to deny the Plaintiff's his state and federal constitutional rights in order to deprive him of his property, access to his children, future income, and if not his very freedom.

70. All the other defendants named in this complaint were party of this conspiracy act to deny the Plaintiff of his constitutional rights as part of their coordinated attack against the Plaintiff.

## **COUNT TWO**

DEFENDANT JUDGE LOUIS A. BECKER III
CONSPIRES WITH DEFENDANTS STEPHEN DRAZIN AND SARAH P. MCNEIL
TO VIOLATE MARYLAND STATE'S CONSTITUTION
VIOLATION OF PLAINTIFF'S STATE CONSTITUTIONAL RIGHTS
VIOLATION OF PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENTS RIGHTS

71.  The Plaintiff incorporates paragraphs 1 through 70 as if fully set forth herein.

72. Article III, Section 38 of the Maryland State Constitution states:

> No person shall be imprisoned for debt, but a valid decree of a court of competent jurisdiction or agreement approved by decree of said court for the support of a spouse or dependent children, or for the support of an illegitimate child or children, or for alimony (either common law or as defined by statute), shall not constitute a debt within the meaning of this section *(amended by Chapter 14, Acts of 1950, ratified Nov. 7, 1950; Chapter 121, Acts of 1962, ratified Nov. 6, 1962; Chapter 321, Acts of 1982, ratified Nov. 2, 1982)*.

73.  It is well settled law in Maryland that the exception clause does not extend to any debt outside of support being paid for direct support of a spouse or former spouse and for a child physical needs verses the payments for attorney fees.

74. The Fourteenth Amendment of the United States Constitution guarantees equal protection under law which includes state and federal law.

75. On September 16, 2009, Defendant Judge Louis A. Becker presided over a contempt hearing whereas the Plaintiff was being charged with contempt for failure to pay $13,280.00 in court ordered attorney fees to Defendant Stephen Drazin.

76. Defendant Stephen Drazin who has been known to have ex-parte conversations with Judge Becker about this divorce matter, conspired with the judge to have the Plaintiff ordered to jail if he refused to pay a debt owed to him.

77. During the contempt hearing, the Plaintiff's attorney moved to strike the contempt petition on the grounds that the Defendant Judge Louis A. Becker had no statutory

authority to entertain such a motion under Maryland State statues.  Defendant Judge
Louis A. Becker denied the motion.

78. On September 16, 2009 Judge Louis A. Becker ordered the Plaintiff to report to the
Howard County Correction Center on October 21, 2009 at 12:00 pm for failure to pay
directly to Defendant Stephen Drazin the sum ordered to pay for Defendant Sarah P
McNeil attorney's fee.

79.  Judge Louis A. Becker by ordering the Plaintiff to jail for a debt violated the Plaintiff's
Maryland State Constitutional Rights and consequently his Fourteenth Amendment Rights.

80. Defendant Judge Louis A. Becker has been a Maryland circuit court trial judge since
August 11, 2005.

81. Defendant Judge Louis A. Becker was a member of the member of the Judicial
Education Committee between 1996 and 2000, District Court of Maryland.

82. Defendant Judge Louis A. Becker was a member of the  Civil Law and Procedure
Committee, Maryland Judicial Conference between  2001 and 2004.

83. Defendant Judge Louis A. Becker is an expert on Maryland Statutory Law and
Maryland State Constitutional Law.

84. Defendant Judge Louis A. Becker knew or should have knew that he was violating the
Maryland State's Constitution when he ordered to report to jail for failure to pay his wifes
attorney.

85. Defendant Judge Louis A. Becker act of ordering the Defendant to jail was a willful and
malicious act intended to do the Plaintiff financial and emotional/psychological harm.

86. Defendant Judge Louis A. Becker knew or should have known he was violating the
Maryland State's Constitution and the Plaintiff's civil rights.

87. Defendants Stephen Drazin and Sarah P. McNeil have previously conspired with

Defendant Judge Becker to bring out this act where Defendant Judge Louis A. Becker would thumb his nose at the People of Maryland in his direct defiance of the Maryland State Constitution and its people.

88. Defendants Judge Leasure and Ms. Gnatt also had a role in this conspiracy in that they sought to cover up these acts by denying the Plaintiff access to the audio recordings of the hearings where this deliberate act by the conspirators to violate the Plaintiff's civil rights occurred.

89. This act of conspiracy conducted by the aforementioned defendants has caused the Plaintiff financial, emotional, psychological and reputational harm.

## **COUNT THREE**

DEFENDANT JUDGE LOUIS A. BECKER III ORDERS $4051 IN CHILD SUPPORT

VIOLATION OF PLAINTIFF'S STATE STATUTORY RIGHTS
VIOLATION OF PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS

90.  The Plaintiff incorporates paragraphs 1 through 89 as if fully set forth herein.

91. The Maryland Family Law Article §12-204 sets the recommend maximum amount for the basic child support obligation to be $2659 for the support of six (6) or more children per month.

92.  The Maryland Family Law Article §12-204 sets the minimum amount for the basic child support obligation to be $285 for the support of six (6) or more children per month.

93. The Maryland Family Law Article §12-204 sets the recommend maximum amount for basic child  support obligation to be $1616 for the support of two (2) children per month for combined income of a child's parents up to $100,000 per year.

94. The Maryland Family Law Article §12-204 sets the minimum amount for the basic child support obligation to be $273 for the support of two (2) children per month.

95. The formulas to be used in accordance with Maryland Family Law takes into consideration the tax deductibility of alimony for the ex-husband and the tax of income for the ex-wife receiving alimony.  And this income is to be used on the worksheets to determine child support.

96. The United States Department of Agriculture (USDA) is responsible to create reports from time to time to assist states in determining the amounts of child support to be paid by non custodial parents based off income.

97. The Maryland State Legislature uses the aforementioned USDA reports in determining child support guidelines to be placed into law.

98. The Maryland State Legislature has also in acted in Maryland Family Law Article §12-204 how gross income of custodial and non custodial parents are to be determined.

99. Maryland Family Law Article §12-204 child support guidelines take into consideration of tax consideration for alimony expenses and/or income, and the law requires that such offsets be made.

100. The issue of whether or not alimony is taxable or deductible is essential in ensure that the child support calculated in equitable and fair.

101. The IRS Publication 504 (2010) states the following:

> Specifically designated as child support. A payment will be treated as specifically designated as child the extent that the payment is reduced either:
>
> • On the happening of a contingency relating to your child, or
>
> • At a time that can be clearly associated with the contingency.
>
> A payment may be treated as specifically designated as child support even if other separate payments are specifically designated as child support.

19

**Contingency relating to your child.** A contingency relates to your child if it depends on any event relating to that child. It does not matter whether the event is certain or likely to occur. Events relating to your child include the child's:

- Becoming employed,
- Dying,
- Leaving the household,
- Leaving school,
- Marrying, or
- Reaching a specified age or income level.

**Clearly associated with contingency.** Payments that would otherwise qualify as alimony are presumed to be reduced at a time clearly associated with the happening of a contingency relating to your child only in the following situations.

1. The payments are to be reduced not more than 6 months before or after the date the child will reach 18, 21, or local age of majority.

2. The payments are to be reduced on two or more occasions that occur not more than 1 year before or after a different one of your children reaches a certain age from 18 to 24. This certain age must be the same for each child, but need not be a whole number of years.  In all other situations, reductions in payments are not treated as clearly associated with the happening of a contingency relating to your child. Either you or the IRS can overcome the presumption in the two situations above. This is done by showing that the time at which the payments are to be reduced was determined independently of any contingencies relating to your children. For example, if you can show that the period of alimony payments is customary in the local jurisdiction, such as a period equal to one-half of the duration of the marriage, you can overcome the presumption and may be able to treat the amount as alimony.

102. Defendants Judge Becker, Sarah P. McNeil, Stephen Drazin, and V. Peter Markuski

was provided a copy of IRS PUB 504 which was submitted and docket as evidence in

McNeil v. McNeil.

103.  The Code of Maryland Regulations (COMAR) 03.04.02.16 states the following:

A. An individual shall itemize deductions on the individual's federal income tax return in order to elect to itemize deductions on the individual's State income tax return.

B. An individual who does not elect to itemize deductions may claim the standard deduction.

104. According to the Instructions booklet for Maryland Income Tax Return Forms 502 & 503 Maryland Tax payers are instructed to do the following when entering their Adjusted Gross Income:

> Line 1. Enter your net taxable pension and retirement annuity included in your federal adjusted gross income.

105.  The aforementioned adjusted gross income takes into consideration the payment of or the receiving of alimony and adjusts the tax payers income accordingly.

106. No where on the Maryland Individual Income Tax returns is there allowed a deduction for alimony apart from what is allowed on the Federal Tax Return.

107. Maryland State as a matter of law accepts the Federal definition of what is and is not alimony, and what is and is not child support.

108. On December 27, 2010 Defendant Judge Louis A. Becker III orders that Plaintiff to pay $3000.00 per month which he calls alimony which so happens to terminate within six months of the Defendant's sons 18th birthday.

109. According to IRS Publication 504, since the alimony has been order to terminate within six months of the Defendant's son's birthday, the presumptions that both the IRS and the Comptroller of Maryland will be is that the $3000.00 per month so ordered is alimony but is in fact child support.

110. However, the aforementioned presumption can be overcome if it can be demonstrated that the amount so order does not relate to a contingency concerning a child.

111.   Unfortunately for the Plaintiff,  the Defendant Judge Becker stated very clearly in his Supplemental Memorandum in support of his order for Judgment of Absolute Divorce that the length of the alimony was set do to the fact that Defendant Sarah P. McNeil needed to be able to stay at home with her children.  Therefore, it is impossible for aforementioned

presumption by both the United States Government and the State of Maryland that the

$3000.00 so order as alimony by Defendant Judge Becker to be child support.

112. Both the United States Government and the State of Maryland through their laws have

determined that the amount so ordered by Defendant Judge Louis A. Becker III is not

alimony but is indeed child support.

113. Defendant Judge Louis A. Becker III also ordered on December 27, 2010 the Plaintiff

to $1051.00 per month in what he calls child support.

114. Therefore, Defendant Judge Louis A. Becker III has ordered the Plaintiff to pay $4051

per month in child support.

115. The amount that Defendant Judge Louis A. Becker has ordered the Plaintiff to pay

exceeds Maryland State states  limits on child support.

116. On page 40 of Defendant Judge Becker's Supplemental Memorandum to the Judgment

of Absolute Divorce he states about the Defendant Sarah P. McNeil ability to earn an

income the following:

> The vocational rehabilitation specialist who testified for Mrs. McNeil
> indicated without additional recommended courses, which she has started to
> take, she could earn a salary between $30,500.00 to $39,900.00, with a
> median salary of $34,700.00 ($16,68 per hour gross).  However, after the
> appropriate remedial education as a dental hygienist she could earn an
> annual salary of $66,000.00 to $82,000.00, with a median salary of
> $74,400.00 ($35.75 per hour gross).  To her credit, Mrs. McNeil has begun
> to take community college courses and was projected to complete the same
> by early fall 2010.

117. Defendant Judge Becker signed the Judgment of Absolute Divorce in the Winter of

2010 after the Defendant Sarah P. McNeil was projected to complete her course work in the

Fall of 2010.

118.  Defendant Judge Becker willfully chose not to include her income or impute  income

to Defendant Sarah P. McNeil.

119.   At the very least, Defendant Judge Becker should have imputed to Defendant Sarah P. McNeil income of $66,000.00 per year when making child support calculations.

120. The amount that Defendant Judge Louis A. Becker ordered the Plaintiff to pay is outrageous to the extreme considering the Plaintiff's income and the Defendant Sarah P. McNeil's income.

121. The child support guidelines that are part of the Maryland Family Law Article was enacted to prevent abusive judges like Defendant Judge Becker from destroying the lives of citizen of the state of Maryland.

122. Defendant Judge Louis A. Becker has clearly violated the Plaintiffs rights once again.

123. Defendant Judge Leasure and Ms. Susan Gnatt has sought to conceal these outrageous acts of Defendant Judge Becker by preventing the Plaintiff from having access to the audio hearings.

124. Defendants Stephen Drazin, V. Peter Markuski, and Sarah McNeil conspired with Defendant Judge Becker to do this outrageous act.

125. Defendant Judge Becker being a seasoned judge knew or should have known that he was willfully violating the Maryland Family Law Article.

126. Defendant Judge Becker along with all the other defendant caused this outrageous act to occur by being willing conspirators with the goal to deprive the Plaintiff of his civil rights and to cause the Plaintiff to become impoverished, to cause the Plaintiff to be jailed, and for the Plaintiff to loose the ability to father his children.

127. All the defendants so named in this complaint took part in this outrageous act to deny the Plaintiff his constitutional rights provided for him under the Fifth Amendment and the Fourteenth Amendment.

**COUNT FOUR**

DEFENDANTS RETALIATES AGAINST PLAINTIFF FOR SUBPOENAING
DEFENDANT PATRICIA BRIGHT

VIOLATION OF PLAINTIFF'S STATE STATUTORY RIGHTS
VIOLATION OF PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS

128. The Plaintiff incorporates paragraphs 1 through 127 as if fully set forth herein.

129. On December 9, 2010 the Plaintiff initiated a law suite in Anne Arundel Circuit Court

against Defendant Sarah P. McNeil amongst other defendants that are not part of this law

suit.

130.  Sometime in July 2011,  Defendant Patricia Bright received a subpoena from the

Plaintiff requesting that she give to him copies of all records concerning his case and any

notes she has concerning statements made by Defendant Sarah P. McNeil.

131. Again, according to the Maryland Public Information Act, the Plaintiff has a clear

right to be able to obtain from the government copies of these records, Maryland State has

no statutory right to with hold these records from the Plaintiff and to the contrary has an

obligation to provide them to him upon his request.

132.  On August 22, 2011, Defendant Patricia Bright acting with the Assistant State's

Attorney General file a motion in Anne Arundel County Circuit Court to quash the

subpoena whereas the Assistant State's Attorney General in his motion clothed Defendant

Patricia Bright in judicial immunity, making her immune from all subpoenas and or being

sued.

133. Then on August 22, 2011, Defendant Judge Louis A. Becker III ordered that Patricia

Bright conduct a review of custody matters concerning the Plaintiff's children.

134.  Sometime around the end of July 2011 and the beginning of August 2011 the Plaintiff

successfully had several of his children's mental health professionals subpoenaed in order to obtain records concerning his children to be used in an upcoming custody/contempt hearing.

135. Defendant Stephen Drazin, V. Peter Markuski, and Sarah P. McNeil have sought to have the Plaintiff's subpoenaed nullified by asking Defendant Judge Becker to put in place a protective order, in violation of Defendant Judge Becker's order where he give the Plaintiff a right to such records.

136.   Included in those subpoenaed was Martin Slutsky, President of M. Slutsky & Associates, Inc.

137.  None of the mental health providers have complied with the Plaintiff's subpoenas.

138.  The Plaintiff on August 31, 2011 filed a request for bodily attachment for all the mental health professional subpoenaed, which Defendant Judge Becker will more than likely denied after he has quashed or put into place protective orders, unless he decides not to do so since the Plaintiff has filed this complaint.

139.   On August 30, 2011  Defendant V. Peter Markuski after consulting and conspiring with Defendant Vincent Love knowing that Defendant Vincent Love was "on board" waived privilege so that Defendant Vincent Love would be able to make certain statements to Defendant Patricia Bright on the "record" concerning the Plaintiff's children.

140. Defendant Vincent Love is an employee of M. Slutsky & Associates, Inc.

141.  M. Slutsky & Associates, Inc doing business as name is: MSA-The Adolescent Center

142.  On August 30, 2011 Defendant Patricia Bright filed her report which was ordered by Defendant Judge Becker.

143.   Defendant Patricia Brights Home Study Report willfully neglected to mention key

facts such as the Plaintiff daughter informing her school that she wanted to kill herself, the

fact that the Plaintiff's son has been suspended from school and is not permitted to return to

his school because he threaten another child with a knife, the fact that the Plaintiff's son

was taken into police custody for 2nd Degree Assault, the fact that the the Plaintiff's

daughter had to attend summer school because Defendant Sarah P. McNeil is an unfit

mother and spends little time with her, and the fact that the both of the Plaintiff's children

are on PROZAC.

144.  However, the Defendant Patricia Bright spot lighted in her report a conversation that

she had with  Doctor Love where he stated the following in her report (Note, in compliance

with Rule 5.2 (a) the Plaintiff minor son's name has been abbreviated to ARM which are his

initials in the following quote) :

> ARM is ANGRY, ANGRY AT  HIS FATHER, and ANGRY AT THE COURT
> SYSTEM for forcing him to see his father.    ARM verbalizes that he does not want
> to see his father. He verbalizes that he always needs to be prepared that his father
> will confront him and caries a knife to protect himself from his father.  ARM
> verbalizes that his father is "out to get him, means harm to him and hates his
> father."  By caring a knife at all times to protect himself from his father's harm,
> ARM has gotten into trouble at school which resulted in being suspended.  ARM
> was described as a bright kid with emotional and behavior problems directly related
> to the relationship with his father.
>
> The Clinical Director stated ARM's mother was not saying anything to keep ARM
> from wanting to see his father.
>
> ARM will be 14 years old in (month redacted in accordance with Rule 5.2 (a))
> 2011.  The Clinical Director that if ARM (at his age) was given the choice to see or
> not see his father for a set period of time (such as 6 months), it would take the anger
> at the court system away, and optimally help ARM with his mental health therapy
> (to work through his emotions about his relationship with his father, and also, if the
> situation presented itself, have the father join therapy sessions to discuss a save and
> meaningful visitation plan for ARM.

145. It should be noted that in 2010 the Plaintiff's attempted to kill Defendant Sarah P.

McNeil by choking her to death when she attempted to take an electronic device away from

him.

146. Since early 2009, Defendant Sarah P. McNeil as part of her overall conspiracy against the Plaintiff has been working with hand picked mental health professionals that would agree to conspire with her in modifying and or manipulating the Plaintiff's children so that they would act out violently against the Plaintiff at times.

147. These hand picked mental health professional have gone so far to use powerful mind altering drugs off label in order to brain wash the Plaintiff's children.

148. Thus far, Defendant Love and other mental health professionals that are employees of M. Slutsky & Associates, Inc. have managed to cause the Plaintiff son to rebel against all authority and the Plaintiffs daughter to want to commit suicide.

149.  Defendant Patricia Bright willfully neglected to contact the Plaintiff's daughters school where she would have learned that the Plaintiff's daughter want to kill herself after two months whereas Defendant Sarah P. McNeil refused to allow the Plaintiff any access to his daughter so that her report would have the required relevant information.  Nor did she make mention of these relevant facts in her report.

150. Defendant Patricia Bright willfully neglected to contact the Plaintiff's school principle at Dunloggin Middle School in order to determine why the Plaintiff's sun was suspended from school and will not be allowed to return to Dunloggin Middle School.  Nor did she make mention of these relevant facts in her report.

151. The Defendant Patricia Bright willfully neglected to contact the Howard County Department of Social Services to speak to them about the matter where Defendant Sarah P. McNeil accused him of physically abusing his daughter which the Howard County Department of Social Service "rule out" the possibility. Nor did she make mention of these relevant facts in her report.

152. The Defendant Patricia Bright willfully neglected to contact the Maryland Department of Juvenile Services to ascertain the fact concerning the Plaintiff's son criminal activity. Nor did she make mention of these relevant facts in her report.

153. Defendants Patricia Bright has been a willing government actor in this conspiracy, aligning herself against the Best Interest of the Plaintiff's children in order to promote her own social agenda, so that Defendant Sarah P. McNeil could continue to abuse the Plaintiff's children by neglecting them and pumping them up with mind altering medications and suffering them to undergo brain washing therapies.  And she has done this all under the "color of law".

154.  As a government employed social worker, Defendant Patricia Bright has a duty to act in the best interest of the Plaintiff's children in accordance with Maryland State Law.

155. Defendant Patricia Bright has used her government possession to wage war against the Plaintiff in conspiring with the other defendant named in this complaint.

156. Defendant V. Peter Markuski, was essential in accomplishing this overt act in that unless he cooperated with his fellow conspirators, Defendant Patrica Bright and Defendant Vincent Love would not have been able to play their critical roles.

157. Unfortunately, this is only one of the many acts that Defendant Patrica Bright, Defendant V. Peter Markuski and Defendant Sarah P. McNeil have coordinated in order to deny the Plaintiff due process of law and for his civil rights protections.

158. All the defendant's involved in this count were aware and willing participants sharing one common goal which was to do harm to the Plaintiff and to bring harm to his children.

159.  Defendant Judge Becker acting "sua sponte" to order Defendant Patricia Bright to perform a one sided investigation in order to prove the Plaintiff to be unfit in a retaliation act against the Plaintiff because he subpoenaed Defendant Patricia Bright for records while

the other actors is a willful violation of  Maryland State Statutes and the Plaintiff's Fifth

Amendment Rights.

## **COUNT FIVE**

DEFEFENANTS CONSPIRE TO VIOLATE
PLAINTIFF'S FIRST AMENDMENT RIGHTS

VIOLATION OF PLAINTIFF'S FIRST AND FOURTEENTH AMENDMENT RIGHTS

160.  The Plaintiff incorporates paragraphs 1 through 159 as if fully set forth herein.

161.  On or about February 2009, Defendant Sarah P. McNeil had her attorney Defendant

Stephen Drazin issue a subpoena to the Plaintiff's church demanding any and all records of

an ecclesiastical hearing/procedures.

162.  On February 24, 2009 the Plaintiff petitioned the Howard County Circuit Court for a

protective order based on the fact that this allowance for a subpoena would be a violation of

the Plaintiff's First Amendment Rights and would violate a privilege conversation between

the clergy of his church and himself.

163.  On April 16, 2009 the Howard County Circuit Court agreed with the Plaintiff and

granted his motion for a protective order.

164.  On March 16, 2009, Defendants Master Mary Kramer presided over a Pendente Lite.

165.  During the Pendente Lite hearing, knowing that there was a pending motion before

the Howard Count Circuit Court, Defendant Stephen Drazin questioned the Plaintiff on

the stand concerning statements made during a closed session ecclesiastical hearing.

166.  The Plaintiff's attorney objected to this questioning and notified Master Kramer that

there was  pending motion before the court that has yet to be ruled upon and he also

argued from the pending motion.

167.  Maryland State Courts are courts of Common Law and Equity.

168.  Defendant Master Mary Kramer with complete disregard for the First Amendment and common law which holds pentinant-clergy conversation as privilege ordered the Plaintiff to give a detailing of the privilege conversation.

169. Defendant Master Mary Kramer then after hearing this conversation determined to limit the Plaintiff's access to his children to only on Sundays while in view of the public.

170.  Defendant Master Mary Kramer also determined to award Defendant Sarah P. McNeil $3000 per month in alimony and $1068 in child support per month as part of the Pendente Lite Order.

171.  The other Defendant named in this complaint would further used the tainted fruit obtained by Defendants Stephen Drazin and Master Kramer to demoralize and cause damage to the Plaintiff.

172. Defendant Master Mary Kramer violated the Plaintiff's First Amendment Rights by forcing the Plaintiff to give testimony against himself about his confession before his church clergy.

173. All the defendants named in this complaint had some part in this violation by being active participants are seeking to cover it up.

174.  Defendant Master Mary Cramer did not act alone to violate the Plaintiff's First Amendment Rights.

175. By compelling the Plaintiff to testify concerning his confession to his clergy Defendant Master Mary Kramer, and her conspirators/co-defendants also violated the Plaintiff's do process rights under the Fifth Amendment, and the Plaintiff's Fourteenth Amendment Rights.

176. Defendant Master Mary Kramer's violation of the Plaintiff's constitutional right is outrageous in the extreme in that EVERY American knows that no court in the United

States is to ever investigate matters of conversations between a  pentinant and his clergy unless the pentinant waives his rights which the Plaintiff asserted during the hearing that she presided over.


## COUNT SIX

HOWARD COUNTY CIRCUIT COURT APPOINTING A KNOWN BIAS BEST
INTEREST ATTORNEY

VIOLATION OF PLAINTIFF'S STATE STATUTORY RIGHTS
VIOLATION OF PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS

177.  The Plaintiff incorporates paragraphs 1 through 176 as if fully set set forth herein.

178.  After Defendant Master Kramer and her fellow conspirators trampled over the Plaintiff's constitutional rights, she and her fellow conspirators sought to have Defendant V. Peter Markuski appointed as the Plaintiff's Best Interest Attorney.

179.  Defendant V. Peter Markuski is a well known advocate of woman's rights who seeks to have male spouses to be completely divested of any financial resources in order.

180.  Defendant V. Peter Markuski is a volunteer at the Women's Law Center of Maryland, Inc an organization that seeks to have women awarded more monies in family court.

181.  The Woman's Law Center of Maryland, Inc is an organization which seeks to divest male divorcing spouses of all future income and property so that their soon to be former spouse will be able to live lives of luxury and plenty, while their former males spouses live in poverty and are being deprived their rights to father their children.

182.  On March 23, 2009, the Howard County Circuit Court appointed the Defendant V. Peter Markuski as the Best Interest Attorney for the Plaintiff's minor children.

183.  Maryland Law mandates that the Plaintiff's children can not be a party to the

divorce.

184. Maryland Law mandates that the Best Interest Attorney can not represent a party to a divorce.

185. In addition to the order appointing the Defendant V. Peter Markuski as the Best Interest Attorney he was ordered to submit a monthly billing to all parties of the divorce and to the Howard County Circuit Court.

186. Defendant V. Peter Markuski has never submitted this monthly bill as required by the Howard County Circuit Court's orders appointing him.

187. The Plaintiff has complained to the Defendant Howard County Circuit Court  that Defendant V. Peter Markuski is not following court order by initiating contempt proceedings and motions to strike his appearance.

188. The Defendant Howard County Circuit Court has refused to compel Defendant V. Peter Markuski to follow any of its orders appointing him as the Plaintiff's Best Interest Attorney.

189. Defendant V. Peter Markuski has never acted in the Best Interest of the Plaintiff's attorney, but has instead acted as an additional attorney for Defendant Sarah P. McNeil contrary to Maryland State Statutes.

190. The Plaintiff has complained about the fact that Defendant V. Peter Markuski is only representing the Defendant Sarah P. McNeil interest to the Defendant Howard County Circuit Court via motions to strike Defendant V. Peter Markuski's appearances, however the Defendant Howard County Circuit Court refused to remove his from the case, and has required the Plaintiff to pay Defendant V. Peter Markuski outrageous sums of monies for him representing Defendant Sarah P. McNeil.

191. Defendant Judge Becker has violated the Plaintiff's do process rights by permitting

Defendant V. Peter Markuski to "represent" the Plaintiff's children, when in fact Defendant V. Peter Markuski's clearly lie with representing Defendant Sarah P. McNeil's interests and conspiring with his fellow conspirators to deny the Plaintiff his constitutional rights and or to further enrich himself.

## COUNT SEVEN

DEFENDANT SARAH P. MCNEIL PROVIDES
DEFENDANT V. PETER MARKUSKI PLAINTIFF'S PRIVILEGED INFORMATION IN
ORDER TO GAIN HIS PARTICIPATION IN THE OVERALL CONSPIRACY TO
DENY THE PLAINTIFF HIS STATE STATUTORY, STATE CONSTITUTIONAL, AND
U.S. CONSTITUTIONAL RIGHTS

VIOLATION OF PLAINTIFF'S STATE STATUTORY RIGHTS
VIOLATION OF PLAINTIFF'S FIRST, FIFTHFOURTEENTH AMENDMENT RIGHTS

192.  The Plaintiff incorporates paragraphs 1 through 191 as if fully set forth herein.

193.  Sometime after Defendant V. Peter Markuski was appointed as the Plaintiff's Best Interest Attorney the Defendant Sarah P. McNeil met with him in order to win him over.

194. During this meeting, in order to convince the Best Interest Attorney to take part of her conspiracy against her estranged husband, she provided to the Best Interest Attorney privileged communications concerning the Plaintiff which was to be protected by the Protection Order signed by a Howard County Circuit Court Judge.

195.  Defendant V. Peter Markuski had knowledge that this information was privileged and that he was not to have access to it.  However, he accepted the information from Defendant Sarah P. McNeil and committed himself to be part of the conspiracy.

196.  The Plaintiff after finding out that the Defendant Sarah P. McNeil has violated the Howard County Circuit Court protection order by giving to the Defendant V. Peter Markuski his privileged information moved to have Defendant V. Peter Markuski

appearance stricken.

197.  Defendant Judge Louis A. Becker denied the Plaintiff's request giving no reasoning.

198.  It should also be noted that Defendant V. Peter Markuski daughter also works at the Howard Count Circuit Court and Defendant V. Peter Markuski has a very good relationship with the Judiciary at the Howard Count Circuit Court that is beyond the court room.

199. Defendant Judge Louis A Becker denial of the Plaintiff's motion was in fact a denial of the Plaintiff's First, Fifth, and Fourteenth Amendment Rights.


## COUNT EIGHT

HOWARD COUNTY CIRCUIT COURT APPOINTS
A KNOWN BIAS CUSTODY EVALUATOR

VIOLATION OF PLAINTIFF'S STATE STATUTORY RIGHTS
VIOLATION OF PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS

200.  The Plaintiff incorporates paragraphs 1 through 199 as if fully set forth herein.

201.  On March 25, 2009, the Howard County Circuit Court ordered Defendant Patricia Bright to perform a Best Interest Assessment.

202.  Defendant Patricia Bright is the social worker for Howard County Circuit Court.

203.  Defendant Patricia Brights office is co-located near the all the Master's and Judges offices and she has frequent if not hourly conversations with all the judicial officers of the Howard County Circuit Court.

204. Defendant Patricia Bright is a very well known "No Spank" advocate, and disfavors any who is known to spank or has spanked in the past and she view spanking as child abuse.

205.  Maryland Family Law Article Section 4-501 (b) defines abuse as the following:

Abuse.

    (1) "Abuse" means any of the following acts:

    (i) an act that causes serious bodily harm;

    (ii) an act that places a person eligible for relief in fear of imminent serious bodily harm;

    (iii) assault in any degree;

    (iv) rape or sexual offense under §§ 3-303 through 3-308 of the Criminal Law Article or attempted rape or sexual offense in any degree;

    (v) false imprisonment; or

    (vi) stalking under § 3-802 of the Criminal Law Article.

    (2) If the person for whom relief is sought is a child, "abuse" may also include abuse of a child, as defined in Title 5, Subtitle 7 of this article. Nothing in this subtitle shall be construed to prohibit reasonable punishment, including reasonable corporal punishment, in light of the age and condition of the child, from being performed by a parent or stepparent of the child.

    (3) If the person for whom relief is sought is a vulnerable adult, "abuse" may also include abuse of a vulnerable adult, as defined in Title 14, Subtitle 1 of this article.

206. Maryland State Law states clearly state that reasonable corporal punishment is not child abuse.

207.  Defendant Patricia Bright is also known to have had several complaints against her for her using her office to advocate her own personal agendas against parents.

208.  Defendant Mary Kramer by having Defendant Patricia Bright appointed as the person to have evaluate whether or not the Plaintiff's children would be placed with him was based off her knowledge gained during the aforementioned Pendente Lite hearing that the Plaintiff on occasion has used corporal punishment to discipline his children.

209.  During the divorce trial held in 2010, Defendant Patricia Bright advocated her agenda

on the witness stand in cooperation wither her fellow conspirators stating that the Plaintiff's access to his children should be limited because he spanked his seven (7) year old daughter a couple times during his then eight (8) hour Sunday visitations.

210.  Based on the fact that Defendant Patricia Bright advocation of "no spank" as child abuse contrary to state law before the Howard County Circuit Court she advocated that the Plaintiff access to his children be limited.

211.  Defendant Patricia Bright's advocation of "no spank" while working as a county employees in order to prevent the Plaintiff from exercising his civil rights is contrary to Maryland State Law.

212.  Defendant Judge Becker and Defendant Master Kramer work in conspiracy with Defendant Patricia Bright and the other conspirators named in this complaint whereas they sought to deny the Plaintiff parental rights.

213.  Defendant Judge Becker and Defendant Master Kramer had and has a duty to act in the Best Interest of the Plaintiff's children.

214.  Defendant Judge Becker and Defendant Master Kramer by appoint and/or permitting Defendant Patricia Bright to participate concerning the custody matter of the Plaintiff's children is willful negligence.

### **COUNT NINE**

VIOLATION OF PLAINTIFF'S STATE STATUTORY RIGHTS
VIOLATION OF PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS

215.  The Plaintiff incorporates paragraphs 1 through 214 as if fully set forth herein.

216. On January 1, 2009, the Defendant Sarah P. McNeil physical assaulted the Plaintiff. Police were called, the Defendant Sarah P. McNeil filed a domestic violence complaint, and the Plaintiff filed a complaint against the Defendant Sarah P. McNeil for 2nd Degree

Assault.

217.  On January 5, 2009, an ex-parte Domestic Violence hearing was held in Howard

County District Court whereas the Defendant Sarah P. McNeil admitted under oath that she

attacked the Plaintiff.  However, since the Defendant presented the fact that she prevailed in

an ecclesiastical hearing stating that the Plaintiff was found guilty of various sins the

District Court Judge decided to issue a temporary domestic restraining order against the

Plaintiff and then transferred the case to Howard County Circuit Court where the Defendant

Sarah P. McNeil had filed for a limited divorce.

218.  On January 13, 2009, the transferred domestic violence hearing referenced above was

held at the Circuit Court of Howard County.

219.  During this hearing, the trial judge decided to not conduct a trial in reference to the

domestic violence complaint, but to consolidate it with the divorce actions currently on file

and then have the matter heard before a Master while at the same time extending the

protection order until the Pendente Lite Hearing.

220.  Maryland Law prohibits a Master to be able to try a Domestic Violence matter.

221.  Maryland Law prohibits the consolidations of a Domestic Violence matter with a

divorce actions.

222.  Due to the trial judge's rulings, the Plaintiff was deprived of contacting his children.

223.  Due to the trial judge's rulings, the Plaintiff was deprived all due process concerning

the Domestic Violence Matters.

## **COUNT TEN**

DEFENDANTS CONSPIRE
TOGETHER TO INITIATE A DOMESTIC VIOLENCE INCIDENT

VIOLATION OF PLAINTIFF'S STATE STATUTORY RIGHTS
VIOLATION OF PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS

224.  The Plaintiff incorporates paragraphs 1 through 223 as if fully set forth herein.

225.  Defendant Sarah P. McNeil on October 3, 2009 after conspiring with the defendants Stephen Drazin, V. Peter Markuski, and Patricia Bright decided to initiate a domestic violence incident in order to assist her fellow conspirators in their common goal to deprive the Plaintiff's rights to father his children.

226.  On October 3, 2009, Defendant Sarah P. McNeil with her children visited the Plaintiff outside of his residence.

227.  Towards the end of the visit, the Plaintiff informed Defendant Sarah P. McNeil that he had some medical supplied for his son inside of his residence and that he would go inside and bring them out to her.

228.  When the Plaintiff went to go inside the house, Defendant Sarah P. McNeil tried to follow him.  He told her that she was not permitted inside of the house because he did not want her to accuse him at a later date of him raping her.

229.  Defendant Sarah P. McNeil decided to try and push her way into the house anyways, and the Plaintiff resisted.

230.  The Howard County Police were called to the Plaintiff residence.

231. Afterwards, the Plaintiff filed a domestic violence complaint against Defendant Sarah P. McNeil and a temporary order was issued against Defendant Sarah P. McNeil

232.  On October 4, 2009, Defendant Sarah P. McNeil filed a retaliatory complaint

against the Plaintiff after she received a temporary restraining order.

233.  On October 5, 2009, the Howard County District Court held a Domestic Violence hearing, which both complaints were denied since neither party corroborated the others story enough whereas the District Court could provide either party relief.

234.  Also, during the hearing, Defendant Sarah P. McNeil testified that the Plaintiff pulled down his pants during her assault upon him.  The allegation came out again during Defendant Patricia Bright's testimony during the divorce trial.

235. Government workers are not to initiate or conspire or encourage parties in a child custody case to initiate domestic violence on the other party.

236. During the Domestic Violence hearing, the trial judge asked the Defendant Sarah P. McNeil if she informed the police on October 3, 2009 that the Plaintiff pulled down his pants.  Which the Defendant Sarah P. McNeil said no.  The trial judge responded to Defendant Sarah P. McNeil that a fact that the Plaintiff pulled down his pants was an important fact that should have been relayed to the police.


## COUNT ELEVEN

DEFENDANTS CONSPIRING TOGETHER TO INITIATE
A DEPARTMENT OF SOCIAL SERVICE INVESTIGATION AGAINST THE
PLAINTIFF INVESTIGATING FOR SEXUALLY
MOLESTING HIS DAUGHTER WHEN SHE WAS TWO YEARS OLD

VIOLATION OF PLAINTIFF'S STATE STATUTORY RIGHTS
VIOLATION OF PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS


237.  The Plaintiff incorporates paragraphs 1 through 236 as if fully set forth herein.

238.  After the Defendants plans to use a fabricated Domestic Violence incident were foiled, whereas the goal was to be able to get a judgment from a Howard County District

Court judge, that the Plaintiff was an abuser, they then decided to have a Department of Social Service (DSS) initiate an investigation against the Plaintiff.

239. On or around October 9, 2009, DSS began to investigate allegation whereas the Plaintiff was now being accused of raping his daughter then age six when she was two years old.

240. DSS concluded their investigation around November 2009 ruling out the possibility of sexual abuse by the Plaintiff.

241. Government works are to encourage or conspire with a party in a divorce case to have false child abuse charges filed.

242.  Patricia Bright during the divorce trial would make note of this DSS investigations and voicing her concerns about the Plaintiff's daughter having overnight visitations with him denying the Plaintiff his parental rights.

### COUNT TWELVE

DEFENDANTS CONSPIRES TO PREVENT A CONTEMPT COMPLAINT
CONCERNING VISITATION FROM BEING HEARD

VIOLATION OF PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS

243.  The Plaintiff incorporates paragraphs 1 through 242 as if fully set forth herein.

244. After the Defendant Sarah McNeil received an unfavorable ruling from the Howard County District Court Judge on October 5, 2009 concerning Domestic Violence, as stated before, her and her co-conspirators then planned on accusing the Plaintiff of sexually molesting his daughter, as part of that action the plan was then also to withhold visitation so that they could brain wash the Plaintiff's daughter into thinking that she was molested.

245. On October 30, 2009, the Plaintiff filed a contempt motions against the Defendant Sarah P. McNeil.

246.  The contempt motions was to be heard on December 3, 2009.

247. Defendant Judge Louis A. Becker III determined at that time he would not hear the

contempt motion, and in fact, he refused to rule upon it until over a year later.


## COUNT THIRTEEN

DEFENDANTS CONSPIRE TOGTHER SO THAT DEFENDANT SARAH P. MCNEIL
WILL NOT BE SANCTIONED
FOR NOT FOLLOWING COURT ORDERS CONCERNING UNDERGOING A
PSYCHOLOGICAL EVALUATION

VIOLATION OF PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS

248.   The Plaintiff incorporates paragraphs 1 through 247 as if fully set forth herein.

249.  As part of the Pendente Lite order signed by Howard County Circuit Court, both the

Plaintiff and Defendant Sarah P. McNeil were to be examined for the mental fitness in

respect to their parenting.

250.  The Plaintiff underwent the aforementioned examination.

251. Defendant Sarah P. McNeil refused to undergo the examination knowing that she

would be found unfit since she could not find a license professional that she was sane.

252.  It was testified during the divorce trial that Defendant Sarah P. McNeil was on

mental medications.

253. The Plaintiff on December 3, 2009 moved for sanctions against Defendant Sarah P.

McNeil.

254. Judge Louis A. Becker III denied the Defendant's motion, and later would rule that

he found her to be mentally fit.

## COUNT FOURTEEN

DEFENDANTS CONSPIRES TOGETHER
TO VIOLATE ALL DUE PROCESS CONCERNING HOW A DIVORCE TRIAL IS
CONDUCTED AND DETERMINED TO DETERMINE PROPERTY DIVISION FIRST
BEFORE A MERITS HEARING

VIOLATION OF PLAINTIFF'S STATE STATUTORY RIGHTS
VIOLATION OF PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS

255.  The Plaintiff incorporates paragraphs 1 through 254 as if fully set forth herein.

256. On December 3, 2009 Defendant Judge Louis A. Becker knowing long with his other defendants that the Defendant Sarah P. McNeil had no grounds for divorce and that if he was to have a merits hearing and if he ruled in accordance with law he would have to deny Defendant Sarah P. McNeil grounds for divorce and grant grounds for divorce to the Plaintiff.

257. Therefore, Defendant Judge Louis A. Becker with his fellow conspirators decided hold hearings concerning property division, and rescheduled all matters concerning custody and divorce merit six months out, which at that time the Defendant Sarah P. McNeil would have grounds for a divorce.

258. Maryland Stat Law is clear on this matter.  Divorce Trial due process involves having a merits hearing first, at which a divorce would be granted, then hearings concerning marital property determination, and then hearings concerning marital property division.

259. Defendant Judge Becker by doing this denied the Plaintiff his Maryland statuary rights, Fifth and Fourteenth Amendment Rights.

**COUNT FIFTEEN**

DEFENDANT JUDGE BECKER SANCTIONS PLAINTIFF UNCONSITITUTIOANLY

VIOLATION OF PLAINTIFF'S STATE STATUTORY RIGHTS
VIOLATION OF PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS

260. The Plaintiff incorporates paragraphs 1 through 259 as if fully set forth herein.

261. During the December 2009 portion of the Plaintiff's divorce trial, Defendant Judge Becker informed the Plaintiff that he would sanction the Plaintiff for not providing information in discovery.

262. At no time prior or after the Judge's notification to the Plaintiff was there ever a motion to compel the Plaintiff for discovery.

263. Defendant Judge Becker then during the December 2009 portion of the divorce trial informed the Plaintiff that he would give him more opportunity to make discovery.

264. After the December 2009 divorce trial, the Plaintiff lost the assistance of council do to the outrageous fees that Defendant Judge Becker order the Plaintiff to pay to Defendants Markuski and Drazin.

265. The Plaintiff made further discovery and filed a Notice of Discovery that the trial court willfully attributed to Dependant Sarah P. McNeil as making.

266. When the divorce trial resumed and very little was stated about discovery violations, and no ruling or hearing to determine if there was a discovery violation which monetary sanctions would be imposed upon the Plaintiff.

267. On December 27, 2011, Defendant Judge Becker filed his Order of Judgment of Absolute Divorce and ordered monetary awards to the Defendant Sarah P. McNeil for sanctions against the Plaintiff.

268. Defendant Judge Becker denied the Plaintiff any do process concerning the discovery sanctions.

269. The law is pretty clear that before a litigant can be sanctioned for discovery violations there must be an order compelling discovery, and that the order needs to be clear as to what must be provided in discovery.

270. Defendant Judge Becker falls back to a vaguely worded oral instructions that he gave to the Plaintiff and states that he finds that it was an order to compel discovery.    However, he did not docket even his vaguely worded order until after discovery was to be made. Additionally, Howard County Circuit Court refused to give to the Plaintiff copies of the audio for the hearings so that he would know what the judge said.

271. Defendant Judge Becker by ordering monetary sanctions against the Plaintiff violated the Plaintiff's constitutional rights.

### COUNT SIXTEEN

DEFENDANTS CONSPIRES TO PREVENT
PLAINTIFF FROM OBTAINING EVIDENCE

VIOLATION OF PLAINTIFF'S FIFTH  AMENDMENT RIGHTS

272.  The Plaintiff incorporates paragraphs 1 through 271 as if fully set forth herein.

273. After the Plaintiff filed his motion for custody of his children in the Circuit Court For Howard County, he issued a few subpoenas in trying to obtain his son's email, Facebook account, and web surfing history.

274. During the divorce trial, the Plaintiff revealed to the Howard County Circuit Court evidence that the Defendant Sarah P. McNeil was allowing his son to surf porn into the late

hours of the evening.

275. The Plaintiff has also obtained an entry on his son's Facebook wall where he informed the world that his Dad was not paying his mother the full alimony amount order by the Circuit Court For Howard County.

276. The Plaintiff subpoenaed his son to appear in the next contempt hearing as a fact witness so that he could identify himself on a video.

277. Defendant Judge Louis A. Becker III after conferring with his other conspirators named in this complaint ordered that the subpoenas be quashed and protective orders be put in place so that the Plaintiff would not be able to present evidence demonstrating how Defendant Sarah P. McNeil was brain washing his children.

278. The Plaintiff  subpoenaed Christina J. Bieganski as a fact witness in the contempt hearing to be held on August 31, 2011.

279.  However, her and  Defendant Lisa S. Mohink decided to approach Defendant Judge Diane O. Leasure to have a ex-parte hearing and then the sought out to further conspired with Defendant Judge Louis A. Becker III to have that subpoena "quashed"?  Quashed is in quotes since there is actually no order.  Defendant Louis A. Becker III just had the clerk of that court  docketed on the Howard County Circuit Court docket that Christian J. Bieganski is excused from attending the hearing.

280. The actions in this count is yet another example how Defendant Judge Becker has willfully denied the Plaintiff his due process rights in  the matter before the Howard County Circuit Court by preventing him from having witnesses or obtaining evidence.

281. The action in this count are part of a never ending conspiracy by the Defendant named in the law suit to deny the Plaintiff his due process and other due process rights.

## **COUNT SEVENTEEN**

UNDUE DELAY SO THAT JUSTICE WILL BE DENIED
TO THE PLAINTIFF

VIOLATION OF PLAINTIFF'S FIFTH  AMENDMENT RIGHTS

282.  The Plaintiff incorporates paragraphs 1 through 281 as if fully set forth herein.

283. Defendant Stephen Drazin conspired with the Circuit Court of Howard County to delay an Pendente Lite Hearing twice and then some how conspired with court personnel so that the hearing would have to be delayed again do to "Technical Difficult" with the audio recording system.

284. The Emergency Pendente Lite Hearing was originally scheduled on January 13, 2009 to occur on February 17, 2009.  However due the work of Stephen Drazin conspiring with court personnel the hearing would not actually occur until March 16, 2009.

285. Thought taken by itself, this over act does not amount to much.  However, taken as a whole with all the other overt acts demonstrates a clear and consistent pattern demonstrating a single purpose in mind.

286.  This is the first of a long line of acts where Defendant Stephen Drazin conspired with court personnel to delay hearings in order to deny the Plaintiff his due process rights.

287. Through out the divorce trial and even today, Defendant Stephen Drazin has constantly been able to delay hearings with the willing assistance of court personnel who are acting in concert with him.  Most interesting just as recent, Defendant Stephen Drazin was able to delay an custody hearing that was scheduled on August 31, 2011 the day before, so that he same hearing can be delayed until December 12, 2011.  Which has resulted in the Plaintiff not to have ANY visitation rights to see his children.

## **COUNT EIGHTTEEN**

DEFENDANT JUDGE LOUIS A. BECKER III HAS AN EX-PARTE CONVERSATION
WITH
DEFENDANT STEPHEN DRAZIN CONCERNING A CONFIRMATORY ORDER AND
THE TELLS A BOLD FACE LIE

VIOLATION OF PLAINTIFF'S FIFTH AMENDMENT RIGHTS

288.  The Plaintiff incorporates paragraphs 1 through 287 as if fully set forth herein.

289.  Sometime prior to May 20, 2010 but after February 30, 2010 Defendant Judge Louis

A. Becker III has an ex-parte conversation with Defendant Stephen Drazin whereas

Defendant Stephen Drazin gives to Defendant Judge Louis A. Becker III a propose order

knowing that the Plaintiff has not seen it.

290. Defendant Judge Louis A. Becker signed the order.

291. During the divorce trial the Plaintiff complained about this ex-parte conversation

whereas Defendant Judge Louis A. Becker III stated in his defense that the order stated

everything that he ruled upon in the prior hearing and that he had gone listed to the audio

recordings and confirmed that.

292. The matter the Plaintiff informed the Defendant Judge Louis A. Becker III that he had

not ruled that the Defendant Sarah P. McNeil was to get sole use and possession of the

marital home.  Defendant Judge Louis A. Becker III said that he did order use and

possession.

293. Since then the Plaintiff has received transcripts of the trial, and the transcripts indicate

that Defendant Judge Louis A. Becker III was clearly was lying.  Meaning he was

deliberately being untruthful in order to justify his ex-parte conversation with Defendant

Steven Drazin.

47

**COUNT NINETEEN**

DEFENDANT JUDGE LOUIS A. BECKER III REFUSING TO HEAR CONTEMPT
MOTIONS CONCERNING VISITATION AND THEN WHEN HE DOES HEAR
REFUSES TO FIND DEFENDANT SARAH P. MCNEIL IN CONTEMPT.
THOUGH ALL HE EVIDENCE INDICATES THAT SHE HAS REFUSED TO OBEY
COURT ORDERS

TERMINATION OF PRENTAL RIGHTS
VIOLATION OF PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS

294.   The Plaintiff incorporates paragraphs 1 through 293 as if fully set forth herein.

295. Starting on October 30, 2010 Defendant Sarah McNeil started to deny child visitation.

296. The Plaintiff files a series of contempt motions against the Plaintiff almost on a
weekly basis.

297. Defendant Judge Louis A. Becker III refused to here these motions until February 14,
2011.

298. Defendant Judge Louis A. Becker III denied everyone of the Plaintiff's motions even
though he made a finding that the Defendant Sarah P. McNeil has not obeyed the court's
orders concerning visitation.

299. Then Defendant Judge Louis A. Becker III ordered that the Plaintiff only be entitled to
one hour per week supervised visitation even though the Plaintiff has never been found
guilty of child abuse.

300. Defendant's Judge Louis A. Becker III refusing to hold the Plaintiff in contempt and
punishing the Plaintiff instead for her contempt is a violation of the Plaintiff's First and
Fourteenth Amendment.

301. Defendant's Judge Louis A. Becker III ordering the Plaintiff to only see his children
for one hour a week while be supervised by county employees is a termination of the

Plaintiff's fundamental right to be able to parent his children.

## COUNT TWENTY

DEFENDANT JUDGE LOUIS A. BECKER III DENIES PLAINTIFF EMERGENCY
MOTION TO RESUME NORMAL VISITATION PER JUDGMENT OF DIVORCE AND
THE  DEFENDANT JUDGE LOUIS A BECKER III SEVERING ATTEMPT TO SEVER
ALL TIES OF AFFECTION BETWEEN PLAINTIFF AND HIS CHILDREN

VIOLATION OF PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS

302.  The Plaintiff incorporates paragraphs 1 through 301 as if fully set forth herein.

303.  After Judge Louis A. Becker III ordered one hours per week supervised visitation,

Defendant Sarah P. McNeil knowing that her best friend Judge Becker would not find in in

contempt for failing to violate any of the trial courts orders decided to continue to ignore

the Circuit Court For Howard County orders.

304. The Plaintiff since then has filed more motions for contempt against Defendant Sarah

P. McNeil.

305. The Plaintiff also filed a motion to change custody do to the fact that Defendant Sarah

P. McNeil care of his son has encouraged him to rebel against all authority and that he

attacked a schoolmate on the buss with a knife, which resulted in being arrested and

suspended from school.

306. The Plaintiff seeing that his motion for contempt and for custody was not going to be

heard in timely matter, and that the supervised visitation order ran out filed for an

Emergency Motion to Resume Normal Visitation Per Judgment of Divorce.

307. Defendant Judge Louis A. Becker III denied the aforementioned motion, stating that

there is a custody hearing on August 31, 2011.

308. Then all the named Defendant's on August 31, 2011 conspired with each other to have

that hearing postponed which now the aforementioned motion will not be heard until for

custody will not be heard until December 12, 2011.

## COUNT TWENTY-ONE

### FAILURE TO SUPERVISED

VIOLATION OF PLAINTIFF'S STATE STATUTORY RIGHTS
VIOLATION OF PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS

309.  The Plaintiff incorporates paragraphs 1 through 308 as if fully set forth herein.

310.  Both Defendants Howard County Maryland and Howard County Circuit Court

failure to supervise their employees allowed these employees to conspire against the

Plaintiff in order to violate his civil rights.  Both of these employers knew or should have

known that their failure to supervise would lead to such mischief amongst their employees.

311.  Defendants Howard County Maryland and Howard County Circuit Court failure to

supervise employee's demonstrates that in Howard County, the policy is that citizen have

no rights under law and that the court reporters, social workers, custodians of records,

family law coordinators, supervised visitation center managers and judges are at liberty to

set whatever policy they desire even thought it conflicts with state laws or a citizens

constitutional rights.

## FIRST MARYLAND STATE LAW
## THAT VIOLATES THE UNITED STATES CONSTITUTION

### DEBOTRS PRISON FOR MEN ONLY

312.  The Plaintiff incorporates paragraphs 1 through 311 as if fully set forth herein.

313.  Article III, Section 38 of the Maryland State Constitution previously read as follows:

> No person shall be imprisoned for debt, but a valid decree of a court of competent
> jurisdiction or agreement approved by decree of said court for the support of a wife
> or dependent children, or for alimony, shall not constitute a debt within the meaning
> of this section.

314.  Do to the fact that the aforementioned version of Article III, Section 38 of the

Maryland State Constitution clearly violated the Fourteenth Amendment in that it made it

so that only husbands or ex-husbands could be imprisoned for non payment of alimony or

child support  the People of Maryland modified their constitution so it now read as follows:

> No person shall be imprisoned for debt, but a valid decree of a court of competent jurisdiction or agreement approved by decree of said court for the support of a spouse or dependent children, or for the support of an illegitimate child or children, or for alimony (either common law or as defined by statute), shall not constitute a debt within the meaning of this section. *(amended by Chapter 14, Acts of 1950, ratified Nov. 7, 1950; Chapter 121, Acts of 1962, ratified Nov. 6, 1962; Chapter 321, Acts of 1982, ratified Nov. 2, 1982).*

315.  However, though now by  the letter of the law women in fail to pay alimony or child

support can be placed in jail in accordance with Maryland State Constitution, the state's

practice is to only put men in jail.

316.  Statistic will clearly demonstrated that concerning child support that it is a very rare

event when a former wife is paying child support to her former husband for the care of her

children.

317.  It is unheard of in the State of Maryland for a women to be placed in jail for not

paying child support.

318.  Statistics will clearly demonstrate that only the smallest percent of men in the United

States ever receive alimony.

319.  It is unheard of in the State of Maryland for a women to be placed in jail for not

paying alimony to her former husband.

320.  There is no compelling government interest for placing fathers who fall behind in

their child support or alimony obligation in jail.

321.  Father and ex-husbands placed in jail loose all potential for ever being able to meet

their support obligations.

322. The government has other means to collect support obligations from men such as wage garnishments, bank account garnishments, domestic relations orders which can empty an IRA or 401K account, and the government can also intercept tax returns.

323. Article III, Section 38 of the Maryland State Constitution exception clause clearly discriminates against men only

324. The exception clause in Article III, Section 38 of the Maryland State Constitution violates the Fourteenth Amendment of the United States Constitution.

### SECOND MARYLAND STATE LAW
### THAT VIOLATES THE UNITED STATES CONSTITUTION

MARYLAND STATE CHILD SUPORT GUIDELINES

325.  The Plaintiff incorporates paragraphs 1 through 324 as if fully set forth herein.

326.  The Plaintiff has been order to pay child support by a Maryland court and that order is still in effect.

327.  The Defendant Sarah P. McNeil since her desertion from the Plaintiff on May 16, 2008 has not even attempted to obtain any employment and simply refuses to work since the amounts of child support are in excess of what the Plaintiff's children require and are in excess of what her own needs are.

328. The Defendant Sarah P. McNeil in receiving  only income earned by the Plaintiff that is garnished from his paycheck goes on vacation several times a year with the Plaintiff's children, whereas the Plaintiff has no monies to even go on any vacations for himself.

329.  The Plaintiff is a wage earner with no income other that that which is obtained from his full time employment.

330. Previously prior to being stripped of all his assets by a Maryland court the Plaintiff did

earn some income from investments.

331.  Unfortunately, do to the excessive abusive amounts that a Maryland court has ordered the Plaintiff to pay, the Plaintiff from the beginning of the Maryland Court's order has been continuously in the arrears do to the fact the amount so ordered are so high that Federal Wage Withholdings will not allow Maryland State to withhold anymore income.

332.  The Plaintiff has been virtually reduced to poverty because of the actions by the State of Maryland through its county employees.

333. The Maryland Family Law Article §12-204 sets the maximum amount for the basic child support obligation to be $2659 for the support of six (6) or more children per month.

334.  The Maryland Family Law Article §12-204 sets the minimum amount for the basic child support obligation to be $285 for the support of six (6) or more children per month.

335. The Maryland Family Law Article §12-204 sets the maximum amount for basic child support obligation to be $1616 for the support of two (2) children per month for combined income of a child's parents up to $100,000 per year.

336.  The Maryland Family Law Article §12-204 sets the minimum amount for the basic child support obligation to be $273 for the support of two (2) children per month.

337.  The Maryland Family Law Article §12-204 (d) states the following:

> Income above schedule levels.-If the combined adjusted actual income exceeds the highest level specified in the schedule in subsection (e) of this section, the court may use its discretion in setting the amount of child support.

338.  Maryland Law gives to the discretion to a judge to set child support for what ever he desires for families that have a combined income of over $100,000.00

339. The United States Department of Agriculture (USDA) is responsible to create reports from time to time to assist states in determining the amounts of child support to be paid by

non custodial parents based off income.

340. The Maryland State Legislature uses the aforementioned USDA reports in determining child support guidelines to be placed into law.

341. All children have a fundamental right to be provided for by both their parents equally for their substance until they reach the age of majority or are emancipated.

342. All children's fundamental right to receive support from their parents includes the following:  basic shelter, basic food, basic clothing,  basic education, basic medical, and love and affection from both parents.

343. All children do not have a fundamental right to receive basic shelters beyond that which their parents enjoys from their parents..

344. All children do not have a fundamental right to receive basic food beyond that which their parents enjoy from their parents.

345. All children do not have a fundamental right to receive basic medical  beyond that which their parents enjoy from their parents.

346. All children do not have a fundamental right to receive basic education beyond that which their parents enjoy from their parents.

347. All children do have a fundamental right to receive all the love and affections and support that a parent is willing to offer.

348. Maryland Family Law Article §12-204 imposes upon the citizen of Maryland who happened to be non custodial parents to child support obligations that are clearly not based upon what a child support requirements are but are instead based upon the income of the parents.

349. The State of Maryland does have a compelling government interest to create laws which obligate parents to support their children.

350. However this governmental interest should not go beyond that which would require to prevent a child to go on the roles of the states welfare system.

351. The State of Maryland has done studies and knows how much it takes to raise a child which is evident by what the State of Maryland pays out to Foster Parents.

352.  The State of Maryland pays Foster Parents $835 per child under age 11.  This amount takes into consideration room and board and monthly clothing allows.

353.   The State of Maryland pays Foster Parents $850 per child over age 11.  This amount takes into consideration room and board and monthly clothing allows.

354.  If the Maryland courts would have used the same figures it pays out for Foster Care in determining child support it would have determined that the total support requirement for the basic needs of the Plaintiff's children was $1685 per month.

355. Then if the amount required for the care of the Plaintiff's children was equally divided in half the Plaintiff's obligation would have been $842.50 per month verses the $1051 per month in what Defendant Judge Becker called child support and the additional $3,000 per month of what the State of Maryland and the United States Government calls child support.

356. In addition to basic child support, which is not covered in $1685 there are medical costs which should be covered for children.

357. In this case the Plaintiff solely covers his children's medical and dental through insurances which cost him approximately $162.00 per month.

358. Unfortunately, the laws of Maryland allows a judges to order child support  to provide the custodial parent an income or provide children with more monies from their father would have been required to pay if they lived with their fathers.

359.  Noncustodial fathers should not be forced to pay more for their children that custodial fathers would pay, or fathers would be forced to pay if the marriage never dissolved.

360. Maryland Child Support Guidelines violates the Plaintiff's Fourteenth Amendment Rights in that in forced him to pay more monies to support his children than he would have if the children were in his custody

361. The Maryland Child Support Guidelines are not consistent with Maryland State Law in what it already has determined via other legislation the monies required to raise a child.

362. There is no compelling government interest for the government to enrich one parent making it so that they can live at home while the children are in school, while compelling the other parent to contently be behind in his bills, contently being taken to court by the state and threaten daily with being put into jail.

363. The Maryland Child Support Guidelines are unusually cruel and causes fathers to become criminals while women are permitted to not have to work and enjoy a much higher standard of living that their former spouses who are the only ones actually working.

364. In order for the State of Maryland's Child Support Guidelines to not violate a father's Fourteenth Amendment Rights, child support guidelines basic support needs to be capped to what Maryland State Pays out for Foster Care Children and that basic support needs to be equally divided between both parents.

## THIRD MARYLAND STATE LAW
## THAT VIOLATES THE UNITED STATES CONSTITUTION

### COURT ORDERED MINOR CHILD ATTORNEY'S FEES

365.  The Plaintiff incorporates paragraphs 1 through 364 as if fully set forth herein.

366.  The Plaintiff was ordered to pay Defendant V. Peter Markuski council fees in accordance with The Maryland Family Law Article § 1-202.

367.  Do to the fact that the Plaintiff was ordered to pay these fee he was completely

stripped of his ability to pay for an attorney.

368.   The Maryland Family Law Article § 1-202 places no maximum amounts of fees to be awarded.

369.   The Maryland Family Law Article § 1-202 fees are repressive and cause and/or meant to cause a child parent to be penalized if he should have the misfortune of having to go through a divorce.

370.   Children do not have a fundamental right to have paid representation billed to a parent causing a parent to loose all paid representation before a court.

371.   The Maryland Family Law Article § 1-202 serves no government interest other than to penalize parents and discouraging parents with punitive legal fees for asserting their First Amendment Rights.

372.   The Maryland Family Law Article § 1-202 does not benefit children, but only attorney's who have developed relationships with Maryland's Circuit Court judges so that they are enable to strip families of their assets so that they will not be able to assist their children in the future.

373. The Maryland Family Law Article § 1-202. Appointment of counsel for minor reads as follow:

> (a) In general.-In an action in which custody, visitation rights, or the amount of support of a minor child is contested, the court may:
>
> (1) (i) appoint a lawyer who shall serve as a child advocate attorney to represent the minor child and who may not represent any party to the action; or (ii)appoint a lawyer who shall serve as a best interest attorney to represent the minor child and who may not represent any party to the action; and
>
> (2) impose counsel fees against one or more parties to the action.
>
> (b) Standard of care.-A lawyer appointed under this section shall exercise ordinary care and diligence in the representation of a minor child.

374. The Maryland Family Law Article § 1-202 is unconstitutional in that it is used to violated parties in a civil action due process rights in that it imposes council fees on one or more of the parties, which often times causes one of the parties or both parties to be able to pay for their own council fees.

375.  Parties have a Fifth Amendment Right to be able to be represented by paid counsel if they can afford it.

376. The State of Maryland uses Maryland Family Law Article § 1-202 to tax a party during a proceeding with council fees for their children so that they can strip a parties ability to be represented by counsel.

377. Maryland Family Law Article § 1-202 places no caps or limits on the amounts that the minor appointed attorney can charge, and Maryland State judges almost always awards the minor appointed attorney the full amount he states his bill is.

378. In McNeil v. McNeil which took place in Howard County Maryland, Best Interest Attorney V. Peter Markuski charges $316.00 per hour and has been granted the Circuit Court for Howard County over $53,000 in attorney's fees.  And unfortunately, he is still charging and the Plaintiff believes before he is done he plans on charging over $100,000 in attorney's fees before he is through.

379. Unfortunately, in McNeil v. McNeil, the Plaintiff here do to the burden of having to pay for his children's attorney and his wifes attorney, and $3,000 per month in alimony and $1068 in child support completely lost his ability to pay for his attorney fee, and the Plaintiff's attorney deserted him in the middle of the civil trial.

380. Also, since the Maryland Law practically grantees payment of the minor attorney, these attorneys often work without any retainer and will charge monies to be paid by the minors parents out of the marital estate.

381. Clearly, do to the fact that  Maryland Family Law Article § 1-202 violates parties ability to maintain paid counsel it violates a parents Fifth Amendment Rights, Fourteenth Amendment Rights, and First Amendment Rights.

382. Also, there is no government interest in enriching attorneys stating that it is in the Best Interest of Children, as these outrageous attorney fees can easily prevent parents from meeting their children's needs.


## RELIEF SOUGHT


**WHEREFORE** the Plaintiff prays for the following:

1.  That this court would grant Declarative Relief, Declaring that the exception clause in Article III Section 38 of the Maryland State Constitution which states <u>"but a valid decree of a court of competent jurisdiction or agreement approved by decree of said court for the support of a wife or dependent children, or for alimony, shall not constitute a debt within the meaning of this section"</u> violates the Fourteenth Amendment of the United States Constitution and therefore is unconstitutional and is to be treated as having no effect on the rest of Article III Section 38.

2.  That this court would grant Injunctive Relief, ordering  the state to release from its prisons, half way houses, or any other places where the state is detaining men unconstitutionally against their will.

3.  That this court would grant Declarative Relief, Declaring that the Maryland Family Law Article §12-204 violates the Fourteenth Amendment of the United States Constitution requiring a noncustodial parent to be responsible to be obligated to pay more monies for a support of a child than a custodial parent would pays or what the State of Maryland

allocates for Foster Care Children and therefore is unconstitutional.

4. That this court would grant Injunctive, ordering  the state to place maximum amounts that can be determined for basic support of a children that are the same which they used for Foster Care Children and that parent to be ordered to pay an equal amount so that both parents are treated equally under the law.

5.    That this court would grant Declarative Relief, Declaring that that Maryland Family Law Article § 1-202 violates the First Amendment, Fifth Amendment, and the Fourteenth Amendment Rights and that Maryland Family Law Article § 1-202 and therefore is unconstitutional.

6.    That this court would grant Declarative Relief concerning counts one through twenty-one against all the defendants named in their official complicities, Declaring that these defendants have violated the Plaintiff's constitutional rights and/or conspired to violate the Plaintiff's constitutional rights

7.  That this court would grant Monetary Relief concerning counts one through twenty-one against all the defendants named in their official complicities, that these defendant be ordered to pay the Plaintiff $1,500,000.00 in compensatory damages and $6,000,000.00 in Punitive Damages.

8.  That this court would grant Declarative Relief concerning counts one through twenty against Defendant Judge Diane O. Leasure named in her individual, Declaring that Defendant Judge Diane O. Leasure  has violated the Plaintiff's constitutional rights and/or has conspired with others to do so "under the color of law".

9. That this court would grant Monetary Relief concerning counts one through twenty against Defendant Judge Diane O. Leasure named in her individual, that she be ordered to pay the Plaintiff $6,000,000.00 in compensatory damages and $6,000,000.00 in Punitive

Damages.

10.   That this court would grant Declarative Relief concerning counts one through twenty against Defendant Lisa S. Mohink named in her individual capacity,  declaring that Defendant Lisa S. Mohink  has violated the Plaintiff's constitutional rights and/or  has conspired with others to do so "under the color of law".

11. That this court would grant Monetary Relief concerning counts one through twenty against Defendant Lisa S. Mohink named in her individual, that she be ordered to pay the Plaintiff $6,000,000.00 in compensatory damages and $6,000,000.00 in Punitive Damages

12.   That this court would grant Declarative Relief concerning counts one through twenty against Defendant Patricia Bright named in her individual capacity, declaring that Defendant Patricia Bright has violated the Plaintiff's constitutional rights and/or  has conspired with others to do so "under the color of law".

13.   That this court would grant Monetary Relief concerning counts one through twenty against Defendant Patricia Bright named in her individual, that she be ordered to pay the Plaintiff $6,000,000.00 in compensatory damages and $6,000,000.00 in Punitive Damages.

14.   That this court would grant Declarative Relief concerning counts one through twenty against Defendant Christina J. Bieganski named in her individual capacity, declaring that Defendant Christina J. Bieganski has violated the Plaintiff's constitutional rights and/or  has conspired with others to do so "under the color of law".

15.   That this court would grant Monetary Relief concerning counts one through twenty against Defendant Christina J. Bieganski named in her individual, that she be ordered to pay the Plaintiff $6,000,000.00 in compensatory damages and $6,000,000.00 in Punitive Damages.

16.  That this court would grant Declarative Relief concerning counts one through twenty

against Defendant Susan R. Gnatt named in her individual capacity, declaring that Defendant Christina J. Bieganski has violated the Plaintiff's constitutional rights and/or has conspired with others to do so "under the color of law".

17.  That this court would grant Monetary Relief concerning counts one through twenty against Defendant Susan R. Gnatt named in her individual, that she be ordered to pay the Plaintiff $6,000,000.00 in compensatory damages and $6,000,000.00 in Punitive Damages.

18.  That this court would grant Declarative Relief concerning counts one through twenty against Defendant Stephen A. Drazin, Declaring that he has conspired to violate the Plaintiff's constitutional rights with government employees acting under the "color of law" and others to violate the Plaintiffs constitutional rights.

19.  That this court would grant Monetary Relief concerning counts one through twenty against Defendant Stephen A. Drazin, that he be ordered to pay the Plaintiff $6,000,000.00 in compensatory damages and $6,000,000.00 in Punitive Damages.

20.   That this court would grant Declarative Relief concerning counts one through twenty against Defendant  V. Peter Markuski Jr., Declaring that he has conspired to violate the Plaintiff's constitutional rights with government employees acting under the "color of law" and others to violate the Plaintiffs constitutional rights.

21.  That this court would grant Monetary Relief concerning counts one through twenty against Defendant  V. Peter Markuski Jr., that he be ordered to pay the Plaintiff $6,000,000.00 in compensatory damages and $6,000,000.00 in Punitive Damages.

22.  That this court would grant Declarative Relief concerning counts one through twenty against Defendant Vincent Love., Declaring that he has conspired to violate the Plaintiff's constitutional rights with government employees acting under the "color of law" and others to violate the Plaintiffs constitutional rights.

23.  That this court would grant Monetary Relief concerning counts one through twenty against Defendant Vincent Love., that he be ordered to pay the Plaintiff $6,000,000.00 in compensatory damages and $6,000,000.00 in Punitive Damages.

24.  That this court would grant Declarative Relief concerning counts one through twenty against Defendant Sarah P. McNeil , Declaring that she has conspired to violate the Plaintiff's constitutional rights with government employees acting under the "color of law" and others to violate the Plaintiffs constitutional rights.

25.  That this court would grant Monetary Relief concerning counts one through twenty against Defendant Sarah P. McNeil, that she be ordered to pay the Plaintiff $6,000,000.00 in compensatory damages and $6,000,000.00 in Punitive Damages.

26.  That this court would grant Declarative Relief concerning counts one through twenty against M. Slutsky & Associates, Inc., Declaring that it has conspired to violate the Plaintiff's constitutional rights with government employees acting under the "color of law" and others to violate the Plaintiffs constitutional rights.

27.  That this court would grant Monetary Relief concerning counts one through twenty against Defendant M. Slutsky & Associates, Inc, that he be ordered to pay the Plaintiff $6,000,000.00 in compensatory damages and $6,000,000.00 in Punitive Damages.

28.  That this court would grant Declarative Relief concerning all Howard County Circuit Court proceedings and/or orders in reference to McNeil v. McNeil (Howard County Circuit Case No: 13C08075254)  all orders and/or proceedings, Declaring that the all the aforementioned proceedings that took place in the Howard County Circuit Court are unconstitutional and that any such court orders connected to those proceedings are unconstitutional and therefore are to be treated as void having no effect on any of the parties.

29. That this court would grant any further Declarative Relieve, Injunctive Relief, or monetary relief as this court may seem proper in the interest of justice.


Respectfully submitted,


Michael A. McNeil "Pro Se"
7807 Quill Point Drive
Bowie, MD 20720
mamcneil@gmail.com


## DEMAND FOR A JURY TRIAL

Plaintiff demands a jury trial on all triable issues.


Michael A. McNeil "Pro Se"
7807 Quill Point Drive
Bowie, MD 20720
mamcneil@gmail.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 20th day of September, 2011 I mailed a copy of the foregoing document, first class, postage pre-paid to the following:

H. Scott Curtis
Assistant Attorney General
200 St. Paul Place
20th Floor
Baltimore, MD 21202
(Representing all the State of Maryland; and all the government employees and government entities named in this complaint.)

Note: The other litigants named in this complaint have yet received their summons and will be served the foregoing document with their summons.

Michael A. McNeil "Pro Se"
7807 Quill Point Drive
Bowie, MD 20720
mamcneil@gmail.com

65