# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**MICHAEL A. McNEIL,**      ✦

    **Plaintiff**      ✦

          ✦

    **v.**      ✦      **Civil Case 8:11-cv-02495-DKC**

**STATE OF MARYLAND,** *et al.*,      ✦

    **Defendants.**      ✦

✦   ✦   ✦   ✦   ✦   ✦   ✦   ✦

**MEMORANDUM OF LAW IN SUPPORT OF CIRCUIT COURT DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT**

## TABLE OF CONTENTS

I.   FACTS ................................................................................................... 5

II.   STANDARD OF REVIEW .................................................................... 10

III.   ARGUMENT ........................................................................................ 10

  A.   Plaintiff's Claims Must Be Dismissed Against Defendants In Their Individual Capacity Because They Are Immune From Personal Liability. .................. 11

    1.   Defendant Judges are Absolutely Immune From Personal Liability. .... 11

    2.   Defendant Court Personnel are Absolutely Immune From Personal Liability. ........................................................................................... 14

  B.   Plaintiff's Claims Against The Circuit Court Defendants In Their Official Capacity And Claims Against the Court and the State Must Be Dismissed Because They Are Barred By Sovereign Immunity. .................................................. 15

1.    Sovereign Immunity Bars Plaintiff's Claims Against the Court. ........... 16

2.    Sovereign Immunity Bars Plaintiff's Claims Against the Individual Circuit Court Defendants in Their Official Capacity. ................................................. 17

3.    Maryland Has Not Waived Its Sovereign Immunity. ............................. 18

C.    Plaintiff's Claims Must Be Dismissed Because He Fails To State A Claim Upon Which Relief Can Be Granted. .......................................................................... 19

1.    Plaintiff Fails To State A Claim Under 42 U.S.C. § 1981. .................... 19

2.    Plaintiff Fails To State A Claim Under §1983. ..................................... 20

3.    Plaintiff Fails To State A Claim Under § 1985 Because She Does Not Allege Sufficient Facts To Support A Finding Of An Agreement, An Overt Act Done In Furtherance Of The Conspiracy, Or Racial Animus. .................................. 24

D.    Article III, Section 38 Of The Maryland Constitution is Constitutional... 30

E.    Maryland State Child Support Guidelines Are Constitutional. ................. 32

F.    Md. Code Ann., Family Law Art. § 1-202 is Constitutional..................... 33

IV.    CONCLUSION ........................................................................................... 34

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MICHAEL A. McNEIL,** | ✦ | |
| **Plaintiff** | ✦ | |
| | ✦ | |
| **v.** | ✦ | **Civil Case 8:11-cv-02495-DKC** |
| **STATE OF MARYLAND,** *et al.,* | ✦ | |
| **Defendants.** | ✦ | |

✦   ✦   ✦   ✦   ✦   ✦   ✦   ✦

**MEMORANDUM OF LAW IN SUPPORT OF CIRCUIT COURT DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT**

State of Maryland, Howard County Circuit Court, Howard County Circuit Court Chief Administrative Judge Diane O. Leasure, Howard County Circuit Court Associate Judge Louis A. Becker, III,  Howard County Circuit Court Master in Chancery Mary M. Kramer, Howard County Circuit Court Family Law Coordinator Lisa S. Mohink, Howard County Circuit Court Social Worker Patricia Bright, Howard County Circuit Court Supervised Visitation Center Christina J. Bieganski, and Howard County Circuit Court Supervisory Court Reporter Susan R. Gnatt, some of the Defendants (collectively "Circuit Court Defendants"), submit this Motion to Dismiss in response to the Amended Complaint (ECF No. 14) filed by Plaintiff.  The Complaint alleges that the Circuit Court

Defendants, in a wide-ranging series of conspiracies with others, violated Plaintiff's First, Fifth, and Fourteenth Amendment rights under the U.S. Constitution as well as state statutory and constitutional rights.

Plaintiff's self-represented 65 page, 364 paragraph Amended Complaint stems from Plaintiff's contentious and lengthy legal battle with his estranged wife concerning her allegations that Plaintiff was sexually molesting his daughter, that the Plaintiff was beating his son, and that the Plaintiff was forcing unnatural sex upon her. ECF No. 14, ¶ 7-10. The allegations were made first in ecclesiastical court[1], and then again in the circuit court. *Id.* Plaintiff's Amended Complaint here against the State, the court, two circuit court judges and a master, various court employees and several local attorneys is a result of his ongoing litigation against his wife, his church, and anyone connected with either case.

The individual Circuit Court Defendants are immune from personal liability for the acts Plaintiff alleges form the basis of his Amended Complaint. Plaintiff's claims against the individual Circuit Court Defendants in their official capacity, as well as against the state and the court, are barred by sovereign immunity. In addition, even if

---

[1] Plaintiff has filed suit against 27 defendants alleged to be connected with the ecclesiastical case in the Circuit Court for Anne Arundel County, *Michael A McNeil v. Presbytery Church In America*, *et al.*, Case Number 02C10157476.

Plaintiff's claims were not barred by immunity, Plaintiff fails to state a claim upon which relief can be granted.

## I.  FACTS

In November 2008, Plaintiff's wife Sarah filed for divorce in the Circuit Court for Howard County, *McNeil vs McNeil,* Case Number 13C08075254.  ECF No. 14, ¶ 6. Shortly thereafter, in January 2009, Sarah filed a petition for a domestic violence protective order in the District Court of Maryland.  ECF No. 14, ¶ 216.  A temporary protective order was entered by the District Court on January 5, 2009 and the matter was transferred on January 6, 2009, to the circuit court, *McNeil vs McNeil,* Case Number 13C09075815.   ECF No. 14, ¶ 217.  At a hearing on January 13, 2009, the circuit court ordered that the temporary protective order be extended until a hearing on the divorce case and that the protective order case be consolidated with the divorce case.  ECF No. 14, ¶¶ 218-19; *McNeil vs McNeil,* Case Number 13C09075815, Docket No. 7/0.  In the meantime, Defendant Judge Becker presided over a contempt hearing wherein he found Plaintiff in contempt of court for failure to pay $13,280.00 in court ordered attorney fees to Defendant Stephen Drazin.  ECF No. 14, ¶ 75.  When Plaintiff refused to pay, he was ordered jailed.  ECF No. 14, ¶ 78.  The divorce case remains ongoing, and appeals have

5

been filed[2], with a hearing currently scheduled for December 12, 2011,  ECF No. 14, ¶
287.

In this action, as amended, Plaintiff makes a series of allegations[3] concerning what
he perceives to be a wide-ranging conspiracy directed at fathers in general and him in
particular:

> "Count 1 of the Plaintiff's Amended Complaint details how Defendant
> Judge Leasure sought to cover up all the defendants named in this
> complaint actions by refusing to give to the Plaintiff copies of the audio for
> the hearings where the Plaintiff was a party to even though the Plaintiff has
> a clear Statutory Right and a clear Do Process Right to obtain copies of the
> hearing audio. (ECF No. 14 ¶ 22-67)
>
> Count 2 of the Plaintiff's Amended Complaint details how the defendants
> violated the Maryland State Constitution by having the Plaintiff sentence to
> prison for a debt thus violating the Plaintiff's Fourteenth Amendment
> Rights (ECF No. 14 ¶ 68-86)
>
> Count 3 of the Plaintiff's Amended Complaint details how the defendants
> caused the Plaintiff to be ordered to pay $4051.00 in child support per
> month violating Maryland State's Child Support Guidelines. Thus violating
> the Plaintiff's Fourteenth Amendment Rights (ECF No. 14 ¶ 87-124)

---

[2]Plaintiff has appealed the Circuit Court's ruling of December 27, 2010, in favor
of his wife.  Plaintiff's brief has been filed with the Maryland Court of Special Appeals
and oral arguments are scheduled to occur sometime in November 2011.  ECF No. 14, ¶
14.  Additionally, since the previously noted appeal, the Plaintiff also has filed several
appeals concerning post judgment orders signed by Defendant Judge Becker concerning
Plaintiff's visitation rights and the Court's order for Plaintiff to pay $4,051 per month in
child support.  ECF No. 14, ¶ 15.
[3] Plaintiff himself has summarized his Amended Complaint in response to the
Circuit Court Defendants' motions to dismiss.  ECF No. 16, pp. 3-8.  That summary is set
forth here unedited.

Count 4 of the Plaintiff's Amended Complaint details how the defendants sought to deny the Plaintiff his do process rights by first denying access to records and then after they conspire with each other, they have the Defendant Patricia Bright construct an unfavorable report to be later used against the Plaintiff in him obtaining custody or even visitation of his children. (ECF No. 14 ¶ 125-156)

Count 5 of the Plaintiff's Amended Complaint details how the defendants plotted to deny and denied the Plaintiff's First and Fourteenth Amendment Rights by having a Maryland Circuit Court compel the Plaintiff of his sins that he confessed before his church's clergy. (ECF No. 14 ¶ 157-173)

Count 6 through 7 of the Plaintiff's Amended Complaint details how the defendants brought in another conspirator that would aid their cause and work as an advocate for Sarah P. McNeil as the Plaintiff's Best Interest Attorney contrary to Maryland Statutes. (ECF No. 14 ¶ 174-196)

Count 8 of the Plaintiff's Amended Complaint details how the defendants brought in another conspirator that would work as the Social Worker for the custody evaluation who is known to advocate a "No Spank" position and that spanking your child is child abuse. Therefore, when making her recommendations for visitation and/or custody she will always advocate that children not be placed or have visitation with a parent who spanks contrary to state law. (ECF No. 14 ¶ 197-211)

Count 9 of the Plaintiff's Amended Complaint details how the defendants combined a domestic violence case with a divorce action contrary to state law, and then was to have the domestic violence matter heard before a master, again contrary to state law. (ECF No. 14 ¶ 212-220)

Count 10 of the Plaintiff's Amended Complaint details how the defendants plotted with one another to initiate a domestic violence against the Plaintiff so that it could be used against him in obtaining custody of his children. (ECF No. 14 ¶ 221-233)

Count 11 of the Plaintiff's Amended Complaint details how when the defendants plans to have the Plaintiff convicted of domestic violence that they further tried to have the Plaintiff convicted of child abuse so that this could be used against the Plaintiff in order to deny him access to his children or custody of his children. (ECF No. 14 ¶ 233- 239)

Count 12 of the Plaintiff's Amended Complaint details how the defendants conspired with each other to prevent a contempt hearing concerning child

access from being heard and ruled on for almost a year in a clear attempt to deny the Plaintiff do process. (ECF No. 14 ¶ 240-244)

Count 13 of Plaintiff's Amended Complaint details how the defendants denied the Plaintiff do process by preventing him from obtaining evidence as to Sarah P. McNeil fitness to be a parent is a custody actions even though it was both ordered that both Sarah P. McNeil and Michael A. McNeil to undergo a mental health evaluation as to their fitness to be parents. (ECF No. 14 ¶ 245-251)

Count 14 of Plaintiff's Amended Complaint details how the defendants prevented a merits hearing for a divorce to occur in December 2009 so that Sarah P. McNeil would have grounds for a divorce in June 2010 do to the elapse of time and in the process so that the Plaintiff's grounds for divorce could be denied. (ECF No. 14 ¶ 252-256)

Count 15 of the Plaintiff's Amended Complaint details how the defendants how the Plaintiff's plotted against the Plaintiff so that sanctions would be awarded against him, and in the process denied the Plaintiff his do process and statutory rights. (ECF No. 14 ¶ 257-268)

Count 16 of the Plaintiff's Amended Complaint details how the defendants worked with each other to deny the Plaintiff discovery and where the defendants held ex-parte hearings without notice to quash the Plaintiff's subpoenas so that he may not have any evidence in a custody/contempt hearing where Sarah P. McNeil violated court orders. (ECF No. 14 ¶ 269-278)

Count 17 of the Plaintiff's Amended Complaint details how the defendants worked together to delay an emergency visitation hearing concerning the Plaintiff's visitation rights so that that the Plaintiff would have absolutely no visitation rights to see his children. (ECF No. 14 ¶ 279-284)

Count 18 of the Plaintiff's Amended Complaint details how an ex-parte conversation occurred between Defendant Judge Becker and Defendant Stephen Drazin whereas he accepted a draft order and signed it without the Plaintiff given a copy prior to it being signed. Then subsequently Judge Becker on the bench informed the Plaintiff that everything that was in the order he had previously ordered verbally from the bench and that he reviewed the audio to make sure it conformed with his original order. The hearing transcripts shows that that the verbal order and the written order do not conform to each other. (ECF No. 14 ¶ 285-290)

Count 19-20 of the Plaintiff's Amended Complaint details how the defendants refused to enforce child visitation order and when the Plaintiff pressed the matter by filing several contempt motions, the defendants decided that if the Plaintiff is not happy with not being able to see his children in accordance with visitation orders that they would remedy the matter by ordering that the Plaintiff being ordered even less visitation to the point where he gets no visitation of his children at all. (ECF No. 14 ¶ 291-305)

Count 21 of the Plaintiff's Amended Complaint details how the defendants Howard County, and Howard County Circuit Court failed to supervise their employees and allowed them to violate the Plaintiff's civil rights. (ECF No. 14 ¶ 306-308)

ECF No. 14 ¶ 309-321 is question to this court whether or not the Maryland State Constitution Article III, Section 38 exception clause which states "but a valid decree of a court of competent jurisdiction or agreement approved by decree of said court for the support of a wife or dependent children, or for alimony, shall not constitute a debt within the meaning of this section" violates the Fourteenth Amendment of the United States Constitution. It should be noted that the exception clause originally had to do with the support of a wife and that it is the practice of Maryland to only put in prison men for not paying alimony and/or child support.

ECF No. 14 ¶ 322-361 is concerning a question to this court as to whether or not Maryland Family Law Article §12-204 violates the Fourteenth Amendment of the United States Constitution requiring a noncustodial parent to be responsible to be obligated to pay more monies for a support of a child than a custodial parent would pay or what the State of Maryland allocates for Foster Care Children and therefore is unconstitutional.

ECF No. 14 ¶ 362-379 is concerning a question to this court as to whether or not Maryland Family Law Article §1-202 violates the First Amendment, Fifth Amendment, and the Fourteenth Amendment Rights.

ECF No. 14 pages 59-63 details that the Plaintiff is praying for Declarative Relieve, Inductive Relief, and Monetary Relief."

ECF No. 16, pp. 3-8.

On September 9, 2011, Plaintiff filed this action against the Circuit Court Defendants, among others, pursuant 42 U.S.C. § 1983.

## II.   STANDARD OF REVIEW

Ordinarily, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. At 1949. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.   ARGUMENT

Plaintiff's claims to relief are not plausible on their face because the well-pleaded facts do not permit this Court to infer more than the mere fanciful possibility of misconduct by any of the defendants.  The Circuit Court Defendants here are entitled to absolute immunity in their individual capacities for the acts Plaintiff alleges form the basis of his complaint.  Plaintiff's claims against the Circuit Court Defendants in their official capacity likewise are barred by sovereign immunity.  Finally, Plaintiff fails to state any plausible claims upon which relief can be granted.

A. **Plaintiff's Claims Must Be Dismissed Against Defendants In Their Individual Capacity Because They Are Immune From Personal Liability.**

Plaintiff brings this Amended Complaint against most of the Circuit Court Defendants in both their official and individual capacities.  Because it is clear that well-established common-law immunities bar Plaintiff's claims against all the Circuit Court Defendants in their personal capacity, Plaintiff's claims in the Amended Complaint lack merit.  For a discussion on why Plaintiff's claims against the Circuit Court Defendants in their official capacity also must fail, see section B.

1. **Defendant Judges are Absolutely Immune From Personal Liability.**

Plaintiff's claims against the Defendant judges must be dismissed because the claims are barred by absolute judicial immunity[4].  Absolute judicial immunity for judicial acts applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Bradley v. Fisher*, 13 Wall. 335, 347 (1872).

In determining if a judge performed a judicial act, the court considers "whether [the act] is a function normally performed by a judge" and "whether [the parties] dealt

_____

[4] Plaintiffs' claims against the Circuit Court for Howard County are barred by absolute judicial immunity to the same extent the claims against the judges are barred. Plaintiff's claims stem from the actions of the judges of those courts in hearing his divorce and domestic violence cases.  These claims are therefore subject to the judges' judicial immunity.  Claims against these state agencies are also barred by sovereign immunity.  *See* Section B(1), *infra*.

with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).

All allegations that Plaintiff makes against the defendant judges are judicial acts.  Judges

normally determine whether to admit evidence, grant or deny motions, reverse lower

court decisions, manage the discovery timeline, and modify scheduling orders.  Plaintiff

dealt with the judges in their judicial capacity, appearing before the judge as a party,

when the judges took each of these actions.

Furthermore, the judge must have general judicial authority to take the judicial act.

As long as the judge does not have a "clear absence of all jurisdiction over the subject

matter," judicial immunity will bar claims against a judicial act.  *Fisher*, 13 Wall. at 351.

Plaintiff does not allege the defendant judges in this case lacked clear jurisdiction over

the subject matter.  Certainly the circuit and district court judges had general jurisdiction

to hear his claims, defenses and motions.

It is well established that judges cannot be held liable under Section 1983 for

damages based on their judicial acts.  *Id; see also Berg v. Cwiklinski*, 416 F.2d 929, 931

(7th Cir. 1969) (dismissing claim brought, in part, under §1985 because judges "are

immune from liability for acts done in performance of their judicial function"); *Burke v.

Miller*, 580 F.2d 108, 109 (4th Cir. 1978) (stating that *Imbler v. Pachtman*, 424 U.S. 409

(1976), reaffirms "that §1983 (and, we believe, §1985 as well) is to be read in harmony

with general principles and tort immunities rather than in derogation of them"); *Stambler

v. Dillon*, 302 F.Supp. 1250, 1254-55 (D.C.N.Y. 1969) ("There is no doubt that [the

defendant judge] is immune from any liability under the Civil Rights Act. . .where he acts

within the course and scope of his judicial duties."); *Knight v. Episcopal Church of United States*, 2010 WL 2930979 (D.S.C. Mar. 24, 2010) (holding that defendant judge was absolutely immune against lawsuit brought under RICO for performing normal judicial functions and where facts did not indicate the acts were taken in clear absence of all jurisdiction).

Here, although Plaintiff concedes in ECF No. 16, p. 10, that judges enjoy judicial immunity, he nevertheless maintains (1) that judicial immunity does not bar the Plaintiff from seeking declaratory relief for a judge's actions, and (2) that judicial immunity does not bar the Plaintiff from seeking monetary relief from "non judicial acts that a judge performs such as a custodian of records."  While it is true generally that judges do not enjoy judicial immunity from prospective injunctive relief, *see Pulliam v. Allen*, 466 U.S. 522, 541-542 (1984) ("judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her  judicial capacity"), Plaintiff here has sought monetary damages, and to that extent, he has failed to state claims against the Circuit Court Judges upon which monetary relief can be granted.  In addition, Plaintiff pleads that when Judge Leasure denied his request for copies of the audio recordings, she did so in ruling on his motion filed in an ongoing case.  ECF No. 14, ¶¶ 34-35.  In other words, Judge Leasure was acting as a judge when she denied Plaintiff's motion for copies of the audio recordings.  To that extent, Judge Leasure's actions are clothed with judicial immunity.

13

**2.      Defendant Court Personnel are Absolutely Immune From Personal Liability.**

The judicial employees named in the Amended Complaint, Ms. Mohink, Ms. Bright, Ms. Bieganski, and Ms. Gnatt, are immune from personal liability from the claims made in the Amended Complaint to the same extent as the judges:

> "There have, however, been a number of cases dealing with the extension of judicial immunity to law clerks employed by a judge and to court clerks who act under the direction of a judge or who implement judicial orders of one kind or another. The general rule is that those individuals, when performing tasks that are integral to the judicial process, enjoy the same immunity that is applicable to the judges. Particularly in the more recent cases, the courts have applied the same kind of functional analysis that has been applied to judges."

*Gill v. Ripley*, 352 Md. 754, 771 (Md. 1999).  *See also Briscoe*, 460 U.S. at 335 ("[T]he common law provided absolute immunity from subsequent damages liability for all persons- governmental or otherwise- who were integral parts of the judicial process."); *Sindram v. Suda*, 986 F.2d 1459, 1460 (C.A.D.C. 1993) (holding that "clerks, like judges, are immune from damage suits for performance of tasks that are an integral part of the judicial process" because of the 'danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly would vent their wrath on clerks, court reporters, and other judicial adjuncts.'") (*quoting Dellenbach v. Letsinger, 889 F.2d 755, 763 (7th Cir.1989)).    Therefore, the claims against Ms. Mohink, Ms. Bright, Ms. Bieganski, and Ms. Gnatt must be dismissed.

14

**B.**     **Plaintiff's Claims Against The Circuit Court Defendants In Their Official Capacity And Claims Against the Court and the State Must Be Dismissed Because They Are Barred By Sovereign Immunity.**

Plaintiff brings his claims against all individual the Circuit Court Defendants in their official capacity. In addition, these claims are brought against the Circuit Court for Howard County and the State of Maryland.  Plaintiff requests both compensatory and punitive damages, as well as declaratory and injunctive relief.

The Eleventh Amendment confers the sovereign status of the states and shields them from suits brought by individuals.  *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (stating that under the Eleventh Amendment "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as citizens of another State"); U.S. Const. amend. XI.  Therefore, the State is not susceptible to suit in federal court without a valid waiver or abrogation of its sovereign immunity.  *See Board of Trs. of Univ. of Ala.,* 531 U.S. 356, 363 (2001).

Although the Eleventh Amendment only refers to claims against the State, it is "well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment."  *Id.*  Both Plaintiff's claims against the Circuit Court Defendants in their official capacity, as well as his claims against the state agencies, are really claims against the State which are barred by the Eleventh Amendment.  Because Maryland has not waived its sovereign immunity, nor has Maryland's sovereign immunity been abrogated by any of the statutes under which Plaintiff brings his claim, Plaintiff's Amended Complaint must be dismissed.

15

**1.     Sovereign Immunity Bars Plaintiff's Claims Against the Court.**

Plaintiff's claims against the Circuit Court for Howard  County are properly considered claims against the State and are barred by sovereign immunity.  The Circuit Court for Howard County is a court of general jurisdiction in Maryland which exercises the sovereign immunity of the State in performing its judicial functions.  *See* Md. Const. art. IV §§ 14A, 19, 41A; Md. Code Ann. Cts. & Jud. Proc. §§ 1-401, 1-501, 1-601. Therefore, the Circuit Court for Howard County is properly considered a state agency.

It is well established that not only a State, but also its agencies or "arms," are entitled to sovereign immunity under the Eleventh Amendment.  *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *Puerto Rico Aqueduct & Sewer Auth'y v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144 (1993) (stating that States and its "arms" are entitled to the immunity conferred by the Eleventh Amendment).  The Eleventh Amendment is a jurisdictional bar to claims against the State, and its agencies, regardless as to the nature of the relief sought.  See *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Therefore, the Circuit Court for Howard County is immune from suit and Plaintiff's claims against them must be dismissed.

**2.      Sovereign Immunity Bars Plaintiff's Claims Against the Individual Circuit Court Defendants in Their Official Capacity.**

Plaintiff's claims against the individual Circuit Court Defendants in their official capacity for damages are barred by Eleventh Amendment sovereign immunity.  When a claim is made against an individual in his or her official capacity for damages, Eleventh Amendment sovereign immunity applies because the state is the real party in interest to the suit.  "When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."  *Edelman*, 415 U.S. at 663 (*quoting Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 (1945)).  *See also*, *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (stating that under the Eleventh Amendment "[f]ederal courts may not award retrospective relief, for instance money damages or its equivalent, if the State invokes its immunity");  *Edelman*, 415 U.S. at 663 ("[T]he rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.").  Indeed, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (U.S. 1989)(internal citations omitted.)

Therefore, Plaintiff's claims for damages against individual Circuit Court Defendants in their official capacity are barred by the Eleventh Amendment and must be dismissed.

### 3.    Maryland Has Not Waived Its Sovereign Immunity.

Because Plaintiff's claims are barred by the Eleventh Amendment, the State is not susceptible to suit in federal court without a valid waiver or abrogation of its sovereign immunity.  *See Board of Trs. of Univ. of Ala.,* 531 U.S. 356, 363 (2001).  Although the State has created a limited waiver of its sovereign immunity under the Maryland Tort Claims Act ("MTCA"), that waiver is expressly limited to suits brought in state court. *See* Md. Code Ann., State Gov't § 12-104(a)(1) ("[T]he immunity of the State and of its units is waived as to a tort action, *in a court of the State,* to the extent provided under paragraph (2) of this subsection." (Emphasis added)).  Moreover, the MTCA expressly states that the State has not "waive[d] any right or defense of the State or its units, officials, or employees in an action in a court of the United States or any other state, including any defense that is available under the 11th Amendment to the United States Constitution."  Md. Code Ann., State Gov't § 12-103(2); *see also Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99 n.9 (1984) ("[T]he Court consistently has held that a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts."); *Weller v. Department of Soc. Servs.,* 901 F.2d 387, 397 (4th Cir. 1990) (MTCA "clearly limits the state's waiver of immunity to actions brought in the Maryland state courts").  Because all of Plaintiff's claims against

the individual Circuit Court Defendants and the state entities are barred by the Eleventh Amendment, they should be dismissed.

### C.    Plaintiff's Claims Must Be Dismissed Because He Fails To State A Claim Upon Which Relief Can Be Granted.

Plaintiff fails to state a claim upon which relief can be granted under 42 U.S.C. 1983.  In order to survive a motion to dismiss, a complaint "must 'provide the grounds of the plaintiff's entitlement to relief' with 'more than labels and conclusions.'"  *US Airline Pilots Ass'n v. Awappa, LLC*, 2010 WL 2979332, at *2 (4th Cir. July 30, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Ultimately, 'factual allegations must. . . raise a right to relief above the speculative level,' and the complaint must offer 'enough fact to raise a reasonable expectation that discovery will reveal evidence' of the alleged activity."  *Id.*  (quoting *Bell Atl. Corp.*, 550 U.S. at 555-56).  Plaintiff fails to offer any specific allegations of acts taken in violation of the statutes under which she brings a claim.  The speculative, broad, and conclusory allegations in his Amended Complaint do not reasonably lead to the determination that further investigation will produce any evidence of the violations she alleges.

### 1.    Plaintiff Fails To State A Claim Under 42 U.S.C. § 1981.

Plaintiff fails to state a claim under § 1981 upon which relief may be granted because he does not allege discrimination on the basis of his race.  Section 1981 states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property *as is enjoyed by white*

19

*citizens*, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981 (emphasis added).  Plaintiff cites 42 U.S.C. § 1981 once in the Amended Complaint at ¶ 2, and does not cite it again.   Plaintiff does not allege in any of these counts that he was unable to enjoy rights to the same extent as white citizens.[5]  Nor has Plaintiff stated any predicate acts of fraud with particularity, specifying the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby, as required by Fed. R. Civ. P. 9(b).  Consequently, Plaintiff's claims brought under § 1981 should be dismissed.

### 2.     Plaintiff Fails To State A Claim Under §1983.

Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979)); *see also Wofford v. Evans,* 390 F.3d 318, 322 n.1 (4th Cir. 2004).  "[O]ne cannot go into court and claim a 'violation of § 1983'– for § 1983 by itself does not protect anyone against anything." *Gonzaga Univ. v. Doe,* 536 U.S. 273, 285 (2002) (quoting *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 617 (1979)).  Under § 1983 a person is liable when, under the color of law, he or she deprives another of a constitutionally protected

---

[5] Plaintiff does not mention race at all.  Plaintiff's complaint read as a whole does not allege differential treatment between him and people of another race.  Instead, the differential treatment is alleged between fathers and attorneys, litigants with attorneys, and judges.

right.  42 U.S.C. § 1983.

### a)      Plaintiff Is Not Entitled To Injunctive Relief.

As an initial matter, Plaintiff is not entitled to have a federal court should enjoin a pending state-court proceeding under 42 U.S.C. § 1983, absent a showing of "irreparable injury" "unless it is 'both great and immediate.'" *Younger v. Harris*, 401 U.S. 37, 46 (1971), *quoting Fenner v. Boykin*, 271 U.S. 240, 243-244 (1926).   Here, Plaintiff has made no showing of irreparable injury, nor has he shown that the pending state court proceeding offers him an inadequate remedy at law.   Therefore, this Court should not enjoin any aspect of the pending state court proceedings.

*Pulliam v. Allen*, 466 U.S. 522, 537-539 (U.S. 1984) is instructive.   In that case, the Supreme Court held that while judicial immunity is not a bar to prospective injunctive relief against a state court judge, "[f]or the most part, injunctive relief against a judge raises concerns different from those addressed by the protection of judges from damages awards."  *Id*.  The Court further cautioned that:

> The limitations already imposed by the requirements for obtaining equitable relief against any defendant -- a showing of an inadequate remedy at law and of a serious risk of irreparable harm, *see Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-507 (1959) -- severely curtail the risk that judges will be harassed and their independence compromised by the threat of having to  defend themselves against suits by  disgruntled litigants. Similar limitations serve to prevent harassment of judges through use of the writ of mandamus. Because mandamus has "the unfortunate consequence of making the judge a litigant, obliged to obtain personal counsel or to leave his defense to one of the litigants before him," the Court has stressed that it should be "reserved for really extraordinary causes."  *Ex parte Fahey*, 332 U.S. 258, 260 (1947).

*Id*. (footnotes omitted).

21

Article III also imposes limitations on the availability of injunctive relief against a state court judge. *See In re Justices of Supreme Court of Puerto Rico*, 695 F.2d 17, 21 (CA1 1982) (no case or controversy between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute). *See also Los Angeles v. Lyons*, 461 U.S. 95 (1983) (claims for injunctive relief against unconstitutional state practice too speculative); *Pulliam*, 466 U.S. at 538-39 ("The other concern raised by collateral injunctive relief against a judge, particularly when that injunctive relief is available through § 1983, relates to the proper functioning of federal-state relations. Federal judges, it is urged, should not sit in constant supervision of the actions of state judicial officers, whatever the scope of authority under § 1983 for issuing an injunction against a judge. … We reaffirm the validity of those principles and the need for restraint by federal courts called on to enjoin the actions of state judicial officers.)

Therefore, this Court should decline Plaintiff's invitation to enjoin what is a quintessentially state court proceeding.

### b) The Circuit Court Defendants Are Not "Persons" Within The Meaning Of § 1983.

First, Plaintiff's § 1983 claims against the Circuit Court for Howard County must be dismissed because none is a proper defendant under § 1983.   Neither the State nor its agencies or officials in their official capacities are "persons" subject to suit under § 1983. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 70-71 (1989).   Therefore,

Plaintiff's claims against the Circuit Court Defendants in their official capacities for money damages must be dismissed.

### c)      Plaintiff Has Failed To Allege A Constitutional Violation.

Assuming that a proper defendant is named in a § 1983 claim, the "first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  Plaintiff makes a claim under § 1983 for any of the Court rulings in his divorce action.  Instead, he projects the rulings against him as rulings against men and fathers in general.    However, there is no constitutionally protected right requiring a judge to make certain rulings in Plaintiff's favor.  Those issues were litigated and Plaintiff lost, pending his ongoing multiple appeals.  To the extent he now complains in federal court, Plaintiff has failed to assert a valid constitutional claim.

Plaintiff also states that he was deprived of his rights under the First, Fifth and Fourteenth Amendments to the United States Constitution.  Plaintiff does not attempt to connect the alleged acts to violations of these constitutional rights.  Plaintiff cannot merely conclude his rights under the First, Fifth, and Fourteenth Amendments have been violated.   In order to withstand a motion to dismiss, the complaint "must 'provide the grounds of the plaintiff's entitlement to relief' with 'more than labels and conclusions.'" *US Airline Pilots Ass'n v. Awappa, LLC*, 2010 WL 2979332, at *2 (4th Cir. July 30, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**3.    Plaintiff Fails To State A Claim Under § 1985 Because She Does Not Allege Sufficient Facts To Support A Finding Of An Agreement, An Overt Act Done In Furtherance Of The Conspiracy, Or Racial Animus.**

Section 1985 of the Civil Rights Act prohibits five classes of conspiracy.  *Kush*, 460 U.S. at 724.  Section 1985 is divided into three subsections; §1985(1) prohibits one class of conspiracy, and §§1985(2) and (3) each prohibit two classes of conspiracy.  *Id.* Three of the five categories relate to institutions and processes of the federal government; §1985(1) deals with federal officers, the first part of §1985(2) deals with federal judicial proceedings, and the second part of §1985(3) deals with federal elections.  *Id.*  Because Plaintiffs make no allegations concerning federal officers, federal judicial proceedings, or federal elections, these subsections of §1985 are totally inapplicable to the instant case.[6]

Therefore, Plaintiff's claims must be brought pursuant to the second part of §1985(2) or the first part of §1985(3).   The second part of §1985(2) prohibits conspiracies to obstruct the course of justice in state courts.  The first part of §1985(3) provides a cause of action against persons who conspire to deprive a person or class of persons of the equal protection or equal privileges and immunities of the law.  Although they prohibit different classes of conspiracies, both subsections require proof of an agreement or meeting of the minds between the alleged conspirators, an overt act done in furtherance of the conspiracy, and racial or class-based animus.  Because Plaintiff has not

---

[6] All of the proceedings which Plaintiff alleges form the bases of his claims took place in state court and all Circuit Court Defendants are state employees.

stated any such facts or any predicate acts of fraud with particularity, specifying the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby, as required by Fed. R. Civ. P. 9(b), his claim must be dismissed.

> **a)**  **Plaintiffs' Conspiracy Claims Must be Dismissed for Failure to Allege Sufficient Facts to Show an Agreement or Meeting of the Minds Between Defendants.**

In order to allege a cause of action for conspiracy under §1985, the plaintiff must show an agreement or meeting of the minds between the defendants to commit the wrongful act and cause the resulting injury to the plaintiff.  *See Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995) ("Moreover, the law is well settled that to prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights."); *Hinkle v. City of Clarksburg, West Virginia*, 81 F.3d 416, 421-22 (4th Cir. 1996) (stating that to prove conspiracy to block access to the courts, plaintiffs must prove a "mutual understanding" or agreement to commit the wrongful act); *Lenard v. Argento*, 699 F.2d 874, 882 (7th Cir. 1983) (stating that the "principal element" of civil conspiracy under §1985 is "an agreement between the parties 'to inflict a wrong against or injury upon another'") (*quoting Rotermund v. United States Steel Corp.*, 474 F.2d 1139 (8th Cir. 1973)).

Because Plaintiff must prove an agreement or meeting of the minds between Defendants, he has "a weighty burden to establish a civil rights conspiracy."  *Hinkle*, 81 F.3d at 421.  Consequently, the Fourth Circuit Court of Appeals stated it "has rarely, if

ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy." *Simmons*, 47 F.3d at 1377.  *See also Hoffman v. Baltimore Police Dept.*, 379 F.Supp.2d 778, 798 ("The Fourth Circuit has taken a restrictive view of [a §1985] cause of action.").

In the instant case, Plaintiff falls far short of meeting this weighty burden.  He alleges no concrete facts that can permit a reasonable inference of an agreement or meeting of the minds between Defendants.  Plaintiff only makes conclusory statements and bald allegations of conspiracy.  The Fourth Circuit Court of Appeals has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Simmons*, 47 F.3d at 1377.  *See also Gooden v. Howard County*, 954 F.2d 960, 969 (4th Cir. 1992) (stating that courts have required "plaintiffs alleging unlawful intent in conspiracy claims under §1985(3) or §1983 plead specific facts in a non-conclusory fashion to survive a motion to dismiss"); *Ballinger v. North Carolina Agr. Extension Service*, 815 F.2d 1001, 1007 (4th Cir. 1987) (dismissing a §1985 claim because "[q]uite simply, there is no proof, direct or indirect, of participation in any conspiracy by these appellees.  Instead, appellant relies solely on the bare allegations of his complaint").

In *Hinkle*, the Fourth Circuit Court of Appeals held the appellants did not allege sufficient facts to prove an agreement by the alleged conspirators.  81 F.3d at 422. Appellants argued that the fact a police offer threw away probative evidence was proof of a conspiracy.  *Id.*  The Court noted the appellants "offer no evidence, other than the act

itself, that [the police officer] intended to further a conspiratorial objective." *Hinkle*, 81 F.3d at 422.   The appellants did not "disclose any communication" by the alleged conspirators that would give rise to an inference of an agreement. *Id.* The court noted that the "evidence must, at least, reasonably lead to the inference that [the alleged conspirators] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.* at 421.

Likewise, Plaintiff offers no evidence of a conspiracy.   Plaintiff points to no communication between Defendants or any communication between himself and Defendants that allude to a conspiracy.   Defendants include multiple state employees, courts, and judges.   There is absolutely no evidence tying these varied Defendants together other than as the objects of Plaintiff's litigious rants.

It appears that several Defendants are named because Plaintiff believes they failed to correct certain alleged violations of law.   However, the Fourth Circuit Court of Appeals has specifically rejected the idea that willful blindness can support a §1985 conspiracy claim because willful blindness is not evidence of an agreement to participate in the conspiracy.   The Court stated that the law is clear it "must be shown that there was a 'single plan, the essential nature and general scope of which was known to each person'. . . alleged 'willful blindness'. . . simply does not meet such a standard." *Simmons*, 47 F.3d at 1378.

Plaintiff's Amended Complaint amounts to no more than wild speculation and bald allegations.   The Fourth Circuit Court of Appeals has spoken very strongly against

allowing this type of speculation to support a §1985 conspiracy claim.  It stated, "[w]hile we recognize that direct evidence of a conspiracy is not always available, we cannot use this fact as an excuse to forgive Appellants' failure to prove their case.  There is a reason why we do not allow this level of conjecture to determine lawsuits: such adventures of the mind tend to be unreliable." *Hinkle*, 81 F.3d at 423.  Consequently, the Amended Complaint should be dismissed.

> **b)     Plaintiff's Claim Must Be Dismissed For Failure To Allege An Overt Act In Furtherance Of the Alleged Conspiracy.**

Plaintiff fails to allege an overt act taken by Defendants in furtherance of the alleged conspiracy, and therefore his Amended Complaint must be dismissed.  There "cannot be a civil cause of action for conspiracy under §1985 without an overt act." *Lenard*, 699 F.2d at 883.  *See also Simmons*, 47 F.3d at 1376 (stating that injury as "a consequence of an overt act committed by the defendants in connection with the conspiracy" is an essential element of a cause of action for conspiracy under §1985); *Griffin*, 403 U.S. at 103 (stating that a complaint must allege defendants "did, or caused to be done, any act in furtherance of the object of the conspiracy" in order to state a cause of action under §1985).

Although Plaintiff brings a claim under §1985 against all Defendants, Plaintiff attributes no specific act to any of the Defendants; Plaintiff only alleges a broad range of acts and does not allege which Defendant took the act.   While it is difficult to understand why Plaintiff believes any of the Defendants conspired against him, it is certainly an

"adventure of the mind" to claim that impartial judges and court officials, who never came into contact with Plaintiff outside of the scope of their constitutional, statutory and common law duties, somehow conspired against him.  Plaintiff also has failed to state any predicate acts of such fraud and conspiracy with particularity, specifying the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby, as required by Fed. R. Civ. P. 9(b).

c)      **Plaintiffs' Claim Must Be Dismissed for Failure to Allege Sufficient Facts to Support a Finding of Class-Based Animus.**

To maintain a cause of action under either §§1985(2) or (3), "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Kush*, 460 U.S. at 726 (*quoting Griffin*, 403 U.S. at 102).  In addition, "the 'invidiously discriminatory animus' requirement. . . requires that the defendant have taken his action at least in part 'because of', not merely 'in spite of,' its adverse affects upon an identifiable group." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 276 (1993).  However, Plaintiff does not allege a single fact from which a person can reasonably infer Defendants were motivated because of racial or class-based animus.  Plaintiff's claims of conspiracy.

Plaintiff points to no discriminatory statements or acts by Defendants that could reasonable lead to an inference of improper animus.  Because Plaintiff does not allege sufficient facts to establish the required element of improper animus, his conspiracy or §1985 claims must be dismissed.

**D.      Article III, Section 38 Of The Maryland Constitution is Constitutional.**

Plaintiff claims that Article III, Section 38 of the Maryland Constitution is unconstitutional under the Fourteenth Amendment.  ECF No. 14, ¶¶ 312-24.  Plaintiff's assertions are without merit.

Article III, Section 38 of the Maryland Constitution provides:

> No person shall be imprisoned for debt, but a valid decree of a court of competent jurisdiction or agreement approved by decree of said court for the support of a spouse or dependent children, or for the support of an illegitimate child or children, or for alimony (either common law or as defined by statute), shall not constitute a debt within the meaning of this section.

Although Plaintiff concedes that Article III, Section 38 of the Maryland Constitution is gender-neutral, ECF No. 14, ¶ 315, he contends without support that "Statistic will clearly demonstrated that concerning child support that it is a very rare event when a former wife is paying child support to her former husband for the care of her children. …  It is unheard of in the State of Maryland for a women to be placed in jail for not paying child support."  ECF No. 14, ¶¶ 316-17. Plaintiff does not make a plausible case beyond a bald unsupported allegation that Article III, Section 38 of the Maryland State Constitution is unconstitutional as applied to him.   Significantly, Plaintiff misapprehends the  purpose of Article III, Section 38, which is to make clear the distinction between a parent's duty to support a minor child and a "debt":

> The function of child support is to help a custodial parent maintain an adequate standard of living for the child . . . . Characterizing arrearages as nothing more than a "debt" owed to the custodial parent ignores the reality

that the child is frequently the one who has been harmed by nonpayment and it is the child's interests which are ultimately sought to be protected. The payment of arrearages compensates for the wrong to the child at least as much as it reimburses the custodial parent for monies spent on the child. Although the extent to which a child presently benefits from the payment of arrearages varies from case to case, past due child support is still more properly characterized as an unfulfilled duty to the child than a "debt" to the custodial parent.

*Middleton v. Middleton*, 329 Md. 627, 637 (Md. 1993).   In other words, Article III,

Section 38 provides that while no person may imprisoned for failure to pay a "debt", a

person *may* be incarcerated for failure to pay child support.[7]   Consequently, Article III,

_____

[7] The Middleton Court explained at 638-639:

"The constitutional provision prohibits imprisonment for debt. Although it does not define "debt", the exclusions from the prohibition, which it does contain, make clear that it does not include support obligations.   Thus, the reach of the constitutional provision is not determined, nor meant to be, by the method chosen to enforce the child support claim. The determination whether a particular obligation constitutes a debt within the contemplation of the constitutional provision depends upon the essential nature of that obligation. Once the nature of the obligation has been determined, the provision's reach has also been determined. We hold that since a parent's child support obligation is not a debt within the prohibition of § 38, the obligation of the defaulting parent may be enforced by means of the court's contempt power, including imprisonment, pending the purging of the default."

31

Section 38 does not unconstitutionally discriminate between men and women in violation of the Fourteenth Amendment.

### E.   Maryland State Child Support Guidelines Are Constitutional.

Plaintiff next complains that the Maryland Child Support Guidelines, Md. Code Ann., Family Law Art. § 12-204, are unconstitutional.  He is wrong.

Md. Code Ann., Family Law Art. § 12-204(a)(1) provides:

The basic child support obligation shall be determined in accordance with the schedule of basic child support obligations in subsection (e) of this section. The basic child support obligation shall be divided between the parents in proportion to their adjusted actual incomes.

Subsection (e) contain the basic child support obligation schedule or guidelines.  Plaintiff does not contend that Md. Code Ann., Family Law Art. § 12-204(e) is unconstitutional because basic child support obligation schedules or guidelines are unconstitutional. Rather, Plaintiff makes the rather remarkable claim that the amounts set forth in § 12-204(e) are too high because they "should not go beyond that which would require to prevent a child to go on the roles of the state's welfare system."  ECF No. 14, ¶ 350. Plaintiff can point to no authority his extraordinary constitutional argument, instead he boldly proclaims that "[t]he Maryland Child Support Guidelines are unusually cruel and causes fathers to become criminals while women are permitted to not have to work and

enjoy a much higher standard of living that their former spouses who are the only ones actually working."  ECF No. 14, ¶ 363.  He concludes:

> In order for the State of Maryland's Child Support Guidelines to not violate a father's Fourteenth Amendment Rights, child support guidelines basic support needs to be capped to what Maryland State Pays out for Foster Care Children and that basic support needs to be equally divided between both parents.

Because there is no Fourteenth Amendment constitutional right to pay only an amount of child support sufficient to keep your minor child off the welfare rolls, Plaintiff has failed to sustain his claim that the Maryland Child Support Guidelines are unconstitutional.

### F.    Md. Code Ann., Family Law Art. § 1-202 is Constitutional.

Plaintiff's claim that "Maryland Family Law Article § 1-202 is unconstitutional" is equally without merit.  Md. Code Ann., Family Law Art. § 1-202 provides:

> § 1-202. Appointment of counsel for minor
>
> (a) In general. -- In an action in which custody, visitation rights, or the amount of support of a minor child is contested, the court may:
>
> (1) (i) appoint a lawyer who shall serve as a child advocate attorney to represent the minor child and who may not represent any party to the action; or
>
> (ii) appoint a lawyer who shall serve as a best interest attorney to represent the minor child and who may not represent any party to the action; and
>
> (2) impose counsel fees against one or more parties to the action.
>
> (b) Standard of care. -- A lawyer appointed under this section shall exercise ordinary care and diligence in the representation of a minor child.

Plaintiff claims § 1-202 is unconstitutional "in that it is used to violated parties in a civil action due process rights in that it imposes council fees on one or more of the parties, which often times causes one of the parties or both parties to be able to pay for their own council fees." ECF No. 14, ¶ 374. Even if true, Plaintiff's argument does not render § 1-202 unconstitutional. Even assuming that parties had to pay for the "best interests" counsel in addition to their own counsel, this statute would not be facially unconstitutional because litigants are not members of a protected class. *See Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985) (stating that statutes not classifying by race, national origin, alienage, or gender are subject to rational basis review). Plaintiff has not established that the statute lacks any rational basis. The statute also does not violate any right to procedural due process because Plaintiff was able to bring his case before the court and he received – and continues to receive – all the process he was due. Procedural due process does not guarantee a person the right to not pay his minor child's "best interests" counsel fees in defending or bringing a civil claim.

## IV.  CONCLUSION

Plaintiff's Amended Complaint should be dismissed, with prejudice, and judgment should be entered in favor of the Circuit Court Defendants as to all claims.

Respectfully submitted,

34

H. Scott Curtis
Assistant Attorney General
Federal Bar No. 08313
200 St. Paul Place
20th Floor
Baltimore, Maryland 21202
(410) 576-6576
(410) 576-6393 (fax)
hcurtis@oag.state.md.us

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this September 27, 2011, a copy of the foregoing was served by electronic means via the Court's Case Management / Electronic Case Files (CM/ECF) system on the persons entitled to receive such notice, and by mailing via U.S. Mail, postage prepaid to:

Michael A. McNeil
7807 Quill Point Drive
Bowie, Maryland  20720

H. Scott Curtis
Assistant Attorney General