**IN THE  UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **MICHAEL A. MCNEIL** | * | |
| **Plaintiff** | * | |
| **v.** | * | |
| **STATE OF MARYLAND, et al** | * | **Civil Action No:  8:11-cv-02495-DKC** |
| **Defendants** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

**TABLE OF CONTENTS**

I. FACTS....................................................................................................................2

II  STANDARD OF REVIEW .......................................................................................8

III ARGUMENT..........................................................................................................10

  A.  Judicial Immunity....................................................................................10

    1.  Defendant Judge Leasure Acting as a Custodian of Records is Not a Judicial Act

    ....................................................................................................................12

    2.  The Assistant State's Attorney General would Have This Court Grant Judicial

    Immunity to A Social Worker, a Supervised Visitation Center Manager,  A Family

Law Coordinator, and a  Court Reporter...................................................................16

B.  Eleventh Amendment Immunity............................................................................17

C.  Concerning Maryland Waiving its Sovereign Immunity........................................19

D.  This Court's Subject Matter Jurisdiction over Defendant V. Peter Markuski,
Defendant Steven A. Drazin, Defendant Vincent Love, Defendant M. Slutsky &
Associates, Inc  and or any other non government employee so named in the Plaintiff's
Complaint.................................................................................................................19

E.  Defendants' arguments concerning conspiracy issues............................................21

F.  As to Defendant Howard County Maryland's claims that the 5th Amendment only
applies to the federal government..............................................................................22

G.  As to Defendant Howard County Maryland's arguments concerning the deprivation
of constitutional rights of Howard County Citizens....................................................23

H.  As to the Constitutional Question Posed To This Court Concerning Maryland State
Law..........................................................................................................................24

    1.  Does Article III Section 38 of the Maryland State Constitution which states "but
    a valid decree of a court of competent jurisdiction or agreement approved by decree
    of said court for the support of a wife or dependent children, or for alimony, shall
    not constitute a debt within the meaning of this section" violates the Fourteenth
    Amendment of the United States Constitution?......................................................25

    2.  Maryland Family Law Article §12-204 violates the Fourteenth Amendment of
    the United States Constitution?..............................................................................27

3.  Maryland Family Law Article § 1-202 violates the First Amendment, Fifth

Amendment, and the Fourteenth Amendment.........................................................28

I.  Defendant's Demand Proof Prior To Discovery Or Trial.........................................30

J.  As to The Relief Being Sought...............................................................................31

IV  Conclusion ............................................................................................................31

2011-12-16  Plaintiff's Memorandum of Law In Support of Plaintiff's Opposition to Defednants' Motion To Dismiss.odt

**IN THE  UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**


**MICHAEL A. MCNEIL**       \*

     **Plaintiff**      \*

     **v.**      \*

**STATE OF MARYLAND, et al**      \*    **Civil Action No:  8:11-cv-02495-DKC**

     **Defendants**      \*

     \*

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
**\*\*\*\*\*\***

## <u>MEMORANDUM OF LAW IN SUPPORT OF</u><br><u>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS</u>

This Memorandum of Law is filed in support of the Plaintiff's opposition to the

Defendants' Motions to Dismiss (ECF No. 46) submitted to this court by Vincent Love,

and M. Slutsky & Associates, Inc Responses; Defendant's Motion to Dismiss (ECF No.

52) submitted to this court by Steven A. Drazin;  and Defendant's Motion to Dismiss

(ECF No. 53) submitted by Howard County Maryland.

     Do to the fact that aforementioned defendants motions to dismiss uses basically

the same arguments to support their motions, the Plaintiff elects to answer them all in one

response.

1

## I. FACTS

The Plaintiff files his complaint pursuant to 42 U. S. C. Sections 1981,

1983, 1985, and 1986 and alleges county government defendant employees acting  under

the "color of law" sought to deprive and/or conspired to deprive with the other non

county employee/entities defendants named in this complaint the Plaintiff's First

Amendment Rights, Fifth Amendment Rights, Fourteenth Amendment Rights, as well as

the Plaintiff's Maryland State Statutory Rights, and the Plaintiff's Maryland State

Constitutional Rights.   (ECF No. 14  ¶ 2)

The defendants actions were part of a drawn out divorce/custody litigation which

were the defendants colluded and plotted mischief against the Plaintiff denying  in order

to assist Sarah P. McNeil so that she would prevail in her litigation against the Plaintiff.

Do to their various acts, the defendants acts resulted in the Plaintiff's United States

Constitutional Rights, Maryland State Constitutional Rights, and Maryland State

Statutory Rights were violated causing sever financial and emotions harm to the Plaintiff.

(ECF No. 14  ¶ 6-21)

Count 1 of the Plaintiff's Amended Complaint details how Defendant Judge

Leasure sought to cover up all the defendants named in this complaint actions by refusing

to give to the Plaintiff copies of the audio for the hearings where the Plaintiff was a party

to even though the Plaintiff has a clear Statutory Right and a clear Do Process Right to

obtain copies of the hearing audio.  (ECF No. 14  ¶ 22-67)

Count 2 of the Plaintiff's Amended Complaint details how the defendants violated

2

the Maryland State Constitution by having the Plaintiff sentence to prison for a debt thus violating the Plaintiff's Fourteenth Amendment Rights (ECF No. 14 ¶ 68-86)

Count 3 of the Plaintiff's Amended Complaint details how the defendants caused the Plaintiff to be ordered to pay $4051.00 in child support per month violating Maryland State's Child Support Guidelines.  Thus violating the Plaintiff's Fourteenth Amendment Rights (ECF No. 14 ¶ 87-124)

Count 4 of the Plaintiff's Amended Complaint details how the defendants sought to deny the Plaintiff his do process rights by first denying access to records and then after they conspire with each other, they have the Defendant Patricia Bright construct an unfavorable report to be later used against the Plaintiff in him obtaining custody or even visitation of his children.  (ECF No. 14 ¶ 125-156)

Count 5 of the Plaintiff's Amended Complaint details how the defendants plotted to deny and denied the Plaintiff's First and Fourteenth Amendment Rights by having a Maryland Circuit Court compel the Plaintiff of his sins that he confessed before his church's clergy.  (ECF No. 14 ¶ 157-173)

Count 6 through 7 of the Plaintiff's Amended Complaint details how the defendants brought in another conspirator that would aid their cause and work as an advocate for Sarah P. McNeil as the Plaintiff's Best Interest Attorney contrary to Maryland Statutes.  (ECF No. 14 ¶ 174-196)

Count 8 of the Plaintiff's Amended Complaint details how the defendants brought in another conspirator that would work as the Social Worker for the custody evaluation

who is known to advocate a "No Spank" position and that spanking your child is child abuse.  Therefore, when making her recommendations for visitation and/or custody she will always advocate that children not be placed or have visitation with a parent who spanks contrary to state law.  (ECF No. 14 ¶ 197-211)

Count 9 of the Plaintiff's Amended Complaint details how the defendants combined a domestic violence case with a divorce action contrary to state law, and then was to have the domestic violence matter heard before a master, again contrary to state law.  (ECF No. 14 ¶ 212-220)

Count 10 of the Plaintiff's Amended Complaint details how the defendants plotted with one another to initiate a domestic violence against the Plaintiff so that it could be used against him in obtaining custody of his children.  (ECF No. 14 ¶ 221-233)

Count 11 of the Plaintiff's Amended Complaint details how when the defendants plans to have the Plaintiff convicted of domestic violence that they further tried to have the Plaintiff convicted of child abuse so that this could be used against the Plaintiff in order to deny him access to his children or custody of his children.  (ECF No. 14 ¶ 233-239)

Count 12 of the Plaintiff's Amended Complaint details how the defendants conspired with each other to prevent a contempt hearing concerning child access from being heard and ruled on for almost a year in a clear attempt to deny the Plaintiff do process. (ECF No. 14 ¶ 240-244)

Count 13 of Plaintiff's Amended Complaint details how the defendants denied the

4

Plaintiff do process by preventing him from obtaining evidence as to Sarah P. McNeil fitness to be a parent is a custody actions even though it was both ordered that both Sarah P. McNeil and Michael A. McNeil to undergo a mental health evaluation as to their fitness to be parents.  (ECF No. 14 ¶ 245-251)

Count 14 of Plaintiff's Amended Complaint details how the defendants prevented a merits hearing for a divorce to occur in December 2009 so that Sarah P. McNeil would have grounds for a divorce in June 2010 do to the elapse of time and in the process so that the Plaintiff's grounds for divorce could be denied.  (ECF No. 14 ¶ 252-256)

Count 15 of the Plaintiff's Amended Complaint details how the defendants how the Plaintiff's plotted against the Plaintiff so that sanctions would be awarded against him, and in the process denied the Plaintiff his do process and statutory rights.  (ECF No. 14 ¶ 257-268)

Count 16 of the Plaintiff's Amended Complaint details how the defendants worked with each other to deny the Plaintiff discovery and where the defendants held ex-parte hearings without notice to quash the Plaintiff's subpoenas so that he may not have any evidence in a custody/contempt hearing where Sarah P. McNeil violated court orders. (ECF No. 14 ¶ 269-278)

Count 17 of the Plaintiff's Amended Complaint details how the defendants worked together to delay an emergency visitation hearing concerning the Plaintiff's visitation rights so that that the Plaintiff would have absolutely no visitation rights to see his children.  (ECF No. 14 ¶ 279-284)

Count 18 of the Plaintiff's Amended Complaint details how an ex-parte conversation occurred between Defendant Judge Becker and Defendant Stephen Drazin whereas he accepted a draft order and signed it without the Plaintiff given a copy prior to it being signed.  Then subsequently Judge Becker on the bench informed the Plaintiff that everything that was in the order he had previously ordered verbally from the bench and that he reviewed the audio to make sure it conformed with his original order.  The hearing transcripts shows that that the verbal order and the written order do not conform to each other.   (ECF No. 14  ¶ 285-290)

Count 19-20 of the Plaintiff's Amended Complaint details how the defendants refused to enforce child visitation order and when the Plaintiff pressed the matter by filing several contempt motions, the defendants decided that if the Plaintiff is not happy with not being able to see his children in accordance with visitation orders that they would remedy the matter by ordering that the Plaintiff being ordered even less visitation to the point where he gets no visitation of his children at all.   (ECF No. 14  ¶ 291-305)

Count 21 of the Plaintiff's Amended Complaint details how the defendants Howard County, and Howard County Circuit Court failed to supervise their employees and allowed them to violate the Plaintiff's civil rights.  (ECF No. 14  ¶ 306-308)

 ECF No. 14  ¶ 309-321 is question to this court whether or not the Maryland State Constitution Article III, Section 38 exception clause which states "but a valid decree of a court of competent jurisdiction or agreement approved by decree of said court for the support of a wife or dependent children, or for alimony, shall not constitute a debt within

6

the meaning of this section" violates the Fourteenth Amendment of the United States Constitution.   It should be noted that the exception clause originally had to do with the support of a wife and that it is the practice of Maryland to only put in prison men for not paying alimony and/or  child support.

ECF No. 14  ¶ 322-361 is concerning a question to this court as to whether or not Maryland Family Law Article §12-204 violates the Fourteenth Amendment of the United States Constitution requiring a noncustodial parent to be responsible to be obligated to pay more monies for a support of a child than a custodial parent would pay or what the State of Maryland allocates for Foster Care Children and therefore is unconstitutional.

ECF No. 14  ¶ 362-379 is concerning a question to this court as to whether or not Maryland Family Law Article §1-202 violates the First Amendment, Fifth Amendment, and the Fourteenth Amendment Rights.

ECF No. 14 pages 59-63 details that the Plaintiff is praying for Declarative Relieve, Inductive Relief, and Monetary Relief.

On October 27, 2011, the Plaintiff send a letter to the Custody of Records for Howard County Circuity Court requesting for copies of audio recordings in accordance with the Maryland Public Information Action and the Maryland Rules for Courts. (ECF No. 37 attachment #2)

On November 14, 2011, Defendant Judge Lois A. Becker responds to the letter in ECF No 37 attachment #2 to the Custodian of Records for Howard County Circuit Court and denies the Plaintiff's request informing the Plaintiff that Howard County Circuit

7

Court does not as a policy obey the Maryland Public Information Act or the MD Rules for courts.

## II  STANDARD OF REVIEW

In order for the Plaintiff's complaint to survive a motion to dismiss, a claim must make plain statements that shows that the pleader is entitled to relief.  Detailed factual allegations are not required, however there must be enough factual matter if accepted as true give the court to draw reasonable inference that the defendant is liable for misconduct alleged.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 173 L.Ed2d 868 (2009) states the following:

> (b) Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, *Twombly*, 550 U.S., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," *id.*, at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Two working principles underlie *Twombly*. First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. *Id.*, at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Second, determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. *Id.*, at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded [129 S. Ct.1941] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Pp. 13-16.

8

Additionally, do to the fact that the Plaintiff is an unlearned pro se litigant this court must apply the standard of review for unlearned pro se litigants.  In that pro se litigants' court submissions are to be construed liberally and held to less stringent standards than submissions of lawyers.  If the court can reasonably read the submissions, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with rule requirements. Boag v. MacDougall, 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982); Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)(quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972);  McDowell v. Delaware State Police, 88 F.3d 188, 189 (3rd Cir. 1996); United States v. Day, 969 F.2d 39, 42 (3rd Cir. 1992) (holding pro se petition cannot be held to same standard as pleadings drafted by attorneys); Then v. I.N.S., 58 F.Supp.2d 422, 429 (D.N.J. 1999).

The courts are to provide pro se parties wide latitude when construing their pleadings and papers.  When interpreting pro se papers, the Court should use common sense to determine what relief the party desires.  S.E.C. v. Elliott, 953 F.2d 1560, 1582 (11th Cir. 1992).  See also, United States v. Miller, 197 F.3d 644, 648 (3rd Cir. 1999) (Court has special obligation to construe pro se litigants' pleadings liberally); Poling v. K. Hovnanian Enterprises, 99 F.Supp.2d 502, 506-07 (D.N.J. 2000).

A Defendant has the right to submit pro se briefs on appeal, even though they may be in artfully drawn but the court can reasonably read and understand them. See, Vega v.

Johnson, 149 F.3d 354 (5th Cir. 1998).  Courts are to go to particular pains to protect pro

se litigants against consequences of technical errors if injustice would otherwise result.

U.S. v. Sanchez, 88 F.3d 1243 (D.C.Cir. 1996).

### III ARGUMENT

All the defendants argue in similar matter in that they state that judge's have

absolute immunity; that Howard County and Howard County Circuit Court are an arms

of the state and therefore the Eleventh Amendment bars law suits against them, and that

the county employees either enjoy immunity because they were assisting a judge, or that

they are immune because they work for the county.

Additionally Defendant V. Peter Markuski as to himself states that this court does

not have subject matter jurisdictions once the circuit court defendants are dismissed.

Needless to say, the Plaintiff disputes that he is barred from suing the named

defendants in federal court and that this court can provide him with the relief prayed for.

### A.  Judicial Immunity

In Brookings v. Clunk, 389 F.3d 614 (6th Cir., 2004) the court stated:

> In *Stump*, the Supreme Court established a two-prong test to determine
> whether an act is "judicial." *Id.* at 362, 98 S.Ct. 1099. First, the court must
> consider whether the act in question is a function that is "normally
> performed by a judge." *Id.* This court has previously referred to this inquiry
> as the functional approach. Under this inquiry, a court is required to
> examine the nature and function of the act, not the act itself. The Supreme
> Court reformulated this inquiry in *Mireles* by establishing that, even if a

particular act is not a function normally performed by a judge, the court must look to the particular act's relation to a general function normally performed by a judge. *Id.* at 13, [112 S.Ct. 286](#).

Second, in determining whether an act is "judicial," the court must assess whether the parties dealt with the judge in his or her judicial capacity. *Id.* at 12, 112 S.Ct.

The Plaintiff Agrees to the fact that judges enjoy judicial immunity when acting in their judicial capacity.  However this judicial immunity does not bar the Plaintiff from seeking Declarative Relief from a judge's actions, nor does it bar the Plaintiff from seeking monetary relief from non judicial acts that a judge performs such as a custodian of records detailed.  ECF No. 14  ¶ 43

The Plaintiff disagrees with the defendants in that acts performed by Social Workers, Managers of Supervised Visitation Centers, Family Law Coordinators, and Court Reporters are not judicial acts.  By the defendants reasoning, they would also have this court grant the janitor for the Howard County Circuit Court judicial immunity from law suit so that he could not be sued for failure to post notices that floors are wet causing people to stumble and fall and becoming inured.

Therefore, Defendant Judge Leasure is not immune by judicial from being sued for damages, nor are the other Howard County employees.  The acts performed by them are not reserved for a judge and are not judicial in nature.  Additionally non of the defendants have judicial immunity where declarative relief is prayed for.

11

1.  **Defendant Judge Leasure Acting as a Custodian of Records is Not a Judicial Act**

The Maryland Public Information Act (MPIA) enacted various requirements on

various Maryland governmental entities to provide upon request of governmental records

upon request.

Upon a simple reading of the MPIA it is clear that this act is similar to the

Freedom of Information Act (FOIA) as stated by the Maryland Attorney General's Public

Information Act Manual (ECF No 26 attachment #2 Exhibit A) which reads on page 8 as

follows:

> Maryland's Public Information Act ("PIA"), Title 10, Subtitle 6, Part III of
> the State Government Article ("SG"), grants the public a broad right of
> access to records that are in the possession of State and local government
> agencies. It has been a part of the Annotated Code of Maryland since its
> enactment as Chapter 698 of the Laws of Maryland 1970 and is similar in
> purpose to the federal Freedom of Information Act ("FOIA"), 5 U.S.C.
> §552, and the public information and open records acts of other states.

The Maryland State Attorney General further explains which governmental entities

are required to provide access page 2 of his manual:

> The PIA covers virtually all public agencies or officials in the State. It
> includes all branches of State government (legislative, judicial, and
> executive). On the local level, the PIA covers all counties, cities, towns,
> school districts, and special districts. See SG §§10-601 and 10-611(g)(1)(i).
> (The statute has included the term "unincorporated town" since its
> inception, although that term is undefined and it is not clear what, if any,
> entities, it encompasses.)

The Maryland State Attorney General states on page 3 of his manual that the

MPIA act is broader than the FOIA act and that the burden of exclusion falls upon the

governmental entity to show that the legislature intended to exclude the record.

> In many circumstances, FOIA and cases under the federal statute are persuasive in interpreting the PIA. However, the PIA covers a broader range of government entities than FOIA, since it covers all "public" records, not just those of "agencies," as FOIA does. Under the federal act, the immediate personal staff of the President is not included in the term "agency." As a result, records held by advisors to the President need not be disclosed under FOIA. Kissinger v. Reporters Committee for Freedom of the Press, 445 U.S. 136, 155-56 (1980). Under the PIA, however, the Governor and the Governor's immediate staff are not automatically exempt. Office of the Governor v. Washington Post Co., 360 Md. 520, 759 A.2d 249 (2000). As explained by the Court of Appeals, "cases deciding whether governmental documents are 'agency records' within the meaning of [FOIA] are not very pertinent in determining whether a governmental document is disclosable under the [PIA]." 360 Md. At 555. In light of the very broad scope of the PIA, the burden falls on any governmental entity or official asserting exclusion from the PIA to show that exclusion is consistent with a legislative intent to exempt that entity's or official's records from the PIA's general rule of disclosure.

The Maryland State Attorney General states on page 3 of his manual that virtually

any record to include audio recordings are records that are covered under the MPIA:

> The PIA covers virtually all public agencies or officials in the State. It includes all branches of State government (legislative, judicial, and executive). On the local level, the PIA covers all counties, cities, towns, school districts, and special districts. See SG §§10- 601 and 10-611(g)(1)(i). (The statute has included the term "unincorporated town" since its inception, although that term is undefined and it is not clear what, if any, entities, it encompasses.)

The Maryland State Attorney General states on page 6 of his manual states that the

head of an agency is usually the custodian of records:

13

The "official custodian" is the officer or employee of the agency who has the overall legal responsibility for the care and keeping of public records. SG §10-611(d). Usually, the "official custodian" will be the head of the agency. The official custodian is authorized to decide whether to seek court action to protect records from disclosure. SG §10-619. The official custodian is also the person who must establish "reasonable fee" schedules under SG §10-613. The official custodian can also be the "custodian" of the records, depending upon who has physical custody and control of the records. SG §10-611(c).

The Maryland State Attorney General admits  on page 8 of his manual that the

Plaintiff has a right to a copy of the audio hearing where he was a litigant:

SG §10-620 grants any person who has the right to inspect a public record the right to be furnished copies, printouts, or photographs for a reasonable fee. If the custodian does not have the facilities to reproduce a record, the applicant should be granted access to make a copy. A copy of a court judgment may not be provided, however, until the time for appeal has expired or until an appeal has been adjudicated or dismissed. SG §10-620(a)(2). This provision should be applied only to non-litigants, since the Maryland Rules of Procedure require copies to be furnished to litigants. See Memorandum to Clerks of the Circuit Courts from Assistant Attorney General Catherine M. Shultz (July 27, 1983).

The Plaintiff in his complaint clearly stated that he hand delivered to Defendant

Susan Gnatt a written request for audio tapes where he was a litigant. (ECF No. 14  ¶ 30)

whereas Defendant Susan Gnatt verbally responded to him that would not be able to get

copies of these tapes. (ECF No. 14  ¶ 31).

 ECF No. 14  ¶ 35 & 46 demonstrates that Defendant Judge Leasure acting as the

custodian of records for the Howard County Circuit Court denied the Plaintiff access to

the audio recordings which the Plaintiff was entitled to as a matter of law.

14

ECF No. 18 attachment #1 page 13, the Maryland Assistant States Attorney now comes before this court and would have this court believe that just because the custodian of records for the Circuit Court of Howard County so happens to be a judge that all acts performed by her are judicial acts.

He does this by trying to twist the Plaintiff's request for records personally handed to Defendant Susan Gnatt  (ECF No. 14 ¶ 30) (ECF No 26 attachment #2 Exhibit A) into a motion made before the trial court in his case and thus Defendant Judge Leasure is immune from being sued financially.

However, by his logic, every request for copies of records to the Howard County Circuit Court is always considered a motion, and therefore if the custodian of records who so happens to be a judge should deny such a request for any reason she is immune from law suit.

And like wise, hypothetically, it seems that the Assistant State's Attorney would also like to have this court to believe that if Defendant Judge Leasure should sign a contract with someone to perform some work on the county court house, and even though she signs that contract fraudulently, and then contractor the submits a bill to the court that Defendant Judge Leasure could simply construe that the bill as a motion before her court and deny the motion making it so that she can not be sued for her fraudulent act financially sometime in the future.

In essence, the Assistant State's Attorney is suggesting that a judge can get around

the two-prong test established by the Supreme  Court in Stump by construing anything as a motion before her court and thus secure judicial immunity for her acts.  Therefore, if judge should sexually harass a clerk, and that same clerk should ask the judge to stop the sexual harassment and the judge should deny the clerk's request, then the judge is immune from being sued for sexual harassment since he construed the request to stop the sexual harassment as a motion before him.

Similarly, Defendant Judge Becker'ss recent act on On October 27, 2011 whereas he responded to a letter to the Custodian of Records for Howard County requesting for copies of audio recordings in accordance with the Maryland Public Information Action and the Maryland Rules for Courts is not a Judicial Act. (ECF No. 37 attachments #1 & #2).

Therefor, the Assistant State's Attorney's construing that the Plaintiff's request for records as a motion before Defendant Judge Leasure which she denied so that she might obtain judicial immunity is completely without merit.


   **2.  The Assistant State's Attorney General would Have This Court Grant Judicial Immunity to A Social Worker, a Supervised Visitation Center Manager,  A Family Law Coordinator, and a  Court Reporter**

ECF No. 18 attachment #1  pages 13 & 14 the Assistant State's Attorney General would have this court grant  Defendant Bright, a social worker; Defendant Bieganski, a Supervised Center Manager; Defendant Mohink, a family law Coordinator, and Defendant Gnatt, a court reporter judicial immunity siting various cases which grants

16

judicial immunity to law clerks or clerks who implement judicial orders of one kind or another.

The Plaintiff does not dispute that law clerks or clerks implementing judicial orders are immune from being sued financially in any court.

However, Defendants Bright, Bieganski, Mohink and Gnatt are not law clerks or even clerks of any sort.

Additionally, the Assistant State's Attorney General does not give to this court any explanation on how these defendants were integral to the judicial process.  He just simply believe because these defendants so happen to be employees of the Howard County Circuit Court that this fact give them Judicial Immunity.

Simply put, the  Assistant State's Attorney General's argument are completely without merit and have not basis in law or in fact.

## B.  Eleventh Amendment Immunity

In Alkire v. Irving, 330 F.3d 802 (6th Cir., 2003) the court found that the court of common pleas was not an arm of the state and thus does not enjoy the state's Eleventh Amendment Immunity:

> In *Mumford,* in holding that an Ohio court of common pleas was an arm of the state, we relied on several different factors. We noted that it was state statutes that created the court of common pleas, regulated its jurisdiction in terms of territory and subject matter, provided for it to hire its own personnel, and empowered it to ask the local board of county commissioners for reasonable funding. *Id.* at 268-69. Since it was the state, rather than the county, that was principally in charge of the courts of common pleas, we held that they should be considered arms of the state for Eleventh Amendment purposes.

The problem with relying now on the decision we made in *Mumford* is that we nowhere addressed the issue of who would pay for a damage judgment against the court of common pleas. The Supreme Court has now explicitly told us that this is the most important factor bearing on the Eleventh Amendment question. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 430, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997) (stating "that the question whether a money judgment against a state instrumentality or official would be enforceable against the State is of considerable importance to any evaluation of the relationship between the State and the entity or individual being sued"); *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 48, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994) (recognizing "the vulnerability of the State's purse as the most salient factor in Eleventh Amendment determinations"). This court has followed suit; we now recognize that the question of who pays a damage judgment against an entity as the most important factor in arm-of-the-state analysis, though it is unclear whether it is the only factor or merely the principal one.

In Norville v. Board of Education, 160 Md. App. 12, 862 A.2d 477 (Md. App., 2004) the Maryland Court of Special Appeals determined that a county does not enjoy the state's Eleventh Amendment Immunity:

> While "[t]he bar of the Eleventh Amendment to suit in federal courts extends to States and state officials," it "does not extend to counties and similar municipal corporations." Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); see Alden, 527 U.S. at 756, 119 S.Ct. 2240 (recognizing that the State's sovereign immunity "does not extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State"). Only the states themselves, or a state agency or instrumentality that functions as an "arm of the State," is entitled to invoke sovereign immunity or the immunity afforded by the Eleventh Amendment. See Regents of the Univ. of California v. Doe, 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997); Condon v. State, 332 Md. 481, 492, 632 A.2d 753 (1993).

As noted above, it is well settled law even in Maryland that neither a county, or a county circuit court, or a county worker enjoys the state's Eleventh Amendment Immunity.    The argument that the Assistant State's Attorney General makes in ECF No.

18 attachment #1 para III B is completely without merit.   He does not demonstrate to this court how the defendants were acting as arms to the state.

The Plaintiff is not trying to obtain monies from the Maryland State Treasury and apart from the Plaintiff's questions concerning the Maryland State's statues and the Maryland State Constitution the State's Attorney General's Office has no role to play in the law suit.  The fact that for some reason or another, the Attorney General's Office has decided to defend county workers where the state has no financial ability is a complete mystery to the Plaintiff.  However, just because the State of Maryland has decided to defend county workers does not confer upon them Eleventh Amendment Sovereign Immunity.

### C.  Concerning Maryland Waiving its Sovereign Immunity

The matter of whether or not Maryland has waived its immunity is moot at this time since the Plaintiff is not asking monetary damages from the State of Maryland and is only simply asking for declarative and injunctive relief at this time.

### D.  This Court's Subject Matter Jurisdiction over Defendant V. Peter Markuski, Defendant Steven A. Drazin, Defendant Vincent Love, Defendant M. Slutsky & Associates, Inc  and or any other non government employee so named in the Plaintiff's Complaint

In Dennis v. Sparks, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), the Supreme Court instructed that though a corrupt judge is immune from having to pay monetary damages that those who corrupted or conspired with such a judge do not enjoy

immunity and that a private person conspiring with a judge under the "color of law" does

not change the nature of their act:

> Based on the doctrine expressed in *Bradley v. Fisher*, 13 Wall. 335, 20 L.Ed. 646 (1872), this Court has consistently adhered to the rule that "judges defending against § 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities. *Pierson v. Ray*, 386 U.S. 547 [87 S.Ct. 1213, 18 L.Ed.2d 288] (1967); *Stump v. Sparkman*, 435 U.S. 349 [98 S.Ct. 1099, 55 L.Ed.2d 331] (1978)." *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 734-735, 100 S.Ct. 1967, 1976, 64 L.Ed.2d 641 (1980). The courts below concluded that the judicial immunity doctrine required dismissal of the § 1983 action against the judge who issued the challenged injunction, and as the case comes to us, the judge has been properly dismissed from the suit on the immunity grounds. It does not follow, however, that the action against the private parties accused of conspiring with the judge must also be dismissed.

> As the Court of Appeals correctly understood our cases to hold, to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged
>
> with state officials in the challenged action, are acting see "under color" of law for purposes of § 1983 actions. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267 (1966).[4] Of course, merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge. But here the allegations were that an official act of the defendant judge was the product of a corrupt conspiracy involving bribery of the judge. Under these allegations, the private parties conspiring with the judge were acting under color of state law; and it is of no consequence in this respect that the judge himself is immune from damages liability. Immunity does not change the character of the judge's action or that of his co-conspirators.

The Defendants in there memorandums  of law (ECF No 20.  ¶  III B, ECF No 47

¶  B, ECF No  52 attachment 1 ¶ III B ) argue that if this court should dismiss all the Plaintiff's claims against the Circuit Court Defendants then this court has no subject matter jurisdiction.

Here Defendants clearly recognizes that there fate as to whether or not he will become liable depends largely if not completely on the Plaintiff's ability to maintain a law suit against the county employees and/or county entities.  However, the Defendants are misinformed.  In that in  Dennis v. Sparks the Supreme Court does not give Defendants an out in that according to the Supreme Court even if all the other Defendants are dismissed because of some kind of immunity, he is still liable under  § 1983 along with the other non county employees named in the Plaintiff's complaint.

### E.  Defendants' arguments concerning conspiracy issues

Defendant Judge Becker's recent action in preventing the Plaintiff from obtaining audio recording in direct violation of the Maryland Public Information Act and the MD Rules is demonstrative that a conspiracy to deny the Plaintiff rights is at hand.  In that conspirators of illegal acts do not perform their actions in the light of day.

With this said, the Plaintiff in his complaint alleges various specific acts by various government and non government defendants that shows that all the defendants were working together to violate the Plaintiffs constitutional rights.   Whether or not these various acts put together demonstrates an underlining conspiracy is for a jury to decide after the Plaintiff has been given the opportunity for discovery in which discovery may

very well reveal that court transcripts are not true to audio recordings and/or audio recordings were tampered with by court personnel.

Additionally, discovery may reveal a financial relationship between the various conspirators where these acts were done for profit.

In any event, the Plaintiff has alleged that specific wrongful acts were done which violated his constitutional rights and he has alleged that all the defendants have been acting in concert with each other to achieve a common goal and that that it can be easily inferred from the complaint that the varied conspirators had communications with one another to plan out their conspiracy against the Plaintiff.

**F.  As to Defendant Howard County Maryland's claims that the 5th Amendment only applies to the federal government.**

Defendant Howard County Maryland cites Freilick v. Board of Directors of Upper Chesapeake Health Inc 142 F. Supp. 2D 679, 691 (D.MD.2001) where physician was claiming that she a violation of her 5th amendment rights over her employment issues with a hospital and was attempting to get a federal court to supervise a hospital.

Clearly Defendant Howard County Maryland knew that they are not comparing apples with apples with their citation and this county is trying to bring this country back to a time prior to 1868 where the Supreme Court ruled in *Barron v. City of Baltimore*, 32 U.S. 243, 7 Pet. 243, 8 L.Ed. 672 (1833), that the Fifth Amendment did not apply to the

22

states.  But as anyone that has studied history knows that in 1868 the 14th Amendment was ratified which guaranteed citizen of equal protection under law making the Bill of Rights applicable to the states via the doctrine of incorporation.

Therefore, though Defendant Howard County is eager and willing to deny citizens equal protection under law and due process believing that the 14th and the 5th Amendment does not apply to the states or county government, the Constitution of the United States tells us that their act violate the Constitution of the United States and that this court has jurisdiction to intervene.

**G.  As to Defendant Howard County Maryland's arguments concerning the deprivation of constitutional rights of Howard County Citizens.**

Defendant Howard County Maryland agues that the Plaintiff's complaint must be dismissed in that the Plaintiff fails to make proper allegation concerning how it is the policy of Howard County Maryland to deprive citizens of their rights.

The Howard County Maryland's policy concerning the deprivation of citizens rights can readily be seen in Defendant Judge Becker's letter to the Plaintiff where he explains to the Plaintiff the the Howard County Circuit Court as a matter of policy does not obey the Maryland Public Information Act nor the MD Rules which require government to be transparent.

Additionally, in Howard County Maryland's own memorandum of law it is readily apparent that Howard County Maryland has a policy that the 5th Amendment and more

23

than likely the whole Bill of Rights does not apply to their actions.  Thus, it would appear that when people are arrested in Howard County they have no right to remain silent or that citizens of Howard County have a right to be secured in their homes from unwarranted searches of their homes.

The Plaintiff has often times been told by other attorney's that Howard County does not believe that it is part of Maryland and Maryland Laws do not apply within the boarders of Howard County.  It now seems to the Plaintiff that Howard County Maryland no longer believes that it is part of the United States and that it must treat citizens of the United States in accordance with their rights afforded to them as being citizens.

### H.  As to the Constitutional Question Posed To This Court Concerning Maryland State Law

The Plaintiff has a clear First Amendment Right to petition this court to be heard concerning whether or not various laws that the state of Maryland violate the Plaintiff's U.S. Constitutional Rights.

Currently, the Defendant has three questions posed to this court in his Amended Complaint which are as follows:

1. **Does Article III Section 38 of the Maryland State Constitution which states "but a valid decree of a court of competent jurisdiction or agreement approved by decree of said court for the support of a wife or dependent children, or for alimony, shall not constitute a debt within the meaning of this section" violates the Fourteenth Amendment of the United States Constitution?**

ECF No 2. informs this court that the Plaintiff is bring his complaint pursuant to 42 U. S. C. Sections 1981.

42 U.S.C. § 1981 prohibits race discrimination in the making and enforcing of contracts. It prohibits racial discrimination against whites as well as nonwhites. See McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 295 (1976) (Section 1981 was intended to "proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race").  In Runyon v. McCrary, 427 U.S. 160 (1976), the Supreme Court held that Section 1981 regulated private conduct as well as governmental action.

In Patterson v. McLean Credit Union, 491 U.S. 164 (1989), the Supreme Court restricted the application of Section 1981 to claims arising out of the formation of the contract. But the Civil Rights Act of 1991 legislatively overruled the Supreme Court's decision in Patterson, providing that the clause "to make and enforce contracts" in Section 1981 "includes the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and condition of the contractual relationship.

Below is a chart which numbers are extracted from ECF No 26 attachment  #4 Exhibit C from current census data demonstrating that in general only white women receive alimony in the United States.

25

|  | Women Under 65 Alimony | | | | | |
|---|---|---|---|---|---|---|
|  | White Alone | Black AOIC | Black Alone | Asian AOIC | Asian | Hispanic Any Race |
| Numbers in thousand | 222 | 15 | 13 | 11 | 11 | 34 |
| Per Year | $16,939.00 | (B) | (B) | (B) | (B) | (B) |

Below is a chart which numbers are extracted from ECF No 26 attachment #5 Exhibit D from current census data demonstrating that in general men do not receive alimony even when it is awarded.

|  | Men Under 65 Alimony | | | | | |
|---|---|---|---|---|---|---|
|  | White Alone | Black AOIC | Black Alone | Asian AOIC | Asian | Hispanic Any Race |
| Numbers in thousand | 17 | 0 | 0 | 0 | 0 | 0 |
| Per Year | (B) | $0.00 | $0.00 | (B) | (B) | (B) |

Below is a chart which numbers are extracted from  ECF No 26 attachment #4 Exhibit C from current census data demonstrating that in general white women receive a disproportionate amount of child support in the United States.

|  | Women Under 65 Child Support | | | | | |
|---|---|---|---|---|---|---|
|  | White Alone | Black AOIC | Black Alone | Asian AOIC | Asian | Hispanic Any Race |
| Numbers in thousand | 2796 | 896 | 865 | 69 | 61 | 605 |
| Per Year | $5,702.00 | $4,023.00 | $4,022.00 | (B) | (B) | $5,279.00 |

Below is a chart which numbers are extracted from ECF No 26 attachment #5 Exhibit D from current census data demonstrating that in general white women receive a disproportionate amount of child support in the United States.

| | Men Under 65 Child Support White Alone | Black AOIC | Black Alone | Asian AOIC | Asian | Hispanic Any Race |
|---|---|---|---|---|---|---|
| Numbers in thousand | 257 | 46 | 45 | 13 | 12 | 47 |
| Per Year | $4,016.00 | (B) | (B) | (B) | (B) | (B) |

From the aforementioned census data is clear that the census data for the United States indicates that alimony is paid to white women and so is the bulk of child support.

And since the majority of the people marry within their race a logical conclusion is that white men pay alimony and white men pay the build of child support.  Which means that the exclusion in Article III Section 38 of the Maryland State Constitution was made so that it would apply as to the alimony portion only to men, or more specifically to white men.  And the portion dealing with child support again directed against white men, or men in general.

With this stated, the Plaintiff should have the right to have the State of Maryland disclose similar statistic along with showing the rates of incarceration in respect to sex and race demonstrating that Article III Section 38 of the Maryland State Constitution violates the United States Constitution or the practices of the state in using the exception clause to incarcerate white men, and/or men for alimony and/or child support violates the United States Constitution since the aforementioned exception clause does not apply to women and definitely not to white women.

**2.  Maryland Family Law Article §12-204 violates the Fourteenth Amendment of the United States Constitution?**

ECF No. 18 attachment #1 page 33 the Maryland Assistant Attorney General

States in argument:

> Because there is no Fourteenth Amendment constitutional right to pay only
> an amount of child support sufficient to keep your minor child off the
> welfare rolls, Plaintiff has failed to sustain his claim that the Maryland
> Child Support Guidelines are unconstitutional.

The Assistant Attorney General is in error.  Though he is correct that the

Fourteenth Amendment does not mention child support, likewise the Fourteenth

Amendment does not get into detail about the hanging chad in Bush v Gore, 531 U.S. 98,

121 S.Ct. 525, 148 L.Ed.2d 388 (2000).

The fact is that the Fourteenth Amendment is about "equal protection under law",

whereas in the United States we only have one class of citizens.

With the above stated, the State of Maryland has no business dictating to a non

custodian parent to pay support beyond that which is required to meet a child's

necessities, to do so is to put that child in a privileged class and to put the non custodian

parent in an under privileged class in comparison with other parents.

### 3.  Maryland Family Law Article § 1-202 violates the First Amendment, Fifth Amendment, and the Fourteenth Amendment.

ECF No. 18 attachment #1 page 34 the Maryland Assistant Attorney General States in

argument:

> Even assuming that parties had to pay for the "best interests" counsel in addition to
> their own counsel, this statute would not be facially unconstitutional because
> litigants are not members of a protected class. See Cleburne v. Cleburne Living

28

Center, 473 U.S. 432, 440 (1985) (stating that statutes not classifying by race, national origin, alienage, or gender are subject to rational basis review). Plaintiff has not established that the statute lacks any rational basis. The statute also does not violate any right to procedural due process because Plaintiff was able to bring his case before the court and he received – and continues to receive – all the process he was due. Procedural due process does not guarantee a person the right to not pay his minor child's "best interests" counsel fees in defending or bringing a civil claim.

Again, 42 U.S.C. § 1981 prohibits race discrimination in the making and enforcing of contracts. It prohibits racial discrimination against whites as well as nonwhites. See McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 295 (1976).

The fact is that only white end up paying the large amount of attorney fee's to court appointed attorneys for minor children.  Additionally, only divorcing parents are not obligated to pay for their children to have representation in court, and this representation is not mandated in every case.

Meaning, if the judge in Maryland sees that parents are white and have some marital assets, he orders a court appointed attorney to represent the children.  And if he sees that the parents are black or Hispanic, or any other race he most likely will not consider ordering an attorney for the minor children of the parents and if he does the state picks up the bill.

In short, the current practice for judges in Maryland is to order court appointed attorneys for minor in divorce cases where the parties are white and he allows the appointed attorney to work without a retainer billing the parties whatever he chooses like that which has been done to the Plaintiff.

Thus, not only the children of white divorcing parents are placed in a privilege class, but the court order attorney is put into a privilege class to rob his clients of any hope of being able to receive any future assistance from their parents has he plunges both parents into such a debt from like of which they may never recover financially.

One must ask, is this Maryland State Statute for the children, or for a select few attorney's practicing in the state of Maryland being favored by a hand full of judges?

In any event, parents and most notable fathers are robbed of their ability to have representation before the courts as these "best interest attorneys" drain a man's assets down to nothing since there is no limit to what they can charge.

## I.  Defendant's Demand Proof Prior To Discovery Or Trial

Throughout the defendants memorandum of laws the defendants demand for proof of allegations made by the Plaintiff and that which out such proof the Plaintiff's complaint must be dismissed prior to trial.

The Plaintiff has made factual allegations most of which can be easily proven by playing audio tapes of hearings (that is if the Circuit Court For Howard County will obey federal discovery rules and or a federal subpoena) and the calling of witness.  The Plaintiff's complaint clearly details a consistent pattern of rulings demonstrating that county employees along with the other defendants came to a meeting of the minds.

The Plaintiff's allegations does not stretch ones imagination for what can go on in and around a county court room, as it is well known that these county family courts tend to disregard individual's constitutional rights, especially once they have lost council.

**J. As to The Relief Being Sought**

The defendants' constantly ignore the fact that the Plaintiff is asking for Declarative Relief as well as well as asking for damages.

**IV Conclusion**

The defendants' motions to dismiss are not well founded in law.  They ask this court to ignore the outrageous misconduct of county employees who are acting under the color of law along with those who conspire with them to commit their evil deeds of denying the Plaintiff his civil rights.

The Plaintiff's complaint is not deficient in that it does cite specific allegations and specific laws that were violated whether they be state or federal laws.

Therefore, this court should deny the defendants' motions for dismissal.

Respectfully submitted,

Michael A. McNeil "Pro Se"
7807 Quill Point Drive
Bowie, MD 20720
(410) 505-8617
mamcneil@gmail.com

31

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 16th day of December, 2011, I mailed a copy of the foregoing, first class, postage pre-paid to the following:

H. Scott Curtis
Assistant Attorney General
200 St. Paul Place
20th Floor
Baltimore, MD 21202
(Representing the State of Maryland; and all the county employees and county entities named in this complaint.)

STEPHEN A. DRAZIN
The Drazin Law Center, P.A.
10420 Little Patuxent Parkway
Suite 100
Columbia, MD 21044

Jeffrey W Bernstein
Wilson, Goozman, Bernstein, and Markuski Cherry Lane Professional Park
9101 Cherry La Ste 207
Laurel, MD 20708
(Representing  V. Peter Markuski)

Timothy J Mummert PA
808 Landmark Dr Sre 223A
Glen Burnie, MD 21061
(Representing Vincent Love and  M. Slutsky & Associates, Inc)

SARAH P. MCNEIL
4721 Middle Court
Ellicott City, MD 21043

Louis P. Ruzzi
3450 Court House Drive
Ellicott City, MD 21043
(Representing Howard County Maryland)

Michael A. McNeil "Pro Se"
7807 Quill Point Drive
Bowie, MD 20720
(410) 505-8617
mamcneil@gmail.com

32