IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL A. MCNEIL                          :

                                            :

     v.                                    :    Civil Action No. DKC 11-2495

                                            :

STATE OF MARYLAND, et al.                   :

                                            :

**MEMORANDUM OPINION**

Plaintiff Michael A. McNeil, proceeding *pro se*, commenced this action on September 7, 2011, by filing a complaint against fourteen defendants associated with ongoing family law proceedings in the Circuit Court for Howard County, Maryland. The complaint alleged, in conclusory fashion, a conspiracy by and between Plaintiff's ex-wife, multiple judicial officers, attorneys, circuit court employees, and court-appointed social workers to deprive Plaintiff of his constitutional rights.

Prior to the issuance of summonses, a number of defendants waived service and moved for dismissal. Plaintiff responded by filing a rambling, sixty-five page amended complaint, adding another defendant and numerous allegations, which rendered moot the initial motions to dismiss. *See* Fed.R.Civ.P. 15(a)(1). In an order denying those motions, the court explained:

> The defendants argued in these motions that
> relief was barred by the doctrine of
> judicial immunity, quasi-judicial immunity,
> and/or sovereign immunity, and that, as to

> all non-state actors, Plaintiff has failed
> to state a claim.  While these motions will
> be denied as moot, Plaintiff is cautioned
> that the issues raised therein would appear
> to apply with equal force to his amended
> complaint.  Plaintiff should also be aware
> that insofar as many of his claims appear to
> relate to the propriety of state court
> judgments, the court's subject matter
> jurisdiction may be implicated by the
> *Rooker-Feldman* doctrine, which precludes a
> federal court action "brought by state-court
> losers complaining of injuries caused by
> state-court judgments rendered before the
> district court proceedings commenced."
> *Exxon Mobil v. Saudi Basic Industries Corp.*,
> 544 U.S. 280, 281 (2005).

(ECF No. 17, at 1 n. 1).

On September 27, 2011, the Circuit Court defendants – namely, the State of Maryland, the Circuit Court for Howard County, Chief Administrative Judge Diane O. Leasure, Associate Judge Louis A. Becker, III, Master in Chancery Mary M. Kramer, Family Law Coordinator Lisa S. Mohink, Court Social Worker Patricia Bright, Supervised Visitation Center Manager Christina J. Bieganski, and Supervisory Court Reporter Susan R. Gnatt – filed a motion to dismiss the amended complaint on essentially the same grounds raised in their initial motions.  (ECF No. 18). The individual defendants – *i.e.*, Peter V. Markuski, Jr., Vincent Love and M. Slutsky & Associates, Inc., Stephen A. Drazin, Howard County, Maryland, and Sarah P. McNeil – also moved to dismiss.  (ECF Nos. 19, 46, 52, 53, 61).  In response, Plaintiff moved for leave to amend his complaint.  (ECF No. 27).

On June 15, 2012, Mr. Love and M. Slutsky & Associates provided notice that Plaintiff had filed a bankruptcy petition, asserting that the automatic stay precludes further litigation at this time. (ECF No. 73).

As a threshold matter, the court finds that the automatic stay does not preclude decision on the pending motions. With respect to those motions, the relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendants' motions to dismiss will be granted; Plaintiff's motion for leave to amend will be denied; and the remaining motions will be denied as moot.[1]

## I.   Effect of the Bankruptcy Petition

On May 10, 2012, Plaintiff filed a voluntary petition under chapter 13 of the bankruptcy code in the United States Bankruptcy Court for the District of Maryland. (Bankr. No. DER 12-18903).[2]   Shortly thereafter, Mr. Love and M. Slutsky & Associates filed a "notice of automatic stay under the

---

[1]   The remaining motions are Plaintiff's motions for access to the court's case management/electronic case filing system (ECF No. 11), for entry of default and default judgment against two defendants (ECF Nos. 49, 50, 57, and 58), and for legal fees (ECF No. 72).

[2]   Notably, Plaintiff has since commenced two adversary proceedings in the main bankruptcy case: one against his ex-wife and her attorney and the other against Plaintiff's attorney in the divorce proceeding.

bankruptcy code," asserting that "[a]ll proceedings in this [case] are to be stopped in accordance with the automatic stay provisions of 11 U.S.C. Section 362, until there is a discharge . . . or upon an Order by [the bankruptcy court] to lift stay, or to dismiss said bankruptcy petition." (ECF No. 73, at 2).

Pursuant to 11 U.S.C. § 362(a)(1), the filing of a voluntary bankruptcy petition "operates as a stay, applicable to all entities, of . . . the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case[.]"  As the plain language of this statute suggests, the automatic stay applies to an action against, rather than by, the debtor.  *See Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3rd Cir. 1991) (Section 362(a) "does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate."  (emphasis and internal marks removed)); *Riviera Drilling & Exploration Co. v. Gunnison Energy Corp.*, 412 Fed.Appx. 89, 95 (10th Cir. 2011) ("A debtor can continue to pursue its claims against another party even after filing for bankruptcy protection"); *MTGLQ Investors, L.P. v. Guire*, 286 F.Supp.2d 561, 563 (D.Md. 2003) ("The Section 362 stay does not apply where, as here, the debtor is the plaintiff in a lawsuit.") (quoting *Mitchell v. Fukuoka Daiei*

*Hawks Baseball Club*, 206 B.R. 204, 212 (C.D.Cal. 1997)).  While courts have found that chapter 7 debtors lack standing to prosecute a civil action, the same issues are not implicated in chapter 13 cases.  *See Evans v. First Mount Vernon, ILA*, 786 F.Supp.2d 347, 353-54 (D.D.C. 2011) (collecting cases).

Because Plaintiff is a chapter 13 debtor and no defendant has filed a counterclaim, the automatic stay provision of 11 U.S.C. § 362(a) does not apply in this case.

## II. Motions to Dismiss

### A. Jurisdiction

As noted previously, the court signaled its concern that it lacked jurisdiction over many of Plaintiff's claims in the order denying as moot the motions to dismiss the original complaint.

"Under the *Rooker-Feldman* doctrine, a 'party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court.'" *American Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994); *see also District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923).  Because the doctrine is jurisdictional, courts "are obliged to address it before proceeding" to the merits of a given case.  *American*

*Reliable Ins. Co.*, 336 F.3d at 316 (quoting *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir. 2002)).

The doctrine bars "lower federal courts from considering not only issues raised and decided in the state courts, but also issues that are 'inextricably intertwined' with the issues that were before the state court.'" *Washington v. Wilmore*, 407 F.3d 274, 279 (4th Cir. 2005) (quoting *Feldman*, 460 U.S. at 486). "An issue is 'inextricably intertwined' when it 'was not actually decided by the state court but where success on the . . . claim depends upon a determination that the state court wrongly decided the issues before it.'" *Pak v. Ridgell*, Civ. No. RDB-10-01421, 2011 WL 3320197, at *4 (D.Md. Aug. 1, 2011) (quoting *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000)). Claims barred under *Rooker-Feldman* often take the form of "challenges alleg[ing] that the state court's action was unconstitutional," but such claims must be distinguished from constitutional challenges to specific rules themselves, which do "not require review of a final state court judgment in a particular case." *Feldman*, 460 U.S. at 486. The "pivotal inquiry" in this regard "is whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *Brown & Root*, 211 F.3d at 202.

Here, Plaintiff's amended complaint consists largely of conclusory allegations of a conspiracy among various actors in the state court proceedings, which manifested primarily in a string of adverse rulings.  The majority of the substantive factual allegations are grouped among the twenty-four separate counts of the complaint according to the outcome they allegedly produced.  While most of these counts recite that all defendants were involved, the specific allegations address the conduct of only one or a few.  Indeed, the complaint is devoid of any facts even remotely suggesting an agreement among any defendants to deprive Plaintiff of his constitutional rights.  Rather, Plaintiff appears to complain about the rulings themselves, speculating as to their cause and dressing his claims as federal constitutional violations.

In the first count of the complaint, Plaintiff alleges that Judge Leasure and Ms. Gnatt, a supervisory court reporter, violated Md. Rule 16-406(d)(A), the Maryland Public Information Act, and Plaintiff's rights under the Fifth and Fourteenth Amendments by denying his requests for audiotape copies of court proceedings.  (ECF No. 14 ¶¶ 40, 65-68).[3]  Ms. Gnatt's liability

---

[3] Maryland Rule 16-406(d)(A), entitled "Right to Copy of Audio-Video Recording; Restrictions," provides that "[u]pon written request and the payment of reasonable costs, the authorized custodian of an official videotape recording shall make a copy of the recording, or any part requested, available to . . . a party to the action or the party's attorney[.]"

appears to be premised on the fact that when Plaintiff submitted an initial request to her, she advised him that he would not be able to obtain copies. Nevertheless, she apparently delivered the request to Judge Leasure, who ultimately denied it, along with a subsequent motion seeking the same relief, by an order issued May 12, 2010. (*Id*. at ¶ 35). Plaintiff acknowledges that Judge Leasure "did allow [him] . . . [to] order transcripts or listen to the audio recording in the presence of a court reporter" (*id*. at ¶ 36), but complains that "[t]here was no reason given why . . . [she] did not provide [him] copies of the audio recordings pursuant to Md. Rule 16-406(d)(A)" (*id*. at ¶ 40).[4] This claim challenges the propriety of Judge Leasure's order. It is, therefore, barred by the *Rooker-Feldman* doctrine.

The second count of the complaint focuses on a hearing before Judge Becker at which Plaintiff was "charged with contempt for failure to pay $13,280.00 in court ordered attorney fees" and directed "to report to the Howard County Correction Center on October 21, 2009[,] at 12:00 [p.m.]." (*Id*. at ¶¶ 75, 78). According to Plaintiff, this order "violated [his]

---

Pursuant to the Maryland Public Information Act, "[e]xcept as otherwise provided by law, a custodian shall permit a person or governmental unit to inspect any public record at any reasonable time." Md. Code Ann., State Gov't § 10-613(a)(1).

[4] In numerous other counts, Plaintiff cites the denial of his requests for audiotapes as evidence of attempts to conceal the alleged conspiracy among the defendants.

Maryland State Constitutional [r]ights and consequently his Fourteenth Amendment [r]ights." (*Id*. at ¶ 79). Because this claim directly relates Judge Becker's contempt finding, this court is without jurisdiction to consider it.

In the third count, Plaintiff complains about an order issued by Judge Becker on December 27, 2010, requiring him to pay alimony and child support. He contends that Judge Becker "willfully chose not to include [Ms. McNeil's] income" in calculating these amounts and that the award of child support "exceeds Maryland State [] limits[.]" (*Id*. at ¶¶ 115, 118). Like the first two counts, this is essentially a challenge to a state court order that may not be reviewed by this court.[5]

In count four, Plaintiff asserts that, in July 2011, he issued a subpoena directing Ms. Bright to produce records regarding the Howard County litigation in a related proceeding pending in the Circuit Court for Anne Arundel County. On August 22, the Attorney General, on behalf of Ms. Bright, moved to quash the subpoena on the ground of judicial immunity. On the same date, Judge Becker appointed Ms. Bright to "conduct a review of custody matters concerning the Plaintiff's children" in the Howard County case. (*Id*. at ¶ 133). Ms. Bright subsequently submitted a "Home Study Report," which "willfully

---

[5] Plaintiff independently challenges the constitutionality of the Maryland child support guidelines in the twenty-third count of his complaint.

neglected to mention key facts" that reflected poorly on Ms. McNeil's parenting skills, while unfairly highlighting issues between Plaintiff and his children. (*Id*. at ¶¶ 143, 144). According to Plaintiff, this was what Judge Becker intended when he appointed her "to perform a one[-]sided investigation in order to prove the Plaintiff to be unfit in a retaliation act . . . because [Plaintiff] subpoenaed [Ms. Bright] for records[.]" (*Id*. at ¶ 159). Review of this claim would require the court to pass on the propriety of Judge Becker's appointment of Ms. Bright to conduct the home study report in the state court. The *Rooker-Feldman* doctrine prohibits such review.

In the fifth count of the amended complaint, Plaintiff alleges that "Master Mary Kramer violated [his] First Amendment Rights by forcing [him] to give testimony against himself about his confession before his church clergy[.]" (*Id*. at ¶ 172). Specifically, during a *pendente lite* hearing, opposing counsel questioned Plaintiff regarding "statements made during a closed session ecclesiastical hearing." (*Id*. at ¶ 165). Plaintiff's counsel objected and advised that there was a pending motion for protective order with respect to such evidence, but "Master Kramer[,] with complete disregard for the First Amendment and common law [clergy-penitent privilege] . . . ordered the Plaintiff to give a detailing of the privilege[d] conversation." (*Id*. at ¶ 168). Moreover, after hearing this testimony, Master

Kramer limited Plaintiff's access to his children and awarded exorbitant amounts of *pendente lite* alimony and child support, which "violated the Plaintiff's [due] process rights" under the Fifth and Fourteenth Amendments. (*Id*. at ¶ 175). This court may not consider the propriety of Master Kramer's evidentiary ruling or the award of interim support.

In the sixth and seventh counts of the complaint, Plaintiff contends that "Judge Becker has violated the Plaintiff's [due] process rights by permitting Defendant V. Peter Markuski to 'represent' the Plaintiff's children" in the divorce proceeding. (*Id*. at ¶ 191). Despite Plaintiff's complaints that Mr. Markuski was biased, the Circuit Court for Howard County "refused to remove hi[m] from the case, and has required the Plaintiff to pay outrageous sums of monies [to] him[.]" (*Id*. at ¶ 190). When Plaintiff learned that Mr. Markuski had allegedly obtained "privileged information" from Plaintiff's ex-wife, he "moved to have [his] appearance stricken," but this motion was denied by Judge Becker, allegedly without explanation. (*Id*. at ¶¶ 196-97). According to Plaintiff, Judge Becker's "denial of [his] motion was in fact a denial of the Plaintiff's First, Fifth, and Fourteenth Amendment Rights." (*Id*. at ¶ 199). Again, this count essentially challenges the denial of Plaintiff's request to strike Mr. Markuski's appearance, which is a matter properly addressed to state appellate courts and, if

appropriate, to the Supreme Court of the United States on certiorari.

Count eight challenges the appointment and testimony of Patricia Bright, a court social worker, to perform a custody evaluation. According to Plaintiff, Ms. Bright "disfavors any[one] who is known to spank or has spanked [children] in the past and she view[s] spanking as child abuse." (*Id*. at ¶ 204). Plaintiff contends that Master Kramer appointed Ms. Bright in Plaintiff's case "based [on] her knowledge gained during the . . . Pendente Lite hearing that the Plaintiff on occasion has used corporal punishment to discipline his children." (*Id*. at ¶ 208). Ms. Bright was then permitted by Judge Becker to opine at trial that Plaintiff's "access to his children should be limited because he spanked his seven (7) year old daughter a couple of times during his then eight (8) hour Sunday visitations." (*Id*. at ¶ 209). The propriety of Ms. Bright's appointment and the scope of her testimony at trial are clearly not issues this court may consider.

While the divorce case was pending, Plaintiff and his ex-wife were involved in a domestic dispute after which Ms. McNeil filed an *ex parte* petition for a temporary restraining order in the District Court of Maryland for Howard County. (*Id*. at ¶ 217). The domestic violence complaint was then "transferred . . . to Howard County Circuit Court" and, on January 13, 2009, "the

12

trial judge [apparently, Judge Becker] decided . . . to consolidate it with the divorce action[] . . . and then have the matter heard before a Master while at the same time extending the protection order until the Pendente Lite Hearing." (*Id*. at ¶¶ 217-19). In the ninth count of the amended complaint, Plaintiff alleges that "Maryland [l]aw prohibits a Master [from] try[ing] a Domestic Violence matter . . . [and] prohibits the consolidations of a Domestic Violence matter with a divorce action[.]" (*Id*. at ¶ 221). Because this is, in essence, a challenge to a court order finding otherwise, *Rooker-Feldman* bars its review in this court.

In count twelve, Plaintiff alleges that, at one point during the divorce proceedings, Ms. McNeil "accus[ed] [him] of sexually molesting his daughter[.]" (*Id*. at ¶ 245). In response to this allegedly false accusation, Plaintiff filed a contempt motion and a hearing before Judge Becker was scheduled for December 3, 2009. On that date, however, Judge Becker "determined . . . he would not hear the contempt motion, and in fact, he refused to rule upon it until over a year later." (*Id*. at ¶ 247). This court is without jurisdiction to consider whether Judge Becker unreasonably delayed ruling on Plaintiff's contempt motion.

Similarly, the court may not review the thirteenth count of the amended complaint, which challenges Judge Becker's denial of

Plaintiff's motion for sanctions against Ms. McNeil related to her refusal to submit to a "mental fitness" examination. (*Id.* at ¶ 249). Rather, the propriety of Judge Becker's ruling in this regard must be addressed through the appellate process.

Count fourteen recites, in conclusory fashion, that Judge Becker, "knowing . . . that [Ms. McNeil] had no grounds for divorce and that if he was to have a merits hearing . . . he would have to deny [her petition] . . . decided [to] hold hearings concerning property division, and rescheduled all matters concerning custody and divorce . . . [until such time as Ms. McNeil] would have grounds for a divorce." (*Id.* at ¶¶ 256-57). According to Plaintiff, it is clear under Maryland law that "[d]ivorce [t]rial due process involves having a merits hearing first, at which a divorce would be granted, then hearings concerning . . . marital property division." (*Id.* at ¶ 258). By violating this procedure, Plaintiff contends, "Judge Becker . . . denied [him] his Maryland statutory rights, [as well as his] Fifth and Fourteenth Amendment Rights." (*Id.* at ¶ 259). This claim of procedural error, however, is not cognizable in a federal district court.

In the fifteenth count, Plaintiff asserts that Judge Becker advised him, in December 2009, that "he would sanction [him] for not providing information in discovery." (*Id.* at ¶ 261). Subsequently, "[o]n December 27, 2011, [Judge Becker] filed his

14

Order of Judgment of Absolute Divorce and ordered monetary awards to [Ms. McNeil] for sanctions against the Plaintiff." (*Id.* at ¶ 267). According to Plaintiff, "by ordering monetary sanctions," Judge Becker "violated the Plaintiff's constitutional rights." (*Id.* at ¶ 271). The *Rooker-Feldman* doctrine precludes this court's consideration of whether Judge Becker properly awarded sanctions.

Similarly, the court is without jurisdiction to consider the propriety of Judge Becker's orders or rulings with regard to subpoenas issued by Plaintiff and/or his refusal to permit testimony at various hearings. Plaintiff argues in the sixteenth count of his amended complaint that these actions are "yet another example of how [] Judge Becker has willfully denied the Plaintiff his due process rights . . . by preventing him from having witnesses or obtaining evidence." (*Id.* at ¶ 280). Any argument concerning evidentiary or discovery rulings, however, is properly addressed to state appellate courts.

In count seventeen, Plaintiff contends that Mr. Drazin, his ex-wife's attorney, "conspired with the Circuit Court of Howard County to delay [a] Pendente Lite [h]earing twice and then somehow conspired with court personnel so that the hearing would have to be delayed again [due] to 'Technical Difficulties' with the audio recording system." (*Id.* at ¶ 283). While this count is specifically directed toward Mr. Drazin, in substance,

15

Plaintiff challenges the trial court's decisions with regard to requests for postponements. This court has no authority to pass on the propriety of those rulings.

In the eighteenth count, Plaintiff contends that, at some point in early 2010, Judge Becker had "an ex-parte conversation with [Mr. Drazin]" during which Mr. Drazin provided Judge Becker with "a proposed order knowing that the Plaintiff ha[d] not seen it." (*Id.* at ¶ 289). Judge Becker subsequently signed the order. When "Plaintiff complained about this ex-parte conversation" at the divorce trial, Judge Becker "stated in his defense that the order stated everything that he ruled upon in the prior hearing and that he had . . . [listened] to the audio recordings and confirmed that." (*Id.* at ¶ 291). Plaintiff asserts that he has since "received transcripts of the trial, and the transcripts indicate that [Judge Becker] was clearly lying." (*Id.* at ¶ 293). Again, this is a matter that must be addressed, if at all, in the context of a state court appeal.

In count nineteen, Plaintiff alleges that when, beginning in late October 2010, his ex-wife "started to deny child visitation," he "file[d] a series of contempt motions against [her] on a weekly basis." (*Id.* at ¶¶ 295-96). Judge Becker "refused to [hear] these motions until February 14, 2011," at which point he "denied [every one] . . . even though he made a finding that [Ms. McNeil] ha[d] not obeyed the court's orders

16

concerning visitation." (*Id*. at ¶ 298). While Plaintiff contends that the denial of these motions constituted "a violation of [his] First and Fourteenth Amendment [rights]" (*id*. at ¶ 301), the crux of his argument is that Judge Becker improperly denied his motions. This court is without jurisdiction to consider such a claim.

Similarly, the court may not consider the claim set forth in count twenty, which relates to Judge Becker's denial of Plaintiff's "Emergency Motion to Resume Normal Visitation Per Judgment of Divorce." (*Id*. at ¶ 306).

In sum, counts one through nine and twelve through twenty either seek review of adverse state court decisions or are so "inextricably intertwined" with such decisions that the claims ultimately depend "upon a determination that the state court wrongly decided the issues before it." *Brown & Root, Inc.*, 211 F.3d at 198. Pursuant to the *Rooker-Feldman* doctrine, a federal district court is without jurisdiction to review such claims. Accordingly, these counts will be dismissed.

**B.  Fed.R.Civ.P. 12(b)(6)**

**1.  Standard of Review**

Defendants have moved to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The purpose of a motion to dismiss is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d

480, 483 (4th Cir. 2006).  A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  Complaints filed by *pro se* litigants are "to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted).  The court need not, however, accept unsupported legal allegations.  *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873

18

(4th Cir. 1979).   Nor must it agree with legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'"   *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).   Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Id*.

### 2.   Analysis

In addition to federal constitutional challenges to three state law provisions – namely, Article III, Section 38 of the Maryland Constitution; the Maryland child support guidelines, Md. Code Ann., Family Law §§ 12-101 *et seq.*; and Md. Code Ann., Family Law § 1-202 – Plaintiff raises three claims which may fall within this court's jurisdiction.   Specifically, in counts ten and eleven, Plaintiff alleges, in conclusory fashion, that Ms. McNeil, "on October 3, 2009[,] after conspiring with the defendants Stephen Drazin, V. Peter Markuski, and Patricia Bright[,] decided to initiate a domestic violence incident in

order to assist her fellow conspirators in their common goal to deprive the Plaintiff's rights to father his children." (ECF No. 14 ¶ 225). When the attempt "to use a fabricated Domestic Violence incident [was] foiled," unspecified defendants "decided to have [the] Department of Social Services (DSS) initiate an investigation against the Plaintiff." (*Id.* at ¶ 238). The DSS concluded its investigation in November 2009, "ruling out the possibility of sexual abuse by the Plaintiff," but Ms. Bright "made note" of the investigation and "voic[ed] her concerns about the Plaintiff's daughter having overnight visitations with him" at trial. (*Id.* at ¶¶ 238, 242). Additionally, in the twenty-first count of the amended complaint, Plaintiff alleges that "Defendants Howard County[,] Maryland[,] and Howard County Circuit Court fail[ed] to supervise their employees [and] allowed these employees to conspire against the Plaintiff in order to violate his civil rights." (*Id.* at ¶ 310). According to Plaintiff, these acts constitute violations of 42 U.S.C. §§ 1981, 1983, 1985, and 1986.

### a.   42 U.S.C. § 1981

Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). The statute broadly defines the term "make and enforce

contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Thus, a cause of action under § 1981 "must be founded on purposeful, racially discriminatory actions that affect at least one of the contractual aspects listed in § 1981(b)." *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999).

Plaintiff's complaint does not identify any contractual rights that were adversely affected by the alleged misconduct of the defendants. Moreover, Plaintiff has not set forth any facts which, if proven, would establish that the alleged misconduct was motivated by racially discriminatory animus. Rather, his amended complaint consists almost exclusively of conclusory allegations of a conspiracy among the defendants to deprive him of his right to due process of law in the state court divorce proceedings. In sum, these "are nothing more than the sort of unadorned allegations of wrongdoing to which *Twombly* and *Iqbal* are directed." *Francis*, 588 F.3d at 195-96. Accordingly, Plaintiff's § 1981 claims cannot be sustained.

**b.   42 U.S.C. § 1983**

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes

> to be subjected, any citizen of the United
> States or other person within the
> jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities
> secured by the Constitution and laws, shall
> be liable to the party injured in an action
> at law, suit in equity, or other proper
> proceeding for redress[.]

42 U.S.C. § 1983. Thus, a plaintiff raising a § 1983 claim must show that a person acting under color of state law deprived him of a constitutional right. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998).

Although Plaintiff sets forth a litany of claims regarding state actors, the only well-pleaded allegations remaining appear to relate to his ex-wife. Once stripped of Plaintiff's threadbare conspiracy allegations, count ten simply alleges that Ms. McNeil orchestrated a second domestic violence incident for the purpose of bolstering her claim for custody of the children. By Plaintiff's own acknowledgement, this attempt was later discredited by the court; thus, there are no well-pleaded facts showing that a state actor was involved or how the alleged conduct implicated any constitutional rights. In count eleven, Plaintiff asserts that DSS subsequently initiated an investigation of child sexual abuse. Here, too, Plaintiff acknowledges that the investigators eventually "rul[ed] out the possibility of sexual abuse by the Plaintiff" (ECF No. 14 § 238), and it is unclear how any state actor was involved or the

manner in which Plaintiff's constitutional rights were implicated. In count twenty-one, Plaintiff alleges that the County and the circuit court are liable due to their failure to supervise employees. The amended complaint, however, does not appear to make mention of a county employee. Moreover, because Plaintiff has failed to show that a state actor engaged in any misconduct, his failure to supervise claim must fail. Accordingly, Plaintiff's § 1983 claims must be dismissed.

### c.   42 U.S.C. §§ 1985, 1986

To state a claim under § 1985(3), a plaintiff must prove "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act by the defendants in connection with the conspiracy." *Simmons v. Poe*, 47 F.3d 1370, 1376-77 (4th Cir. 1995) (citing *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985)). To allege a § 1985 "conspiracy," moreover, a plaintiff must "show an agreement or a 'meeting of the minds' by the defendants to violate the claimant's constitutional rights." *Simmons*, 47 F.3d at 1377 (citing *Caldeira v. County of Kauai*, 866 F.2d 1175, 1181 (9th Cir. 1989)).

As noted previously, Plaintiff's complaint is devoid of any non-conclusory factual allegations regarding the existence of a conspiracy, much less one motivated by specific, class-based, invidiously discriminatory animus.   Moreover, his § 1986 claim cannot be sustained because "liability under that section is dependent upon a finding of liability under § 1985." *Holder v. North Carolina Dept. of Corrections*, 804 F.2d 1250, at *1 (4th Cir. Nov. 10, 1986) (Table) (citing *Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir. 1981)).   Accordingly, Plaintiff's claims under §§ 1985 and 1986 are subject to dismissal.

### d.   Art. III, § 38 of the Maryland Constitution

Plaintiff contends that section 38 of Article III of the Maryland State Constitution violates the Due Process Clause of the Fourteenth Amendment.   That section provides:

> No person shall be imprisoned for debt, but a valid decree of a court of competent jurisdiction or agreement approved by decree of said court for the support of a spouse or dependent children (either common law or as defined by statute), shall not constitute a debt within the meaning of this section.

Md. Const. Art. III, § 38 ("Section 38").   While Plaintiff acknowledges that this provision is gender neutral, he contends that "the state's practice is to only put men in jail" for non-payment of child support or alimony.   (ECF No. 14 ¶ 315).   Thus, he concludes, without legal analysis, that this provision "discriminates against men[.]"   (*Id*. at ¶ 323).   He seeks a

declaration that "the exception clause in Article III Section 38 of the Maryland State Constitution . . . violates the Fourteenth Amendment of the United States Constitution and therefore is unconstitutional and is to be treated as having no effect on the rest of . . . Section 38." (ECF No. 14, at 59).

The contours of Plaintiff's constitutional challenge are somewhat difficult to discern. Insofar as he seeks relief for men who have been, or might in the future be, imprisoned due to their failure to pay child support or alimony, he appears to lack standing. Plaintiff alleges in the amended complaint that he was "charged with contempt for failure to pay $13,280.00 in court ordered attorney fees" and directed "to report to the Howard County Correction Center on October 21, 2009[,] at 12:00 [p.m.]." (ECF No. 14 ¶¶ 75, 78). Thus, it does not appear that he was imprisoned due to his failure to pay child support or alimony, but rather that he was threatened with imprisonment – likely, if he did not purge by a certain date – after he was held in contempt of court for non-payment of guardian *ad litem* fees. *See Goldberg v. Miller*, 371 Md. 591, 611-12 (2002) (courts do not have authority to treat guardian *ad litem* attorneys' fees as child support).

To the extent that he presents a constitutional challenge to findings of contempt related to the failure to meet support obligations, Maryland courts have long recognized that "the

obligation to support under a decree or order of court, like alimony, . . . [is] not a debt, but a duty enforceable by attachment," and "the person, so attached, may be imprisoned unless he can purge himself of the contempt[.]" *Johnson v. Johnson*, 241 Md. 416, 419 (1966).   The United States District Court for the Western District of Pennsylvania considered a similar challenge in *Tauro v. Allegheny County*, Civ. No. 09-0354, 2009 WL 4262977 (W.D.Pa. Nov. 24, 2009).   The plaintiff in that case filed a law suit

> contending that he was subject to due process violations in an "outlawed 'debtor's prison'" when he was found in civil contempt and arrested by the sheriff's office and incarcerated, pursuant to "County policy," to collect the child support judgment against him and that these County policies were unconstitutional "as applied" and "on their face."

*Tauro*, 2009 WL 4262977, at *3.   The court construed the plaintiff's challenge as "suggest[ing] that, generally, civil contempt with resulting arrest and incarceration pending payment of child support amounts to being charged with a 'civil crime' and being thrown in 'debtor's prison.'"   *Id*.   In concluding that this argument had "no basis in law or fact," the court explained:

> Civil confinement pursuant to a civil contempt order is a remedial measure that "'involves confining a contemnor *indefinitely* until he complies with an affirmative command such as an order 'to pay

26

> alimony, or to surrender property ordered to
> be turned over to a receiver . . .'"" and
> has been repeatedly discussed by the United
> States Supreme Court as a valid method of
> assuring compliance with judgments when
> there is a built-in condition for release.
> *Chadwick v. Janecka*, 312 F.3d 597, 613 (3d
> Cir. 2002) (citing *Int'l Union v. Bagwell*,
> 512 U.S. 821, 828, 114 S.Ct. 2552, 129
> L.Ed.2d 642 (1994) (quoting *Gompers v.
> Buck's Stove & Range Co.*, 221 U.S. 418, 442,
> 31 S.Ct. 492, 55 L.Ed. 797 (1911)); *see
> Hicks ex rel. Feiock v. Feiock*, 485 U.S.
> 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1987).

*Id.* at *5 (emphasis in original).

While it appears that Maryland courts have not directly addressed the same issue, they have espoused a virtually identical view of the nature of contempt proceedings. *See, e.g., Bryant v. Social Services*, 387 Md. 30, 48 (2005) (discussing the origin, objectives, and method of adjudication of civil contempt actions "[i]n the context of enforcing support orders"); *Rawlings v. Rawlings*, 362 Md. 535, 558 (2001) (citing the Supreme Court's decision in *Gompers* in discussing the remedial nature of civil constructive contempt proceedings pursuant to Md. Rule 15-207(e)); *Jones v. State*, 351 Md. 264, 277-82 (1998) (discussing constitutional requirements in contempt process related to non-payment of support obligations).

To the extent that Plaintiff presents an "as-applied" due process challenge, he was required to raise it, if at all, either in state court or before the Supreme Court. A federal

district court lacks jurisdiction to consider such a claim under the *Rooker—Feldman* doctrine. *See Greenberg v. Zingale*, 138 Fed.Appx. 197, 201 (11th Cir. 2005) ("If we were to hold that the Florida trial court unconstitutionally applied the Florida alimony provisions as to [the plaintiff], we would 'effectively nullify' the state court's judgment that [his ex-wife] receive alimony.") (citing *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996)); *Tauro*, 2009 WL 4262977, at *3 (*Rooker-Feldman* barred constitutional challenge "because plaintiff sought relief in the form of nullification of various orders rendered in state court").

The crux of his argument appears to be "essentially a 'reverse discrimination' claim, based on the disparate impact on men of [Maryland's] child support [and alimony] procedures," which may be cognizable under the Equal Protection Clause. *Agg v. Flanagan*, 855 F.2d 336, 341 (6th Cir. 1988). As the Sixth Circuit explained in *Agg*, 855 F.2d at 341:

> A facially neutral law does not violate the equal protection clause merely because it has a disproportionate impact; the disproportionate impact must be traced to a purpose to discriminate. *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). There may be an unconstitutional purpose "when a neutral law has a disparate impact upon a group that has historically been the victim of discrimination." *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 273, 99 S.Ct. 2282, 2293, 60 L.Ed. 870 (1979).

In finding no discriminatory purpose in Ohio's child support scheme, the court explained:

> It is fairly obvious that the disparate impact on men, insofar as we may characterize the law's effect in that way, is a result of the fact that men generally have higher incomes than women, and that society wants some of that income used to support their children. Ohio's interest in the support of children is an important and substantial one, and the means Ohio has chosen to accomplish that interest are closely related to its goal. Ohio, like other states, has attempted to redress the unequal burden of supporting the children of divorced parents between the custodial and non-custodial parents, according to their ability to pay. Under *Feeney*, we have no doubt that the Ohio child support procedure does not violate the equal protection clause of the Fourteenth Amendment.

*Id*. at 342. *See Middleton v. Middleton*, 329 Md. 627, 641 (1993) (similarly describing Maryland's "vested interest in requiring a responsible parent to support his or her child").

While it may be true, as Plaintiff suggests, that Maryland's child and spousal support scheme disparately impacts men, that fact alone is not sufficient to state a constitutional claim for relief. As the Supreme Court explained in *Feeney*, 442 U.S. at 274, "impact provides an 'important starting point'" for equal protection challenges to gender-neutral provisions, "but purposeful discrimination is 'the condition that offends the Constitution.'" (Quoting *Swann v. Charlotte-Mecklenburg Board*

*of Education*, 402 U.S. 1, 16 (1971)). Plaintiff's amended complaint is devoid of any non-conclusory allegations suggesting that any Maryland state provision was intended to discriminate.

In sum, to the extent that this court has jurisdiction to consider Plaintiff's constitutional challenge, he has failed to state a claim upon which relief may be granted. Accordingly, his claim in this regard will be dismissed.

### e.   Md. Code Ann., Family Law § 12-204

Plaintiff further urges the court to strike down as violative of the Fourteenth Amendment all or portions of Md. Code Ann., Family Law § 12-204, which establishes the basis for determining child support obligations. He asserts in his complaint that "[i]n order for the State of Maryland's Child Support Guidelines [not to] violate a father's Fourteenth Amendment Rights, child support guidelines basic support needs to be capped [at] what Maryland State [p]ays out for [f]oster [c]are [c]hildren and that basic support needs to be equally divided between both parents." (ECF No. 14 ¶ 364). Plaintiff offers no legal support for this position in his opposition papers, nor does there appear to be any.

"In analyzing [an] alleged Equal Protection violation under the Fourteenth Amendment, [the] plaintiff must show at the outset that: (i) he was treated differently from others (ii) who were similarly situated and (iii) that such unequal treatment

was the result of intentional or purposeful discrimination." *DeBlasio v. Johnson*, 128 F.Supp.2d 315, 327 (E.D.Va. 2000) (citing *Blagman v. White*, 112 F.Supp.2d 534, 537-38 (E.D.Va. 2000); *McGlothlin v. Murray*, 993 F.Supp. 389, 406 (W.D.Va. 1997), *aff'd*, 151 F.3d 1029 (4th Cir. 1998)).   As noted previously, Plaintiff has set forth no facts that, if proven, would make the requisite showing here.   Accordingly, this claim will be dismissed.

### f.   Md. Code Ann., Family Law § 1-202

The third Maryland statute that Plaintiff argues is unconstitutional provides for the appointment of counsel for minors.   Pursuant to Family Law § 1-202(a)(2), a court is authorized to impose the fees for such counsel "against either or both parents."   According to Plaintiff, "Maryland Family Law Article § 1-202 fees are repressive and cause and/or [are] meant to cause a child parent to be penalized if he should have the misfortune of having to go through a divorce."   (ECF No. 14 ¶ 369).   He further contends that "Maryland Family Law Article § 1-202 serves no government interest other than to penalize parents and discouraging parents with punitive legal fees for asserting their First Amendment Rights."   (*Id.* at ¶ 371).

As with his prior constitutional challenges, Plaintiff provides no support for this claim, nor could he.   For present purposes, it suffices to say that he has failed to "state a

claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Accordingly, this claim will be dismissed.

### III. Motion for Leave to Amend

As he did after the first round of motions to dismiss, Plaintiff has sought leave to amend his complaint following the second round.  (ECF No. 27).  Pursuant to Federal Rule of Civil Procedure 15(a)(2), courts are to grant leave to amend a pleading "freely . . . when justice so requires."  Leave should be denied, however, where "the amendment would be so prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."  *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).  "An amendment is futile when the proposed amendment is clearly insufficient or frivolous on its face, or if the amended claim would still fail to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)."  *El-Amin v. Blom*, Civ. No. CCB-11-3424, 2012 WL 2604213, at *11 (D.Md. July 5, 2012).

Plaintiff has attached to his motion a proposed second amended complaint that merely adds to the infirmities identified herein, notably including, for the first time, conclusory allegations supporting reverse racial discrimination.  (ECF No. 27-2).  Because his proposed amendment would be futile, leave to file the proposed second amended complaint will be denied.

## IV.  Conclusion

For the foregoing reasons, the motions to dismiss filed by the defendants will be granted; Plaintiff's motion for leave to amend the complaint will be denied; and Plaintiff's motions for default and default judgment, for access to the court's case management/electronic case filing system, and for legal fees will be denied as moot.  A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge